**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(~~Northern~~ Southern Division)

|  |  |  |
|---|---|---|
| **FUTURE FIELD SOLUTIONS, LLC,** *et al.* | ) | |
| | ) | |
| **Plaintiffs/Counterclaim Defendants**, | ) | |
| | ) | **Case No. 1:23-cv-01301-~~ELH~~DKC** |
| **v.** | ) | **JURY DEMAND** |
| | ) | |
| **ERIK VAN NORSTRAND** | ) | |
| | ) | |
| **Defendant/ Counterclaim Plaintiff** | ) | |
| **/Third Party Plaintiff,** | ) | |
| | )~~,~~ | |
| **v.** | ) | |
| | ) | |
| **PERIARCHON, L.L.C.** | ) | |
| **14550 Burntwoods Road** | ) | |
| **Glenwood, MD  21738** | ) | |
| **SERVE:** | ) | |
| **James C. Brent, Resident Agent** | ) | |
| **14550 Burntwoods Road** | ) | |
| **Glenwood, MD  21738** | ) | |
| | ) | |
| **Third-Party Defendant.** | ) | |
| | ) | |

**DEFENDANT'S ~~FIRST~~ SECOND AMENDED COUNTERCLAIM AND JURY DEMAND**
**AND THIRD PARTY COMPLAINT**

Defendant/Counterclaim Plaintiff/Third Party Plaintiff ERIK VAN NORSTRAND

("**Counterclaim Plaintiff**" or "**Van Norstrand**"), by and through his undersigned counsel, hereby

files this ~~First~~ Second Amended Counterclaim against Plaintiffs/Counterclaim Defendants

STEVEN REESE ("**Reese**"), JAMES C. BRENT, SR. ("**Brent**"), BRIAN TUNSON ("**Tunson**"),

and FUTURE FIELD SOLUTIONS, LLC ("**FFS**" or the "**Company**") (collectively

"**Counterclaim Defendants**"), and Third Party Defendant Periarchon, L.L.C. ("Periarchon" or

"Third Party Defendant") and states as follows:

**BACKGROUND**

1.      As the original founder of FFS, Van Norstrand originally formed a Company of the same name in 2010 and again in 2012.  Van Norstrand then approached Brent and Reese in 2020, while each were independently working on a related government project and asked them to join him to form a company, also named Future Field Solutions.  After they agreed, and on their behalf, Reese, as the attorney, filed the Articles of Organization on July 21, 2020, with the State of Maryland.

2.      Less than two years later, and little more than one month after Tunson formally joined the Company as a member at the forceful urging of Reese and Brent, Counterclaim Defendants Brent, Reese and Tunson orchestrated a classic involuntary and improper squeeze out of Van Norstrand from the Company in direct violation of the controlling and binding terms of the Company's Operating Agreement, dated August 6, 2020.  *A true and correct copy of which is attached as **Exhibit 1**.*

3.      Counterclaim Defendants did so intentionally, maliciously, and in a manner designed to reduce and de-value Van Norstrand's member interests, retained earnings and unpaid compensation and distributions, so as to reduce the amounts payable to Van Norstrand by Counterclaim Defendants.

4.      Ironically, notwithstanding Counterclaim Defendants Brent, Reese and Tunson's allegations of incompetence by Van Norstrand, since attempting to expel Van Norstrand involuntarily from the Company in late March 2022, Counterclaim Defendants Brent, Reese and Tunson have basically run the company into the ground, losing key contracts and/or funding on key contracts, losing key employees, and losing key business relationships.

5.    Driven by an incorrect belief that they could better manage prime company relationships, grow the company, run the day-to-day operations and/or do a better job than Van Norstrand generally, notwithstanding not having really been involved in these activities during the first year of operation, Counterclaim Defendants Brent and Reese orchestrated bringing Tunson into the Company and facilitating a campaign to convince Van Norstrand that he was not performing his management responsibilities sufficiently and/or in the best interests of the Company.

6.    Counterclaim Defendants took these actions in breach of their contractual and fiduciary obligations to the Company and to Van Norstrand as a fellow member of the Company, all for their own personal interests, causing Van Norstrand significant damages in the process.

7.    To make matters worse, after filing this action, Counterclaim Defendants wrongfully and without authorization accessed Van Norstrand's personal Google account in or about October 2022, an account holding more than ten years of stored data, including but not limited to emails, documents, messages, photos, videos and related data, including confidential, privileged, personal, private and sensitive health and medical information.

8.    Counterclaim Defendants then changed the credentials to Van Norstrand's personal Google account, removing Van Norstrand from his own account, and denying Van Norstrand access to his own data of more than 10 years.

9.    Counterclaim Defendants then began reviewing the data contained in Van Norstrand's personal account, using it for their own personal use, and making intentionally false and/or reckless statements to third parties about Van Norstrand, designed to harm Van Norstrand in retaliation for his refusal to simply agree and go along with Counterclaim Defendants plan to

remove him.  Counterclaim Defendants actions are beyond outrageous, were maliciously taken, and have caused Van Norstrand significant harm to his reputation and significant monetary harm.

## PARTIES, JURISDICTION AND VENUE

10.     FFS is a Maryland limited liability company duly organized and existing pursuant to the laws of Maryland.  The Company's principal place of business upon registration was located at Van Norstrand's residence, 488 Hawkridge Lane, Sykesville, Maryland in Carroll County. The Company's principal place of business was changed to 14550 Burntwoods Road, Glenwood, Maryland in Howard County, on August 16, 2021, and both are located within the Northern Division of Maryland.

11.     Brent is a Maryland resident who resides at 14550 Burntwoods Road, Glenwood, Maryland in Howard County and is a member of the Company, owning 24.5% of the member interests.

12.     Reese is a Maryland resident, who resides at 15603 Straughn Drive, Laurel, Maryland in Prince George's County, Maryland and member of the Company, owning 51% of the member interests, and who works at the principal place of business of the Company in Howard County.

13.     Tunson is a Maryland resident, who resides at 15603 Old York Road, Bowie, Maryland in Prince George's County, Maryland and a member of the Company, owning 12.25% of the member interests.

14.     Van Norstrand is a Maryland resident and member of the Company, owning 12.25% of the member interests, and resides at 488 Hawkridge Lane, Sykesville, Maryland in Carroll County.

14.15.  Periarchon is a Maryland limited liability company.  Periarchon has the same principal place of business at14550 Burntwoods Road, Glenwood, Maryland in Howard County as FFS.

15.16.  The majority of the facts and circumstances giving rise to the claims herein occurred in Howard County.

17.      This Court has subject matter jurisdiction over the claims and personal jurisdiction over the parties pursuant 28 U.S.C. §§ 1331, 1367, 1441 and 1446.

18.      Pursuant to 28 U.S.C. §§ 1331, this Court has subject matter jurisdiction over the parties' respective claims under the Computer Fraud and Abuse Act in 18 U.S.C. §§ 1030, *et seq*.

19.      This Court has supplemental jurisdiction over Plaintiffs' state law claims contained in Plaintiffs' Second Amended Complaint pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy and derive from a common nucleus of operative fact.

20.      Venue is appropriate in this Court pursuant to 28 U.S.C. S 1441(a) as this action was properly removed from the Howard County Circuit Court on May 17, 2023 to the United States District Court of Maryland (Northern Division).

16.21.  This action was reassigned to the United States District Court of Maryland (Southern Division) on June 23, 2023.

17.22.  This action was properly removed under 28 U.S.C. § 1446, because the United States District Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Plaintiffs have alleged that Defendant violated the Federal Computer Fraud and Abuse Act statute, 18 U.S.C. § 1030 *et seq. See* Second Amended Complaint ¶¶ 160-164.

## FACTS COMMON TO ALL COUNTS

~~18.~~23.  While a pre-teen and later as a teenager, Van Norstrand was viewed as a computer wunderkind.  He began coding and providing website hosting and system administration services as a child.

~~19.~~24.  He started his own business at 13 years old, called EVN Computer Service, providing IT Support and Services, including website hosting and system administration services.

~~20.~~25.  In or about December 2006, Van Norstrand was contacted by GoDaddy to acquire his business and client list while he was still a teenager.  He declined.

~~21.~~26.  Later, while studying at the University of Maryland Baltimore County, Van Norstrand formed the initial iteration of a company he called "Future Field Solutions" or FFS, as a limited liability company in the state of Maryland on November 15, 2010, with a childhood friend, David Saville, for purposes of starting a web hosting solutions company.

~~22.~~27.  The first run of FFS was short-lived and the entity folded in September 2011.  Both Van Norstrand and Saville were members of the company, notwithstanding a note on the Articles of Cancellation that stated that Saville was the only member.

~~23.~~28.  Prior to the formation of the first iteration of FFS in November 2010, Van Norstrand purchased and registered the www.futurefieldsolutions.com domain address on August 17, 2010 and paid for it with his personal funds.  He personally owns the domain address to this day, allowing the Company to use it, but never having transferred ownership of the domain to the Company or being paid any compensation for the domain by Counterclaim Defendants, which Van Norstrand estimates is worth at least $25,000.  The Company reimbursed Defendant and/or paid for the use of the domain but not the registration and/or "ownership" of it.

24.29.  After graduation from the University of Maryland Baltimore County with a degree in Information Technology, Van Norstrand formed the second iteration of FFS in 2012, again as a limited liability company in the state of Maryland with his parents, David Van Norstrand and Lynn Van Norstrand, but this time for the purpose of engaging in the business of providing IT solutions consulting to the federal government.

25.30.  During that time, Van Norstrand honed his skills as a Senior Development Security Operations ("**DevSecOps**") Engineer, cultivating his relationships with various business partners in the military, national security and federal government contracting space.

26.31.  Van Norstrand continued to operate FFS through January 2017, when he decided to close operations.

27.32.  Van Norstrand likewise set up account hosting for www.futurefieldsolutions.com, again with his personal funds in late 2011 early 2012 with Amazon Web Services ("**AWS**") Account 2012-7647-1770.  He personally owns this AWS account to this day, allowing the Company to use it, but never having transferred ownership of the account to the Company or being paid any compensation for the ownership of the account by Counterclaim Defendants.  The Company reimbursed Defendant and/or paid for the use of the account but not the registration and/or "ownership" of it.

28.33.  While working on a project with Counterclaim Defendants Brent and Reese, Van Norstrand approached them about starting a company to work as a subcontractor to Company L, a business partner with whom Van Norstrand had developed a strong relationship.

29.34.  Because Reese represented himself to be a service-disabled veteran, and at the strong urging of Brent and Reese, they agreed that Reese would own 51% of the member shares

of the company in order to qualify as a service-disabled veteran-owned small business ("**SDVOSB**"), with Brent and Van Norstrand equally owning the remaining member interests.

~~30.~~35.  Reese convinced the other members, including Van Norstrand, that the SDVOSB status would assist the Company in securing government contracts based on various Small Business Administration ("**SBA**") set-asides.  This has never occurred and is rarely a factor in the type of cybersecurity contracts on which the Company bids.

~~31.~~36.  They agreed nonetheless that capital contributions, voting and profit/loss sharing would be equal and not in accord with their member ownership interests, which ironically made the Company not qualify as an SDVOSB.  Van Norstrand relied upon Reese's representations regarding him taking 51% ownership, as Reese represented himself to be a licensed attorney with knowledge of the SBA regulations and rules.

~~32.~~37.  Reese filed the Articles of Organization for the current iteration of the Company, naming Van Norstrand as the resident agent and listing Van Norstrand's home address as the principal place of business.

~~33.~~38.  During the entire first year, Van Norstrand did virtually everything for the Company.  In addition to working full-time as a DevSecOps Engineer on contracts for Company L, Company A and Company D, Van Norstrand also ran all partner relationships, as well as Company timekeeping and accounting, with Brent and Reese verifying the Company's financial outlook and having full administrator access to the Company's QuickBooks account.

~~34.~~39.  To keep costs down with the new startup, Van Norstrand offered for the Company to use his personal Google account that he opened in or about late 2010 or early 2011, using erik@futurfieldsolutions.com.  He added email addresses for Brent and Reese and added a corporate account to allow for email and data storage within his account.

~~35.~~40.  When establishing and using his personal Google account, Van Norstrand established the password for the account and used a dual authentication method to protect the security of his data contained therein.

~~36.~~41.  Van Norstrand never authorized Counterclaim Defendants to access his personal and historical email and documents within his Google account.  It was also clear that any authorization that Counterclaim Defendants had to their email and documents within the corporate account housed within Van Norstrand's personal account would end on March 25, 2022.

~~37.~~42.  In addition, Van Norstrand let Counterclaim Defendants use his personal AWS account, along with the domain www.futurefieldsolutions.com.

~~38.~~43.  Van Norstrand never transferred the registration or ownership of his personal Google account (holding more than ten years of personal communications and data), his AWS account, or the www.futurefieldsolutions.com domain to the Company.  The Company reimbursed Van Norstrand and/or paid for the use of storage within Van Norstrand's Google account, AWS account, and the www.futurefieldsolutions.com domain, but never paid for or acquired ownership of these items.

~~39.~~44.  Van Norstrand received a distribution of approximately $15,000 for 2020 at the end of the calendar year.

~~40.~~45.  Van Norstrand's actions and relationships are and were directly responsible for all of the contracts that FFS secured and had at the time of his "involuntary removal" or squeeze out in March 2022.

~~41.~~46.  Van Norstrand, Reese and Brent agreed for all of 2020 and 2021 that they would be paid a salary of 65% of their billable hours.  This agreement compensated Van Norstrand for performing the lion's share of work for the Company.

42.47.  Counterclaim Defendants did not bring in any of the contracts that FFS had on or before March 22, 2022.

43.48.  Counterclaim Defendants Reese and Brent were actually working for Oracle for the entire first year as members of the Company, which is why they agreed they would not be entitled to a draw of 33% of the net profits of the Company, which were largely driven by Van Norstrand's billable work.

44.49.  Van Norstrand encouraged them to take on some work with FFS and to help him. In order to do so, they decided that they needed to leave their positions with Oracle.

45.50.  Reese and Brent began working "full-time" with FFS in or about October 21, 2021.

46.51.  Brent and Reese voted to move the Company to Brent's home as the principal place of business and filed a corporate resolution with the State of Maryland on August 16, 2021 changing the registered agent and principal place of business address to himself and his home address – from Van Norstrand and his home.  Van Norstrand voted against this change.  The Company reimbursed and/or paid Brent for the use of his home as the principal place of business.

47.52.  Almost immediately upon joining the Company full-time, Reese and Brent began criticizing Van Norstrand, his performance, his management style, and his execution of work for various business partners.

48.53.  Reese and Brent also thought it appropriate to delegate training to Van Norstrand – treating Van Norstrand more like a subordinate in their military chain of command than a partner and fellow member of the Company.

49.54.  Van Norstrand was also working with Company A to obtain a facility clearance license ("**FCL**") to enable FFS to serve as a prime contractor and quickly realized that it would not occur with Company A, as Company A essentially, and/or would be, a competitor to FFS for

various contracts and had made promises regarding an FCL to other subcontractors but not kept them.  The FCL offered by Company A was also only a "secret" level FCL and not a "top secret" level, the latter of which they would need for the type of cybersecurity programming work and services they were providing.

50.55.  Van Norstrand also met with Reese and Brent and explained that Company A was essentially stringing them along and that FFS would not obtain an FCL anytime soon with Company A, all of which was confirmed via email.  Van Norstrand recommended and Brent and Reese agreed that FFS work through Company L and Company D to obtain the FCL insofar as Company D agreed to sponsor FFS for a "top secret" level FCL.

51.56.  On or about September 28, 2021, Company D submitted FFS's FCL request.

52.57.  Obtaining an FCL is typically a relatively involved and long process and is not something that can be obtained quickly.

53.58.  Van Norstrand leveraged his relationship with Company L to urge Company D to sponsor FFS to obtain an FCL, which worked and FFS obtained an FCL on January 18, 2022.

54.59.  Van Norstrand also needed to transition out of a "worker bee" engineering role and into a business developer to grow FFS in order to implement a growth strategy to capture several open contracts at Aberdeen and Ft. Meade.

55.60.  What is clear in hindsight is that Counterclaim Defendants viewed Van Norstrand as a pack mule to make them money and did not treat him as an equal member or partner with whom they were in business.

56.61.  In July 2021, Counterclaim Defendants Reese and Brent introduced Tunson to Van Norstrand and suggested hiring him as an employee and/or contractor at FFS.

57.62.  In or about November 2021, Counterclaim Defendants Reese and Brent gave Van Norstrand an ultimatum that if he did not bring in Tunson as a member and sell Tunson 50% of Van Norstrand's shares that they would abandon the Company, forcing the Company to liquidate.

58.63.  Believing he could grow the Company if given the time and opportunity and in light of the terms of the Operating Agreement still providing for equal voting rights and profit/loss sharing after the 65% billable hour salary payments, in November 2021, Van Norstrand acquiesced to the transfer, with the understanding that it would take effect in 2022, after Van Norstrand received consideration for the shares, an amendment to the Operating Agreement was executed, and the Company obtained its FCL – and not impacting his distributions or retained earnings for 2021.

59.64.  This understanding is reflected in the payments from Tunson being received in 2022 and the Amendment to Operating Agreement, dated February 16, 2022 and executed after the FCL was received.

60.65.  Reese, an attorney who drafted the original Operating Agreement, drafted the Amendment that was signed and facially effective February 16, 2022 (a true and correct copy of which is attached as *Exhibit 2*), and which did much more than just transfer 50% of Van Norstrand's member interests as of that date.  It also changed the voting and profit/loss sharing percentages from the original Operating Agreement, greatly reducing Van Norstrand's voting rights and profit/loss sharing on a going forward basis.

61.66.  Reese and Brent made it clear to Van Norstrand, that if he did not agree to the term changes within the Amendment to Operating Agreement, they would leave the Company, forcing a shutdown and liquidation.  Van Norstrand signed the February 16, 2022 Amendment under circumstances he considered to be duress.

62.67.  On the face of the February 16, 2022 Amendment, as well as the original Operating Agreement, Reese, an attorney, did not encourage the members to obtain independent counsel review before signing the documents.

63.68.  In short, the existing members of the Company executed an Amendment to the Operating Agreement, dated February 16, 2022, adding Brian Tunson as a member, and reducing Van Norstrand's ownership, voting and profit/loss sharing percentage to 1/6, where it had previously been equal to the other members, Reese and Brent.

64.69.  As a part of this forced private sale, Tunson made a total of $82,520 in payments to Van Norstrand in exchange for 12.5% member interests in the Company on or about January 2, 2022 and February 28, 2022.

65.70.  The Operating Agreement expressly provides that no new members may be admitted to the Company (Para. 24), any amendments to be effective must be in writing signed by all members (Para. 64), and remaining members have a right of first purchase over third parties (Para. 35).  *See* Ex. 1.

66.71.  Accordingly, the sale or transfer of 12.5 % member interests from Van Norstrand to Tunson was not effective until all members signed off on the transfer, the FCL was obtained, and all consideration was paid, all of which occurred in 2022.

67.72.  At or about this time, during an in person meeting, Tunson became visibly angry and physically threatened Van Norstrand based upon Van Norstrand's selection of a security software with which Tunson was unfamiliar, despite Van Norstrand offering to train Tunson on how to use the software.

68.73.  Sometime in early January 2022, Reese and Brent proposed and then out-voted Van Norstrand to change and reduce their 65% billable hour salary payment to a salary or draw of

$200,000 per year per member, increasing their annual compensation and reducing Van Norstrand's compensation.

69.74.  Brent and Reese also declined to make the end of year distributions that they had made previously and which Van Norstrand understood would occur when he acquiesced to the sale of 50% of his member interests to Tunson.  Van Norstrand never agreed to give 50% of his 2021 retained earnings and/or distributions to Tunson, which should have equaled and/or exceeded the acquisition price of his member interests, and he never would have sold his interests or signed the Amended to Operating Agreement had that possibility been disclosed to him.

70.75.  When Van Norstrand expressed and facilitated his desire to move out of a traditional tech lead role on the Company A sub-contract, freeing him to do more business development, Counterclaim Defendants Reese and Brent viewed it as a demotion and essentially looked for reasons to conclude the Van Norstrand had done something improper or wrong.

71.76.  Instead of honoring their fiduciary duties to their fellow member, they maliciously and without Van Norstrand's knowledge encouraged employees working with and/or for Van Norstrand to document their complaints on how he was running projects, all in order to attempt to manipulate Van Norstrand into agreeing to not having customer-facing roles and to remain in a technical engineering role.

72.77.  During this time, Van Norstrand had also been spearheading the transition of the Company's data from his personal Google account to Company-owner Microsoft 365 account.  It was confirmed in Company meeting minutes, dated February 25, 2022, that Company's access to the Google account would terminate on March 25, 2022 and that all Company data would be exported out of Google and stored in the Company's One Drive account.

73.78.  Little more than one month after executing the February 16, 2022 Amendment to the Operating Agreement and sale of 12.5% member interests to Tunson, the Company held a weekly informal member meeting on March 18, 2022, one that Van Norstrand called and/or noticed, and allegedly to discuss ongoing business issues; however, but it turned into an ambush by the Counterclaim Defendants of Van Norstrand.

74.79.  During the meeting on March 18, 2022, Van Norstrand shared that he determined that the Company was improperly paying members.  Reese had originally verified the manner of payment for member compensation payments and/or draws that resulted in the underpayment. Only after Van Norstrand shared and corrected this calculation error did Reese announce, "I believe we are going to ask you to leave the company."

75.80.  Somewhat stunned at the announcement regarding the Company that he originally founded and invited Reese and Brent to join, Van Norstrand gathered his things and left the meeting.

76.81.  There was no notice by Plaintiffs of a member meeting called to hold a vote to remove and/or to remove Van Norstrand as a member.  Van Norstrand never voted in favor of his involuntary removal.  Van Norstrand was willing to entertain a buyout of his interest but did not agree that the other members could simply vote to remove him by a majority vote.

77.82.  Counterclaim Defendants Reese, Brent and Tunson then held another meeting on March 22, 2022, during which they signed another "Amendment to Operating Agreement" providing that:

> Member Erik Van Norstrand is involuntary [sic] withdrawn from the LLC in accordance with Paragraph 28 of the Operating Agreement. Erik Van Norstrand's interests in the company will be divided equally amongst the remaining members, for which he will be paid in an amount of money in accordance with the Operating Agreement.

~~78.~~83.   Van Norstrand never signed the March 22, 2022 putative amendment,[1] as required by Paragraph 64 of the Operating Agreement in order for it to be effective.

~~79.~~84.   Counterclaim Defendants Reese, Brent and Tunson also sent a letter to Van Norstrand dated March 22, 2022, which was received on March 25, 2022, claiming to confirm the involuntary withdrawal of Van Norstrand at the March 18, 2022 meeting.

~~80.~~85.   On or about March 25, 2022, Counterclaim Defendants Reese and Brent decided to improperly and retroactively pay themselves $118,485 and $83,124, respectively, as 2021 "draws" to "catch up" to the 65% billable salary payment Van Norstrand earned in 2021.  These payments occurred sometime in April and/or May 2022.

~~81.~~86.   Counterclaim Defendants Brent, Reese and Tunson, on behalf of the Company, began intentionally and/or recklessly making false statements to third parties that Van Norstrand had been properly removed from the Company, had "deleted" Company data, had an "inappropriate" issue with an employee, had been "dishonest", and/or had created or engaged in activity creating an "insider threat", including a communication to Amy Severe, the Company Facility Security Officer, on or about March 20, 2022, communications to the Industrial Security Representative ("**ISR**") of the Defense Counterintelligence and Security Agency ("**DCSA**") on or about April 19, 2022, May 5, 2022 and May 6, 2022, and a communication to representatives of Company D, the sponsor of the Company's FCL on or about April 19, 2022.

~~82.~~87.   Pursuant to a request of the DCSA ISR and/or others, Counterclaim Defendants executed another amendment to the Operating Agreement as the March 22, 2022 did not address ownership percentages.  A true and correct copy of Amendment 3 to Operating Agreement of Future Field Solutions LLC, dated May 16, 2022 is attached hereto as *Exhibit 4*.

---

[1] A true and correct copy of which is attached hereto as *Exhibit 3*.

83.88. Notwithstanding representing to third parties that Van Norstrand had been properly removed as a member of the Company, James Brent documented in a proposed agenda on May 29, 2022: "Act as though we are separated from Erik for our success."

84.89. Counterclaim Defendants Brent, Reese and Tunson also made misrepresentations about Van Norstrand stating that he had "disobeyed an order" from them and misrepresented the status of the FCL to a customer. Counterclaim Defendants Brent, Reese and Tunson directed Van Norstrand not to share the status of the FCL with a customer and then claimed that his failure to disclose said information was a false representation.

85.90. Counterclaim Defendant Reese sent Van Norstrand an email on June 17, 2022, admitting that the vote was held on March 22, 2022 without Van Norstrand present and contradicting Counterclaim Defendants' prior position that the March 18, 2022 meeting was properly noticed and held to discuss and vote upon their improper removal of him.

86.91. Counterclaim Defendants' various filings inconsistently contend that they held a majority vote to remove Van Norstrand and that the vote was unanimous, also falsely stating that Van Norstrand voted in favor of his own removal.

87.92. Notwithstanding claiming to follow the Operating Agreement, promising to provide an accounting, and promising to allow Van Norstrand to access files and emails for a period of time in order to download documents relevant to the withdrawal and "this case", Counterclaim Defendants Reese, Brent and Tunson failed to perform or deliver on those representations.

88.93. Indeed, after allowing Van Norstrand to retain access to his Microsoft 365 account to copy documents that he may need for the dispute with his fellow members, Tunson documented and reported that Van Norstrand was improperly accessing Company records, apparently forming

the basis of the Counterclaim Defendants' false representations to third parties that Defendant posed or presented an insider threat.

89.94.  Likewise, on or about October 9, 2022, Counterclaim Defendants also appear to have intentionally and/or recklessly began representing falsely to third parties that Defendant's copying of documents was actually a deletion of 800 corporate documents, acknowledging that they needed to "better look at audit logs to provide specific information".

90.95.  Audit logs later produced by Counterclaim Defendants in response to a request for evidence of said alleged deletion of data by Defendant included an audit log documenting the copying of documents by Van Norstrand.

91.96.  When confronted by counsel that the audit log produced to show that Van Norstrand had deleted corporate records actually showed simply copying records as they suggested he do, Counterclaim Defendants counsel simply explained it was the "wrong" log, but, a year later, has still failed to produce any log or evidence supporting Counterclaim Defendants' repeated accusations that Van Norstrand deleted any corporate records or data.

92.97.  In or about October 2022, Counterclaim Defendants accessed without consent or authorization Van Norstrand's personal Google account, changed the login credentials and locked Van Norstrand out of his account, taking control of and denying Van Norstrand access to or control of more than 10 years' worth of stored communications, including but not limited to emails, documents, messages, videos, photos and related information.

93.98.  Counterclaim Defendants review and mined through Van Norstrand's 10 years' worth of data contained within his Google account under the guise of "research" for answers to interrogatories in the underlying State Court action.

94.99. Counterclaim Defendants literally mined through years of Van Norstrand's personal documents, including draft of resumes to craft an argument that they conveyed in a Memorandum to Ty Obitz, a Senior Program Manager with Lockheed Martin Corporation, on or about November 1, 2022, representing that Van Norstrand could not have the years of experience necessary to serve as a level 2 Software Engineer ("**SWE2**") based on their interpretation of court filings, prior corporate filings and prior drafts of resumes.

95.100. Counterclaim Defendants also met with Obitz on or about November 18, 2022 and provided requested documents to Obitz.

96.101. Counterclaim Defendants falsely represented to Obitz that they obtained this information and found "major inconsistences" in looking through "company records in response to discovery requests from Van Norstrand".

97.102. All of these representations were intentionally false when made and/or made with reckless disregard for their truth or falsity and were made with the specific intent to harm Van Norstrand, his reputation, and his ability to work in the cybersecurity and computer programming space and to retain his top secret clearance.

98.103. The representations regarding the age when Van Norstrand began working were known to be false by Brent as a former neighbor and family friend of the Van Norstrand family, insofar as Brent had personal knowledge that Van Norstrand had been coding and performing computer services for hire as a preteen and teenager.

99.104. Counterclaim Defendants made the above false representations to other third parties, including government contractors and representatives of government agencies.

100.105. Counterclaim Defendants' above representations have caused Van Norstrand significant harm to his reputation as well as monetary damages.

~~101.~~106.    As a result of Counterclaim Defendants' above representations, Van Norstrand was removed without explanation from a subcontract with Accenture Federal Services ("**Accenture**") and on which Lockheed Martin Corporation was a co-prime.

~~102.~~107.    As a result of Counterclaim Defendants' above representations, Lockheed Martin Corporation instituted an investigation into Van Norstrand's work on a prior contract and has demanded a return of more than $100,000 from another subcontractor entity for which Van Norstrand worked, all based on its review of the representations of and documents provided by Counterclaim Defendants, incorrectly concluding that Van Norstrand did not have the qualifications to serve as an SWE2 on a prior contract.

~~103.~~108.    Without Van Norstrand's consent, authorization or permission, Counterclaim Defendants accessed Van Norstrand's personal Google account and reviewed highly personal, confidential and privileged communications and records of Van Norstrand with his attorneys, his wife and his medical providers.

~~104.~~109.    Counterclaim Defendants actually organized documents that they viewed as helpful to their prior wrongful removal of Van Norstrand and produced them on February 23, 2023 to Van Norstrand in Volume 4 of the FFS production in the State Court case without even marking them as confidential, including but not limited to highly personal, confidential and privileged communications with his attorneys, wife and medical providers.

~~105.~~110.    Counterclaim Defendants' above actions and representations were patently outrageous and committed with malice and intent to harm Van Norstrand and invade his privacy and embarrass him.

106.111.     When confronted by Van Norstrand's counsel as to the source of the documents produced in Volume 4 of the FFS production, through counsel, Counterclaim Defendants represented that the documents were stored in the Company's Microsoft 365 account.

107.112.     When confronted by Van Norstrand's counsel with the fact that Van Norstrand never waived his privacy and confidentiality in his email and documents, again, through counsel, Counterclaim Defendants represented the Company had a policy that permitted the Company to access Van Norstrand's email and documents.

108.113.     Counterclaim Defendants then produced a copy of an unsigned 2017 Employee Handbook, one that was contained in Van Norstrand's personal records and one that Van Norstrand drafted for a prior company.

109.114.     The Company never adopted any type of policy or handbook waiving a member or employee's right to privacy or confidentiality in any of their documents or communications whether intentionally or unintentionally saved to or transmitted through a company account, email or server.

110.115.     When confronted with the metadata and other documents showing that the source of the documents in Volume 4 of the FFS production was, in fact, Van Norstrand's personal Google account, through counsel, Counterclaim Defendants then changed their factual position and represented that the personal Google account in which they were housed was actually the Company's account not Van Norstrand's personal account.

111.116.     Counterclaim Defendants have admitted that they accessed Van Norstrand's personal Google account, changed the credentials, and deprived Van Norstrand of more than 10 years of his personal confidential, privileged, personal and sensitive data and information.

112.117.    Any authorization that Counterclaim Defendants had to their individual email and documents within the corporate account housed within Van Norstrand's personal account ended on March 25, 2022.  Counterclaim Defendants never had authorization, permission or consent to access Van Norstrand's personal Google account or to review, access or take the data stored therein.

113.118.    Van Norstrand cannot be fully compensated with monetary damages nor can he accurately compensate the magnitude of all of the resulting damages at a later time for the injuries he sustained, is sustaining, or will continue to sustain as a result of Counterclaim Defendants' continued deprivation of his access to and control of the more than 10 years of store data including but not limited to his personal, confidential, privileged, personal and sensitive communications, data and information.

114.119.    Further, in addition to wrongfully and improperly attempting to squeeze Van Norstrand from the Company, the Counterclaim Defendants Reese, Brent and Tunson also attempted to devalue his membership interests and pay him based on a book value "valuation" performed by the Company's and Brent's personal accountants, Lebson & Associates, in violation of Para. 38 of the Operating Agreement, which requires a fair market value appraisal conducted by an independent accounting firm agreed to by all Members.

115.120.    In addition, Counterclaim Defendants improperly calculated retained earnings from 2021, improperly calculated revenues and draws through March 31, 2022, and made a "catch up" payment to Reese and Brent for 2021, contradicting their prior agreement to receive only 65% of their actual billable hours.

~~116.~~121.     In an email dated June 17, 2022, Reese admitted that the Counterclaim Defendants requested and received a valuation without using the prescribed approach in the Operating Agreement.

~~117.~~122.     Reese is also the same person and attorney who drafted and/or worked on the Operating Agreement and represented to Van Norstrand and Brent back on July 22, 2022 that the sale or purchase of their member interests would be based on a fair valuation – "simply what a third party offers a membership percentage."

~~118.~~123.     Reese never advised Van Norstrand that the Operating Agreement could be interpreted to mean that membership interested would be based on a "book value" or that, notwithstanding requiring unanimous approval to admit new members or make any changes, somehow allowed for removal of a member by a majority vote.

~~119.~~124.     Attempting to minimize any moneys owed to Van Norstrand, Counterclaim Defendants deliberately failed to identify any goodwill or any intellectual property items (such as but not limited to the FCL) in the financials of the Company before the improper removal of Defendant.

~~120.~~125.     Reese also never advised Van Norstrand to obtain independent legal counsel before signing the Operating Agreement that gave Reese 51% ownership interest and allegedly provided for the above.

~~121.~~126.     Based on the Lebson & Associates "appraisal", and without the agreement of Van Norstrand, Counterclaim Defendants Reese, Brent and Tunson wired Van Norstrand $24,513.21 on or about June 21, 2022 as "payment" for his 12.5% membership interests.

~~122.~~127.     On or about June 29, 2022, Van Norstrand had his bank send a check to return the funds and Counterclaim Defendants refused to accept the return of the funds.

123.128.    Based upon the existing contracts in place on March 22, 2022, the net profits for 2021, which were approximately $479,695, and reasonable multiples of the fair market value of all Company assets minus liabilities as of March 22, 2022 (and not just Van Norstrand's member interests, as provided for in Para. 38), Van Norstrand's ownership interests value would be a minimum of approximately $474,000 (a 3x multiple of 2021 net profits) and could be a maximum of $2,374,490 million (a 15x multiple).

124.129.    Counterclaim Defendants Reese, Brent and Tunson have also refused to pay Van Norstrand for unpaid billable hours worked on contracts in November and December 2021, totaling approximately $40,000.

125.130.    Notwithstanding the above facts, and unsurprisingly, Counterclaim Defendants Reese, Brent and Tunson have also refused to pay Van Norstrand the retained earnings to which he is in entitled for 2021, which total a minimum of $55,611 by their own calculations, yet which they are instead contending that Tunson is entitled to 50% of them, and as much as approximately $135,000 based on actual net earnings for 2021.

126.131.    Counterclaim Defendants Reese, Brent and Tunson have also refused to pay Van Norstrand his monthly member draw of $16,666 since mid-March 2022, totaling approximately $233,324 as of May 2023 (and which continue to accrue).

127.132.    When Van Norstrand attempted to return certain Company A assets to Tunson on behalf of the Company, Tunson shared that Counterclaim Defendants Reese, Brent and Tunson decided to involuntarily dissociate Van Norstrand from the Company because he had the audacity to hire an attorney to protect his interests, notwithstanding the fact that Reese is an attorney and has been advising Counterclaim Defendants throughout the entire process.

128.133.      Counterclaim Defendants Reese, Brent and Tunson also failed to secure the ownership of the www.futurefieldsolutions.com domain, currently owned by Van Norstrand, prior to their improper and wrongful attempt to force him from the Company, triggering what they believed to be a required reporting event and corresponding a security audit and investigation of the Company.

129.134.      Counterclaim Defendants also purchased a new domain, www.ffs.us, and attempted to reroute their email traffic through this new domain.

130.135.      For reasons unknown to Defendant, Counterclaim Defendants were incapable of properly establishing this new domain and redirecting email and data traffic through it, and then made false statements to third parties blaming Van Norstrand for their incompetence in establishing this new domain for their email and data.

131.136.      Failing to acknowledge the total incompetence in their handling of the domain ownership and/or an amicable transition of Van Norstrand from the Company, they have instead made false allegations that Van Norstrand agreed to transfer ownership of the www.futurefieldsolutions.com domain prior to any agreement on the sale of his membership interests or receipt of payment for the domain and/or his owed compensation, his actual retained earnings, and/or 2022 draws to which he is entitled.

132.137.      Moreover, Counterclaim Defendants' position the www.futurefieldsolutions.com domain and their alleged duty to self-report is based on their misunderstanding of where the Company's data is housed, which is in Microsoft 365 and not with GoDaddy.

133.138.      To make matters worse, and to the best of Van Norstrand's knowledge, Counterclaim Defendants Reese, Brent and Tunson either negligently and/or intentionally failed

to implement growth plan designed by Van Norstrand and have failed to secure any additional contracts at Aberdeen and/or Ft. Meade.

139.    In addition, the funding for the largest existing contract held by the Company has been pulled, requiring the layoff of several key employees.

140.    In short, since "taking over" the Company and improperly squeezing Van Norstrand from the Company, Counterclaim Defendants Reese, Brent and Tunson have negligently and/or intentionally run the Company into the ground.

141.    In or around November 2022, the Counterclaim Defendants purchased and took control of Periarchon. [2]

142.    On November 28, 2022, Counterclaim Defendant, Brent, became the resident agent of Periarchon and changed its principal place of business to his home address at: 14550 Burntwood Road Glenwood, MD 21783, which is the same principal address as FFS.

143.    Counterclaim Defendants Reese, Tunson, and Brent own and control Periarchon.

144.    Periarchon is registered on "OpenGovUS" which is a website that provides open access to publicly available information issued by the United States government, particularly information about government contracts.[3]

145.    OpenGovUS lists Counterclaim Defendants, Reese and Tunson as the sole Members of Periarchon.

146.    OpenGovUS provides that Periarchon is registered with the System for Award Management (SAM) of the U.S. General Services Administration (GSA).[4]

---

[2] True and correct copies of Periarchon's business registration and Resolution to Change Principal Office and/or Resident Agent are attached hereto as *Exhibit 5 and 6, respectively.*
[3] A true and correct copy of Periarchon, L.L.C.'s profile on OpenGovUS is attached hereto as *Exhibit 7.*
[4] SAM is the official U.S. Government system for listing government contracting opportunities and data.

~~134.~~147.    The OpenGovUS profile for Periarchon is virtually identical to FFS's profile on the website and advertises that Periarchon offers the same services as FFS including "Custom Computer Programming," "Computer Systems Design Services," "Other Computer Related Services," and "All Other Professional, Scientific, and Technical Services." FFS's profile on OpenGovUS advertises that it also provides "Custom Computer Programming," "Computer Systems Design Services," "Other Computer Related Services," and "All Other Professional, Scientific, and Technical Services." [5]

148.    Van Norstrand, individually and through his work at FFS, cultivated successful business relationships with other government contractors and now, Counterclaim Defendants, Reese, Tunson, and Brent are transferring the goodwill and business opportunities to their new entity, while ignoring and depleting FFS' business.

149.    Upon information and belief, Counterclaim Defendants, Reese, Tunson, and Brent have wrongfully abandoned FFS and have begun fraudulently transferring FFS's business to their new company, in violation of the FFS Operating Agreement and their fiduciary duties owed to FFS and Van Norstrand.

150.    Upon information and belief Counterclaim Defendants, Reese, Tunson, and Brent wrongfully transferred at least one subcontract, which was originally awarded to FFS, to their new company, Periarchon.

151.    Upon information and belief Periarchon was also recently awarded a subcontract, with Lockheed Martin as its prime, which was a subcontract that FFS would have otherwise been eligible and entitled to obtain.

---

[5] A true and correct copy of FFS's OpenGovUS profile is attached hereto as ***Exhibit 8***.

135.152.     Factual allegations contained in Defendant's Answer filed concurrently herewith are incorporated herein by this reference as if fully stated herein.

### COUNT I
### Declaratory Judgment

136.153.     The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

154.    This is an action for declaratory judgment, was originally brought pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 3-406 and 3-409, for the purpose of determining a question of actual controversy between the parties and terminating the uncertainty about Van Norstrand's status as a member of FFS.  This claim is now brought pursuant to 28 U.S.C. 2201, *et al*, and Rule 57 of the Federal Rules of Civil Procedure.

137.    This is an action for declaratory judgment, pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 3-406 and 3-409, for the purpose of determining a question of actual controversy between the parties and terminating the uncertainty about Van Norstrand's status as a member of FFS.

138.155.     Counterclaim Defendants Reese, Brent and Tunson attempted to squeeze Van Norstrand from the Company on March 22, 2022, by executing an Amendment to the Operating Agreement, which removed Van Norstrand as a member of the Company.

139.156.     Paragraph 28 describes events leading to bases for the involuntary withdrawal of a Member of the Company but does not provide for a mechanism of a majority vote based upon the alleged occurrence of such events described therein.

140.157.     Indeed, Paragraph 28 expressly contemplates a judicial determination in order to expel a member based on alleged wrongful conduct or a willful or persistent commission of a material breach of the Operating Agreement or duties owed to the Company or other members, among other things.

28

141.158.      Likewise, paragraph 64 of the Operating Agreement requires that all members sign any written amendments in order for them to be effective.

142.159.      Van Norstrand did not execute the March 22, 2022 Amendment and did not agree to be involuntarily removed from the Company.

143.160.      Counterclaim Defendants Reese, Brent and Tunson presumably realized that the March 22, 2022 Amendment was not effective and have since asserted that Van Norstrand was removed as a result of incompetence, dishonesty and an "inappropriate" issue with and/or "abuse" of an employee.

144.161.      Van Norstrand denies Counterclaim Defendants Reese, Brent and Tunson's claims and/or that he has acted in a manner demonstrating any of the above.

145.162.      Counterclaim Defendants Reese, Brent and Tunson never informed Van Norstrand of the factual basis for his improper and unauthorized "removal" prior to the filing of the Howard County Circuit Court Complaint on July 1, 2022.

146.163.      Van Norstrand will be irreparably damaged by the uncertainty surrounding whether the March 22, 2022 Amendment is proper or enforceable and whether he remains a member of the Company.

164.      Van Norstrand will be irreparably damaged by the uncertainty surrounding whether he was improperly removed from the Company.

165.      Upon information and belief, some or all of FFS's payments and subcontracting work were wrongfully transferred to Periarchon.

166.      Counterclaim Defendants, Tunson and Reese, own and control Periarchon.

29

167.   Upon information and belief Periarchon was formed as the alter ego of FFS and Periarchon has no existence separate from or independent of FFS, relying on the corporate opportunities provided by Tunson and Reese from FFS.

~~147.~~168.   Upon information and belief Periarchon acts solely as a conduit for the transfer of work and assets of FFS and that Periarchon has no separate or distinct business purpose from FFS, other than to wrongfully disadvantage and cut out Van Norstrand from FFS opportunities and profit.

~~148.~~169.   A judicial declaration will contribute to the efficient resolution of this dispute and terminate any future dispute between the parties.

WHEREFORE, Defendant/Counterclaim-Plaintiff Van Norstrand respectfully requests entry of a declaratory judgment and decree pursuant to 28 U.S.C. 2201, *et al*, and Rule 57 of the Federal Rules of Civil Procedure, stating that (a) Van Norstrand remains a member of the Company, ~~and~~ (b) the March 22, 2022 Amendment is improper and unenforceable per the terms of the Operating Agreement; and (c) Periarchon, L.L.C. is the alter ego of Future Field Solutions, LLC and that Periarchon is liable for any profits, business, and obligations that should belong to Future Field Solutions and owed to Defendant upon entry of judgment.

**COUNT II**
**Breach of Contract**

~~149.~~170.   The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

~~150.~~171.   The Operating Agreement constitutes a binding contract between and among the members of the Company.

~~151.~~172.   Van Norstrand fully and faithfully performed in good faith his contractual obligations under the Operating Agreement.

~~152.~~173.        The Operating Agreement expressly provides that no new members may be admitted to the Company (Para. 24), any amendments to be effective must be in writing signed by all members (Para. 64), and remaining members have a right of first purchase over third parties (Para. 35).

~~153.~~174.        Regarding the Dissociation of a Member, the Operating Agreement provides:

> 30.   In the event of either a voluntary or involuntary withdrawal of a Member, if the remaining Members elect to purchase the interest of the withdrawing Member, the remaining Members will serve written notice of such election, including the purchase price and method and schedule of payment for the withdrawing Member's Interests, upon the withdrawing Member, their executor, administrator, trustee, committee or analogous fiduciary within a reasonable period after acquiring knowledge of the change in circumstance to the affected Member. The purchase amount of any buyout of a Member's Interests will be determined as set out in the Valuation of Interest section of this Agreement.
>
> 31.   Valuation and distribution will be determined as described in the Valuation of Interest section of this Agreement.

~~154.~~175.        Paragraph 38 of the Operating Agreement provides the following regarding the Valuation of Interest:

> In the absence of a written agreement setting a value, the value of the Company will be based on the fair market value appraisal of all Company assets (less liabilities) determined in accordance with generally accepted accounting principles (GAAP). This appraisal will be conducted by an independent accounting firm agreed to by all Members. An appraiser will be appointed within a reasonable period of the date of withdrawal or dissolution. The results of the appraisal will be binding on all Members. The intent of this section is to ensure the survival of the Company despite the withdrawal of any individual Member.

~~155.~~176.        Counterclaim-Defendants Reese, Brent and Tunson have failed to follow the requirements of the Operating Agreement in _failing to_ obtain~~ing~~ signatures of all members on the March 22, 2022 Amendment, as required by Paragraph 64, fail~~ing~~_ed_ to properly notify Van Norstrand of their intent to force him from the Company or acquire his member interests, as

required by Paragraphs 30 and 72, and failinged to obtain an independent fair market valuation of all Company assets pursuant to Paragraph 38, thus materially breaching their obligations as to each of these provisions, among others.

~~156.~~177.      As a result, Van Norstrand has been wrongfully deprived of his rights as a member of the Company, the fair market value of his member interests in the Company, and the full amount of his retained earnings from 2021, in addition to his compensation and draws.

WHEREFORE, Defendant/Counter-Plaintiff Van Norstrand respectfully requests that this Court (1) enter a judgment against Counterclaim Defendants FFS, Reese, Brent and Tunson, awarding compensatory damages to Van Norstrand in the amount of the fair market value of his member interests, his retained earnings, his unpaid compensation and draws, believed to total in excess of a minimum of $740,000 and as much as $2,640,490, the specific amount to be determined at trial, plus statutory pre-judgment and post-judgment interest; (2) award Van Norstrand's reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and (3) provide such other and further relief as this Court may deem just and proper.

## COUNT III
### Breach of Duty of Loyalty

~~157.~~178.      The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

~~158.~~179.      Beginning with the execution of the Operating Agreement in 2020, Reese has held a controlling interest in the Company and 51% majority member.

~~159.~~180.      Coupled with Brent's 24.5% interest and Tunson's 12.5% interest in the Company, the Counterclaim Defendants hold a majority controlling interest in the Company.

~~160.~~181.      As 51% majority member and together holding supermajority controlling interest in the Company, Counterclaim Defendants Reese, Brent and Tunson owed the Company

and Van Norstrand a duty of loyalty and a fiduciary duty not to place their personal interests above the Company or Van Norstrand.

161.182.        Counterclaim Defendants Reese, Brent and Tunson owed fiduciary obligations to the Company and Van Norstrand included the following duties:

a.      The duty to act in the best interests of the Company, which includes an obligation not to terminate a valuable employee, such as Van Norstrand, for personal reasons;

b.      The duty to not place their personal interests ahead of those of the Company, which includes an obligation not to steal the retained earnings or net profits of other members;

c.      The duty to operate the Company in accordance with the provisions of the Operating Agreement;

d.      The duty to pay members and employees, including Van Norstrand, in a manner consistent with applicable law;

e.      The duty to make distributions to members in proportion to the members' ownership interests and/or pursuant to the terms of the Operating Agreement and/or pursuant to the terms they agreed relating to 65% of their billables;

f.      The duty not to make decisions regarding distributions solely for certain members' benefit to the detriment of others;

g.      The duty not to waste the Company's value, such as but not limited to failing to protect and secure existing and expected contracts; and.

g.h.    The duty to not compete, carry on, or participate in, a similar business to

the business of the Company, within any market regions that were established or contemplated by the Company.

~~162.~~183.        Counterclaim Defendants Reese, Brent and Tunson wrongfully and materially breached all of the duties described above.

~~163.~~184.        As a direct consequence of their actions, Van Norstrand has been critically harmed by Counterclaim Defendants Reese, Brent and Tunson's breaches of duty, and he has suffered significant financial losses as a result.

~~164.~~185.        Because Counterclaim Defendants Reese, Brent and Tunson have complete control over the Company and because Van Norstrand could face personal liability for the above-referenced breaches of duty, any corporate demand should be excused as futile.

WHEREFORE, Defendant/Counter-Plaintiff Van Norstrand respectfully requests that this Court (1) enter a judgment against Counterclaim Defendants FFS, Reese, Brent and Tunson, awarding compensatory damages to Van Norstrand in an amount in excess of $100,000 plus punitive damages, as well as statutory pre-judgment and post-judgment interest the specific amount to be determined at trial; (2) award Van Norstrand punitive damages; (3) award Van Norstrand's reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and (4) provide such other and further relief as this Court may deem just and proper.

**COUNT IV**
**Breach of Fiduciary Duty**

~~165.~~186.        The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

~~166.~~187.        Due to their position as 51% majority member and together holding a supermajority controlling interest in the Company, Counterclaim Defendants Reese, Brent and Tunson owed the Company and Van Norstrand a fiduciary duty to perform their management

duties with due care and in the best interests of the Company. These duties included an obligation not to waste corporate assets or put their personal interests ahead of the interests of the Company or other members.

~~167.~~188.       Counterclaim Defendants Reese, Brent and Tunson breached their duty of loyalty to the Company and Van Norstrand by running the Company for their personal benefit instead of for the benefit of all of the members.

~~168.~~189.       Counterclaim Defendants Reese, Brent and Tunson breached their fiduciary duties to the Company and Van Norstrand by terminating the employment of one of the company's most valuable employees, Van Norstrand, so that they would have more leverage against him in buyout negotiations. Counterclaim Defendants Reese, Brent and Tunson's decision to terminate Van Norstrand—while beneficial to their personal financial interests—was detrimental to the Company—improvidently and negligently creating an event that they felt compelled to then self-report after they wrongfully removed Van Norstrand and then claimed that his refusal to agree resulted in an "insider threat" and/or mistakenly or intentionally falsely reporting that the copying of data was actually the deletion of data.

190.    Counterclaim Defendants Reese, Brent and Tunson also breached their duty of care to the Company and Van Norstrand by threatening to liquidate the Company if Van Norstrand did not agree to sell his shares at a discount. The liquidation of the Company, and artificially reducing its value, have no justification as a business strategy of the Company.

~~169.~~191.       Counterclaim Defendants Reese, Brent and Tunson also breached their fiduciary duties to the Company and Van Norstrand by creating an entity within FFS's market region that is a similar business as FFS and diverting FFS assets and resources into their new company, Periarchon, in wrongful competition with FFS.

~~170.~~192.     As a direct consequence of their actions the Company and Van Norstrand have suffered damages as a result of Counterclaim Defendants Reese, Brent and Tunson breaches of their fiduciary duties in the form of wasted assets and lost value.

WHEREFORE, Defendant/Counter-Plaintiff Van Norstrand respectfully requests that this Court (1) enter a judgment against Counterclaim Defendants FFS, Reese, Brent and Tunson, awarding compensatory damages to Van Norstrand in an amount in excess of $100,000 plus punitive damages, statutory pre-judgment and post-judgment interest the specific amount to be determined at trial; (2) award punitive damages; (3) award Van Norstrand's reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and (4) provide such other and further relief as this Court may deem just and proper.

### COUNT V
### Violation of Maryland Wage Payment and Collection Law ("MWPCL")

~~171.~~193.     The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

~~172.~~194.     Van Norstrand was ae member-employee of the Company receiving wages pursuant to § 3-501 of the MWPCL.

~~173.~~195.     The Company was an employer pursuant to § 3-501 of the MWPCL.

~~174.~~196.     As Van Norstrand's employer, the Company was required to pay Van Norstrand all wages due for the work he performed, including the amounts owed to him from November 2021 through March 22, 2022.

~~175.~~197.     The Company failed to make all payments due to Van Norstrand.

~~176.~~198.     The Company's failure to pay all wages due was not the result of any bona fide dispute regarding the amount of Van Norstrand's wages.

WHEREFORE, the Company is liable to Defendant/Counter-Plaintiff Van Norstrand for

36

three times (3x) the amount of all unpaid wages, draws, and severance payments that the Company failed to pay to Van Norstrand in an amount in excess of $200,000 plus statutory pre-judgment and post-judgment interest, attorneys' fees, costs, and the expenses of this action incurred as a result of the Company's failure to pay Van Norstrand what was legally owed to him, and for such other legal and equitable relief from the Company's unlawful and willful conduct as the Court deems proper.

**COUNT VI**
**Accounting**
**(Against Counterclaim Defendant FFS and Third Party Defendant Periarchon)**

~~177.~~199.      The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

~~178.~~200.      The Company received funds and distributed funds to members since its inception.

~~179.~~201.      The Company is contractually required to distribute funds to members in proportion to each member's ownership interest and/or pursuant to the terms of the Operating Agreement, after liabilities such as but not limited agreed upon salaries.

~~180.~~202.      On information and belief, the Company has distributed more funds to Counterclaim Defendants Reese, Brent and Tunson than to Van Norstrand on the basis of catch up distributions and ignoring their agreement to receive a salary of 65% of their billable hours in 2020 and 2021.

~~181.~~203.      Alternatively, Counterclaim Defendants Reese, Brent and Tunson have caused the Company not to issue distributions and/or to withhold funds due and owing to Van Norstrand for their personal benefit and the benefit of Periarchon.

~~182.~~204.      On information and belief, the Company was required to obtain Van Norstrand's consent before entering into transactions valued at over $10,000.

183.205.	On information and belief, Counterclaim Defendants Reese, Brent and Tunson have caused the Company to enter into such major transactions without Van Norstrand's consent.

184.206.	Van Norstrand has asked the Company for all records relating to any transactions it has entered into for more than $10,000 and any records relating to the member distributions they have made, including the accounting performed for purposes of the acquisition of his member interests.

185.207.	However, Counterclaim Defendants Reese, Brent and Tunson have refused to provide to Van Norstrand with all records relating to the Company's transactions valued at more than $10,000 and/or other financial records dated after March 22, 2022.

186.208.	The Company has further refused to provide bank records reflecting member distributions and other payments through 2023.

187.209.	Counterclaim Defendants Reese, Brent and Tunson have a duty to account for the transactions entered into and distributions made by the Company.

188.210.	Counterclaim Defendants Reese, Brent and Tunson have refused to provide this accounting to Van Norstrand despite his significant ownership interest in the Company and being a founding member.

189.211.	In or about October 19, 2022, and following a hearing before the Howard County Circuit Court, Counterclaim Defendants agreed with Van Norstrand to retain a business valuation company in an attempt to reach an amicable resolution.

190.212.	Counterclaim Defendants took nearly seven (7) months to finalize the Company's 2021 financial records and provide them to the business valuation company.

213.   Records provided to the business valuation company by Counterclaim Defendants for both 2021 and 2022 make clear that they made numerous retroactive modifications to the 2021 and 2022 financial records to support their position in this case and to minimize moneys owed to Van Norstrand.

214.   The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

215.   On information and belief, Periarchon has received opportunities, contracts, funds, and assets from Counterclaim Defendants Reese, Brent and Tunson, which should have been directed to FFS.

216.   On information and belief, Counterclaim Defendants Reese, Brent and Tunson are diverting opportunities, contracts, funds and assets from FFS to Periarchon.

217.   Van Norstrand has asked Counterclaim Defendants to provide all records relating to the FFS's transactions valued at more than $10,000 and/or other financial records dated after March 22, 2022.  However, they have refused.

218.   FFS has further refused to provide complete bank records through 2023.

1.219.   Counterclaim Defendants Reese, Brent and Tunson have a duty to account for the transactions entered into and distributions made by FFS including any transfers or transactions with Periarchon.

WHEREFORE,   Defendant/Counter-Plaintiff/Third Party Plaintiff   Van   Norstrand respectfully requests that this Court order the Company to provide Van Norstrand with a complete accounting of the Company including but not limited to (1) all funds relating to transactions valued at more than $10,000 that were entered into by either the Company and (2) all funds distributed to members of the Company, as well as such other and further relief as this Court may deem just and

proper; and (3) order Third Party Defendant Periarchon to provide Van Norstrand with a complete accounting of Periarchon since 2022 including but not limited to (1) all business transactions, transfers, and opportunities that it has received or otherwise benefitted from with the wrongful actions and conduct of FFS and Counterclaim Defendants Reese, Brent, and Tunson.

### COUNT VII
### Wrongful Termination

2.220. The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

3.221. Van Norstrand was an employee and part owner of the Company.

4.222. As a part owner of the Company, Van Norstrand had a greater expectation of employment with the Company than would have a non-owner employee.

5.223. The Company terminated Van Norstrand because he hired an attorney to protect his member interests and refused to sell his member interests in the Company to Defendants Reese, Brent and Tunson on unreasonable terms.

6.224. The Company's termination of Van Norstrand's employment was wrongful, because the Company did not have a proper purpose for terminating his employment, given his status as a part owner.

WHEREFORE, Defendant/Counter-Plaintiff Van Norstrand respectfully requests that this Court (1) enter a judgment against the Company, awarding compensatory damages to Van Norstrand in an amount in excess of $100,000 plus statutory pre-judgment and post-judgment interest; (2) enter an award of punitive damages; (3) award Van Norstrand reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and (4) provide such other and further relief as this Court may deem just and proper.

## COUNT VIII
### Indemnification

~~7.~~225.  The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

~~8.~~226.  Paragraph 59 of the Operating Agreement provides the following:

All Members will be indemnified and held harmless by the Company from and against any and all claims of any nature, whatsoever, arising out of a Member's participation in Company affairs. A Member will not be entitled to indemnification under this section for liability arising out of gross negligence or willful misconduct of the Member or the breach by the Member of any provisions of this Agreement.

~~9.~~227.  To the extent that Counterclaim Defendants Reese, Brent and Tunson have caused Van Norstrand to defend against two (2) separate lawsuits arising from Van Norstrand's participating in Company affairs, under the plain language of Paragraph 59, Van Norstrand is entitled to indemnification.

WHEREFORE, Defendant/Counter-Plaintiff Van Norstrand respectfully requests entry of an award of all attorneys' and experts' fees, costs and expenses resulting from these claims and provide such other and further relief as this Court may deem just and proper.

## COUNT IX
### (Gross Negligence and/or Willful Misconduct)

~~10.~~228. The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

~~11.~~229. At all relevant times, Counterclaim Defendants Reese, Brent and Tunson as members of the Company owed/owe the Company and its members, including Van Norstrand, fiduciary duties of care, good faith, loyalty, and to avoid self-dealing.

~~12.~~230. As set forth above, Counterclaim Defendants Reese, Brent and Tunson materially breached those duties intentionally and/or with reckless disregard for the Company and/or its

members, when they negligently, or knowingly and intentionally, caused an investigation of the Company regarding its website domain, lost funding of one or more existing contracts, lost key personnel and failed to secure contract renewals and/or additional contracts, basically running the Company into the ground all in less than five months, and then causing Van Norstrand to be removed from one contract and investigated regarding another all based upon their incompetent, biased and improperly motivated "investigation" to justify their mishandling of their member dispute with Van Norstrand.

13.231.Counterclaim Defendants Reese, Brent and Tunson's actions, if not knowing and intentional were grossly negligent.

14.232.As a direct and proximate result of Counterclaim Defendants Reese, Brent and Tunson's actions, as alleged herein, Van Norstrand has and will continue to suffer harm and damages.

WHEREFORE, Defendant/Counter-Plaintiff Van Norstrand respectfully requests entry of judgment in favor of Van Norstrand against Counterclaim Defendants Reese, Brent and Tunson in an amount in excess of $75,000 to be determined at trial, together with prejudgment and post judgment interest at the maximum rate allowable by law, an award of punitive damages, an award to Van Norstrand for his counsel's reasonable attorneys' and experts' fees, expenses and costs for bringing this action, punitive damages, and awarding such other relief as the Court deems necessary and appropriate.

## COUNT X
**(Violations of the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*)**

15.233.The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

16.234.Counterclaim Defendants knowingly, intentionally, and purposefully engaged in wrongful conduct in violation of the Stored Communications Act by unlawfully and without authorization accessing, reading, copying, and forwarding to other individuals stored electronic communications from Van Norstrand's personal Google account without receiving authorization or permission from Van Norstrand or anyone acting on his behalf.

17.235.Counterclaim Defendants have admitted through counsel and through documents produced in this matter, that they knowingly, intentionally, and purposefully engaged in wrongful conduct in violation of the Stored Communications Act by unlawfully and without authorization accessing, reading, copying, and forwarding to other individuals stored electronic communications from Van Norstrand's personal Google account without receiving authorization or permission from Van Norstrand or anyone acting on his behalf.

18.236.Counterclaim Defendants have admitted through counsel and documents produced in this matter, that they provided documents and information that they wrongfully obtained from Van Norstrand's personal Google account to representatives of third parties, such as but not limited to Ty Obitz of Lockheed Martin, the DCSA ISR, and others, causing significant harm to Van Norstrand and his reputation.

19.237.Counterclaim Defendants' intentional and wrongful actions set forth above were willful, malicious, and/or undertaken with callous disregard for Van Norstrand's legally protected rights and/or done with the deliberate intent to harm Van Norstrand and/or his reputation.

20.238.In addition to actual damages caused by Counterclaim Defendants' actions and representations, Van Norstrand is entitled to an award of the minimum statutory damages figure, for each instance in which Counterclaim Defendants, without authority, accessing, reading,

copying, and forwarding to another individual stored electronic communications from Van Norstrand's personal Google account in violation of the Act.

21.239. In addition, Van Norstrand is entitled to an award of injunctive relief returning access to his Google account to him and requiring that Counterclaim Defendants to delete all copies of the documents they have reviewed, copied and retained.

WHEREFORE, Defendant/Counter-Plaintiff Van Norstrand respectfully requests entry of judgment in favor of Van Norstrand against Counterclaim Defendants Reese, Brent and Tunson, pursuant to 18 U.S.C. § 2707, in an amount in excess of $100,000 in compensatory and statutory and/or punitive damages, to be determined at trial, together with prejudgment and post judgment interest at the maximum rate allowable by law, an award to Van Norstrand for his counsel's reasonable attorneys' and experts' fees, expenses and costs for bringing this action, injunctive relief returning Van Norstrand's personal property, and awarding such other relief as the Court deems necessary and appropriate.

**COUNT XI**
**(Violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*)**

22.240. The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

23.241. Counterclaim Defendants intentionally accessed Van Norstrand's personal Google account without authorization and/or exceeding authorized access and thereby obtained and/or took control over confidential, privileged, personal and sensitive information therefrom.

24.242. Counterclaim Defendants knowingly and with intent to defraud Van Norstrand obtained access to and control over his personal Google account containing confidential, privileged, personal and sensitive information therein with intent to use the information to justify their improper and wrongful removal of Van Norstrand.

~~25.~~243. Counterclaim Defendants knowingly and intentionally accessed Van Norstrand's personal Google account without authorization and/or exceeding their prior authorization by taking, among other things, control of 10 plus years' worth of emails, documents, videos, pictures and related information, including but not limited to privilege and confidential communications with attorneys, his spouse and medical providers.

~~26.~~244. Counterclaim Defendants, individually and/or acting in concert, willfully and maliciously misappropriated Van Norstrand personal and confidential data and information by accessing and/or exceeding their prior authorization of his personal Google account.

~~27.~~245. Van Norstrand has suffered, and will continue to suffer, damages as a direct result of Counterclaim Defendants' conduct.

WHEREFORE, Defendant/Counter-Plaintiff Van Norstrand respectfully requests entry of judgment in favor of Van Norstrand against Counterclaim Defendants Reese, Brent and Tunson, pursuant to, 18 U.S.C. § 1030(g), in an amount in excess of $100,000 in compensatory and statutory and/or punitive damages, to be determined at trial, together with prejudgment and post judgment interest at the maximum rate allowable by law, an award of injunctive relief, an award to Van Norstrand for his losses comprising counsel's reasonable attorneys' and experts' fees, expenses and costs for bringing this action, and awarding such other relief as the Court deems necessary and appropriate.

## COUNT XII
### (Conversion)

~~28.~~246. The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

~~29.~~247. Counterclaim Defendants intentionally exerted "ownership or dominion over Van Norstrand's personal property, specifically ten (10) plus years' worth of data contained in his

Google account, in denial of and/or inconsistent with the Van Norstrand's right to his personal property.

~~30.~~248.Counterclaim Defendants unlawfully and tortiously converted Norstrand's personal property, specifically ten (10) plus years' worth of data contained in his Google account.

~~31.~~249.Van Norstrand has suffered legal damages as a result of Counterclaim Defendants' actions.

WHEREFORE, Defendant/Counter-Plaintiff Van Norstrand respectfully requests entry of judgment in favor of Van Norstrand against Counterclaim Defendants Reese, Brent and Tunson in an amount in excess of $100,000 in compensatory and punitive damages, to be determined at trial, together with prejudgment and post judgment interest at the maximum rate allowable by law, an award to Van Norstrand for his counsel's reasonable attorneys' and experts' fees, expenses and costs for bringing this action, and awarding such other relief as the Court deems necessary and appropriate.

## COUNT XIII
### (Invasion of Privacy)

~~32.~~250.The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

~~33.~~251.Counterclaim Defendants Reese, Brent and Tunson intentionally intruded into the private and personal Google account of Van Norstrand holding more than ten years of private, confidential, privileged and sensitive communications, documents, photos and videos of Van Norstrand, and mined through his personal, private, privileged and sensitive emails and records, including communications with his attorneys, his spouse and his medical providers in order to support their improper "involuntary removal" of Van Norstrand from the Company.

~~34.~~252. For example, Counterclaim Defendants searched through his personal health information, including his medical prescriptions, and created a document that they produced in this case identifying the medical prescriptions that Van Norstrand has taken – without even marking it as a confidential document.

~~35.~~253. Counsel for Van Norstrand notified counsel for Counterclaim Defendants of privileged and confidential documents information contained in Volume 4 of the FFS production and asked them to be removed and/or at the very least all marked confidential and treated accordingly and pursuant to the agreed upon stipulated protective order.

~~36.~~254. The above-described conduct of Counterclaim Defendants in intruding on Van Norstrand's privacy, searching through his private, privileged and confidential communications and records, and then producing them in this case, is and was highly offensive to Van Norstrand and would be offensive to any reasonable person.

~~37.~~255. Prior to Counterclaim Defendants essentially hacking into and locking Van Norstrand out of his personal Google account, Van Norstrand's personal Google account was private and was kept private.

~~38.~~256. Van Norstrand had a reasonable expectation of privacy that his Google account would be and remain private.

~~39.~~257. Van Norstrand never waived his expectation of privacy in his Google account nor agreed to any intrusion by Counterclaim Defendants therein.

~~40.~~258. Van Norstrand did not give permission or authorization to Counterclaim Defendants to access, review, copy and/or publish the contents of his personal Google account.

41.259.Counterclaim Defendants knew that their intrusion into Van Norstrand's Google account was improper and they attempted to later hide and justify said intrusion by falsely claiming that the emails and documents were located in the Company's Microsoft 365 account.

42.260.When confronted with metadata they produced confirming that the emails and documents came from Van Norstrand's Google account, they then falsely claimed that the Google account was owned by the Company.

43.261.The Google account was clearly Van Norstrand's Google account and the Counterclaim Defendants improperly accessed his personal account to gather information to support their wrongful "involuntary withdrawal" of Van Norstrand from the Company.

44.262.Any authorization they had to their corporate email accounts housed with the account had terminated on March 25, 2022 and they knew their access to Van Norstrand's personal account was wrongful, improper and highly offensive.

WHEREFORE, Defendant/Counter-Plaintiff Van Norstrand respectfully requests entry of judgment in favor of Van Norstrand against Counterclaim Defendants Reese, Brent and Tunson in an amount in excess of $100,000 in compensatory and punitive damages, to be determined at trial, together with prejudgment and post judgment interest at the maximum rate allowable by law, an award to Van Norstrand for his counsel's reasonable attorneys' and experts' fees, expenses and costs for bringing this action, and awarding such other relief as the Court deems necessary and appropriate.

## COUNT XIV
### (Defamation)

45.263.The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

46.264.Counterclaim Defendants Reese, Brent and Tunson, and/or representatives of FFS on their behalf, including but not limited to Amy Severe, intentionally and/or negligently made false statements to representatives of the DCSA, Lockheed, Accenture, and/or other entities and representatives in multiple written and verbal communications starting in May 2022 that Van Norstrand had been terminated and/or removed from the Company for wrongful or improper conduct relating to an employee, dishonesty, and/or incompetence, that Van Norstrand deleted Company data and/or presented an insider threat to the Company, and/or that Van Norstrand falsely represented his skills and experience in his resume.

47.265.More specifically, Counterclaim Defendants Reese, Brent and Tunson intentionally and/or negligently represented that Van Norstrand falsely represented the status of the Company's FCL when they specifically told Van Norstrand not to share the actual status of the FCL with anyone, including the company they claim he made a false statement to by simply stating that he was not sure of the status of the FCL.

48.266.More specifically, Counterclaim Defendants Reese, Brent and Tunson intentionally and/or negligently represented that Van Norstrand falsely represented that he "abused" and/or engaged in "inappropriate" conduct with an employee from whom they solicited negative comments from about Van Norstrand regarding his management of project for a customer and with whom Van Norstrand simply communicated and solicited how he could better communicate and work with him after learning of his negative criticism.

49.267.More specifically, Counterclaim Defendants Reese, Brent and Tunson intentionally and/or negligently represented that Van Norstrand was "incompetent" and requiring removal from the Company without ever speaking with Van Norstrand to understand the scope of the work performed by Van Norstrand on a particular contract.

49

50.268.More specifically, Counterclaim Defendants Reese, Brent and Tunson intentionally and/or negligently represented that Van Norstrand misrepresented his skills and experience based on their review and interpretation of certain resumes that they improperly and wrongfully obtained from Van Norstrand's personal Google account and based on the dates which the Future Field Solutions entity was officially formed.

51.269.More specifically, Counterclaim Defendants Reese, Brent and Tunson intentionally and/or negligently represented that Van Norstrand deleted corporate data and presented an insider risk to the Company.

52.270.Counterclaim Defendants Reese, Brent and Tunson knowingly made the aforementioned false and defamatory statements about Van Norstrand in writing and in verbal communications.

53.271.Counterclaim Defendants Reese, Brent and Tunson, and/or representatives on their behalf, including but not limited to Severe, published these false and defamatory statements to representatives and executive level officers of the DCSA, Lockheed, Accenture and other entities and organizations,[6] who reasonably understood these statements to be defamatory.

54.272.As a result of the false and defamatory statements published by, on behalf of or at the direction of Counterclaim Defendants, the character and reputation of Van Norstrand have been harmed and his standing and reputation in the cybersecurity computer programming community have been harmed.

---

[6] Van Norstrand does not know all of the parties to whom these statements were published because Counterclaim Defendants have withheld these documents from production claiming they are privileged or classified. They were recently ordered by the Maryland Howard County Circuit Court to produce all non-privileged communications and provide a privilege log of any documents or communications they are withholding based on privilege or other grounds.

~~55.~~273. As direct and proximate result of the false and defamatory statements published by Counterclaim Defendants, Van Norstrand has been removed from contracts, not considered for contracts, has been investigated by Lockheed, and has and will thereby suffer a loss of income and related damages.

~~56.~~274. None of the above statements were privileged, and even if Counterclaim Defendants contend they were compelled to make such statements, they knew the statements were false and/or acted with reckless disregard for the truth and/or accuracy of the statements they were making, and/or Counterclaim Defendants made the statements with malice and intent to harm Van Norstrand.

WHEREFORE, Defendant/Counter-Plaintiff Van Norstrand respectfully requests entry of judgment in favor of Van Norstrand against Counterclaim Defendants Reese, Brent and Tunson in an amount in excess of $100,000 in compensatory and punitive damages, to be determined at trial, together with prejudgment and post judgment interest at the maximum rate allowable by law, an award to Van Norstrand for his counsel's reasonable attorneys' and experts' fees, expenses and costs for bringing this action, and awarding such other relief as the Court deems necessary and appropriate.

## COUNT XV
### (Fraud)

~~57.~~275. The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

~~58.~~276. Counterclaim Defendant Reese represented to Van Norstrand that the valuation of the Company and any member interest would be based upon a "fair valuation" and "simply what a third party offers a membership percentage."

~~59.~~277. Counterclaim Defendant Reese never disclosed that the Operating Agreement provided for a "book valuation" of the Company or a member's interest, never disclosed that the Operating Agreement provided for or allowed the removal of a member by a majority vote, and never encouraged Van Norstrand to seek independent legal counsel before signing the Operating Agreement that Reese, an attorney, worked on and finalized for the members.

~~60.~~278. Counterclaim Defendant Reese represented that his service-disabled veteran status would assist the Company in obtaining government contracts and that he needed to own 51% of the Company even though all new members (Van Norstrand, Reese and Brent) were contributing the same amount of capital and even though Van Norstrand was performing by far the lion's share of the billable work and business development work.

~~61.~~279. Counterclaim Defendant Reese knew when he made the above representations or failed to make the above representations, respectively, that they were false statements and/or material omissions that would induce Van Norstrand to sign the Operating Agreement.

~~62.~~280. Van Norstrand reasonably relied upon the representations or omissions of Counterclaim Defendant Reese in signing the Operating Agreement.

~~63.~~281. Van Norstrand has suffered legal damages as a result of Counterclaim Defendant Reese's fraudulent misrepresentations and/or material omissions.

WHEREFORE, Defendant/Counter-Plaintiff Van Norstrand respectfully requests entry of judgment in favor of Van Norstrand against Counterclaim Defendants Reese, Brent and Tunson in an amount in excess of $100,000 in compensatory and punitive damages, to be determined at trial, together with prejudgment and post judgment interest at the maximum rate allowable by law, an award to Van Norstrand for his counsel's reasonable attorneys' and experts' fees, expenses and

costs for bringing this action, and awarding such other relief as the Court deems necessary and appropriate.

**COUNT XVI**
**(Tortious Interference with Contracts and Business Expectancies)**
**(Against Counterclaim Defendants Reese, Tunson, and Brent and Third Party Defendant Periarchon)**

64.282.The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

65.283.From April 2022 to January 2023, Van Norstrand was working under a subcontract with Accenture, on which Lockheed was a co-prime.

66.284.Historically, Van Norstrand had a very positive and successful working relationship with Accenture.

67.285.Historically, Van Norstrand had a very positive and successful working relationship with Lockheed.

68.286.Counterclaim Defendants Reese, Brent and Tunson knew that Van Norstrand had contracts with Company A and Company L.

69.287.Van Norstrand had a reasonable expectation of continuing to work under the subcontracts with Accenture and Lockheed.

70.288.Without explanation, in or about January 2023, Van Norstrand was told through the entity under subcontract with Accenture that he was being terminated from the subcontract.

71.289.Through discovery in the underlying State Court case, and as recently as May 11, 2023, Van Norstrand learned that Counterclaim Defendants communicated with Accenture and/or Lockheed based upon their review and interpretation of confidential information and documents obtained from Van Norstrand's personal Google account.

~~72.~~290.Counterclaim Defendants made intentionally and/or recklessly false and/or misleading statements to representatives of Accenture and/or Lockheed with the intent of causing them not to work with Van Norstrand.

~~73.~~291.As a direct result of Counterclaim Defendants' tortious, malicious and wrongful conduct and representations, Accenture and Lockheed had Van Norstrand removed from contracts with Accenture ~~them~~ and the two have not worked with Van Norstrand since then.

~~74.~~292.Counterclaim Defendants have intentionally interfered with Van Norstrand's business expectations and relationships for the purposes of securing contracts for themselves and to affirmatively cause harm to Van Norstrand and his reputation.

~~75.~~293.Counterclaim Defendants' interference was wrongful.  Counterclaim Defendants interfered with Van Norstrand's business expectancies and contracts by misappropriating and improperly using Van Norstrand's personal, confidential and privileged information.

294.  Because of Counterclaim Defendants' intentional interference with Van Norstrand's business expectancies and contracts, Van Norstrand has and will continue to suffer the monetary damages and damage to his reputation.

295.  Additionally, in November 2022, Counterclaim Defendants, Reese, Tunson, and Brent took control of Periarchon.

296.  Periarchon is a Maryland limited liability company that performs government-contracting services and advertises to provide similar govern-contracting services as FFS.

297.  Counterclaim Defendants Reese, Tunson, and Brent knew that FFS had been awarded government contracts and was bidding on other government contracts.

298.  FFS had a reasonable expectations of continuing to perform government contract services.

299.    During the course of litigation, Counterclaim Defendants Reese, Tunson, and Brent began to participate in a similar business as FFS, Periarchon, which is directly competitive with FFS.

300.    Counterclaim Defendants, Reese, Tunson, and Brent in violation of the Operating Agreement and their fiduciary duties to Van Norstrand and FFS, began to provide and/or advertise government-contracting services through their new company, Periarchon.

301.    Upon information and belief, Counterclaim Defendants, Reese, Tunson, and Brent have begun transferring FFS's business to their new company.

302.    Upon information and belief Counterclaim Defendants, Reese, Tunson, and Brent transferred a subcontract, which was originally awarded to FFS, to their new company, Periarchon.

303.    Upon information and belief Periarchon was also recently awarded a subcontract, with Lockheed Martin as its prime, which was a subcontract that FFS would have otherwise been eligible and could have reasonably be expected to obtain.

304.    As a direct result of Counterclaim Defendants, Reese, Tunson, and Brent's tortious, conduct and representations, FFS has experienced financial difficulties and lost out on government subcontracting opportunities and business.

76.305.Counterclaim Defendants Reese, Tunson, and Brent and Periarchon have intentionally interfered with FFS's business expectations and relationships for the purposes of securing contracts for their new company and to affirmatively cause harm to Van Norstrand.

77.306.Counterclaim Defendants. Reese, Tunson, and Brent's interference was wrongful and in violation of their fiduciary duties.  Counterclaim Defendants and Third Party Defendant wrongfully interfered with FFS's business expectancies and contracts by operating and controlling a directly competitive entity and diverting business opportunities to this entity, Periarchon.

~~78.~~307. Because of Counterclaim Defendants, Reese, Tunson, and Brent's intentional interference with FFS's business expectances and contracts, Van Norstrand and FFS has and will continue to suffer monetary damages.

WHEREFORE, Defendant/Counter-Plaintiff Van Norstrand respectfully requests entry of judgment in favor of Van Norstrand against Counterclaim Defendants Reese, Brent and Tunson and Third Party Defendant, Periarchon, in an amount in excess of $100,000 in compensatory and punitive damages, to be determined at trial, together with prejudgment and post judgment interest at the maximum rate allowable by law, an award to Van Norstrand for his counsel's reasonable attorneys' and experts' fees, expenses and costs for bringing this action, and awarding such other relief as the Court deems necessary and appropriate.

### COUNT XVII
### (Civil Conspiracy)

~~79.~~308. The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

~~80.~~309. Counterclaim Defendants Reese, Brent and Tunson, individually and collectively, agreed and/or understood that they would act together and in concert to take the actions described herein, including but not limited to, unlawfully and tortiously without authorization accessing and taking exclusive control over Van Norstrand's Google account and the contents therefor in furtherance of their agreement and/or understanding to involuntarily remove Van Norstrand from the Company.

~~81.~~310. Counterclaim Defendants Reese, Brent and Tunson, individually and collectively, agreed and/or understood that they would act together and in concert to gather and use the confidential, privileged and sensitive information of Van Norstrand from his Google account to make false and/or misleading statements about Van Norstrand and further their improper and

wrongful attempted removal of Van Norstrand from the Company for their own benefit and causing harm to Van Norstrand and his reputation.

~~82.~~311.Van Norstrand has suffered significant damages as a result of Counterclaim Defendants' agreement and/or understanding.

WHEREFORE, Defendant/Counter-Plaintiff Van Norstrand respectfully requests entry of judgment in favor of Van Norstrand against Counterclaim Defendants Reese, Brent and Tunson in an amount in excess of $100,000 in compensatory and punitive damages, to be determined at trial, together with prejudgment and post judgment interest at the maximum rate allowable by law, an award to Van Norstrand for his counsel's reasonable attorneys' and experts' fees, expenses and costs for bringing this action, and awarding such other relief as the Court deems necessary and appropriate.

## COUNT XVIII
### (Injunctive Relief)

~~83.~~312.The above factual paragraphs are hereby incorporated by reference as if fully set forth herein below.

~~84.~~313.Van Norstrand seeks temporary, preliminary and permanent injunctive relief under FRCP Rule 67.

~~85.~~314.Counterclaim Defendants have taken and retained more than ten (10) plus years of Van Norstrand's communications, documents, photos and videos stored in his personal Google account and taken control of his Google account locking Van Norstrand out of his personal Google account.

~~86.~~315.Through counsel, Van Norstrand has requested that Counterclaim Defendants return his communications, documents, photos and videos stored in his personal Google account and requested that they return his access to his personal Google account.

~~87.~~316.Counterclaim Defendants have refused to return Van Norstrand's documents and data to him and refused to restore his access to his personal Google account.

WHEREFORE, Defendant/Counter-Plaintiff Van Norstrand respectfully requests entry of an (a) order granting Van Norstrand a temporary restraining order restraining and enjoining Counterclaim Defendants from accessing and/or using Van Norstrand's personal Google account and the data contained therein and ordering Counterclaim Defendants to return the Google account to Van Norstrand and the data contained therein; (b) order granting Van Norstrand a preliminary injunction restraining and enjoining Counterclaim Defendants from accessing and/or using Van Norstrand's personal Google account and the data contained therein and ordering Counterclaim Defendants to return the Google account to Van Norstrand and the data contained therein; and (c) order granting Van Norstrand a permanent injunction restraining and enjoining Counterclaim Defendants from accessing and/or using Van Norstrand's personal Google account and the data contained therein and ordering Counterclaim Defendants to return the Google account to Van Norstrand and the data contained therein; and (d) an order granting Van Norstrand his costs and such other and further relief as this Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant/Counter-Plaintiff Van Norstrand respectfully requests entry of judgment in favor of Van Norstrand against Counterclaim Defendants FFS, Reese, Brent and Tunson and Third Party Defendant Periarchon with:

A.     An award of compensatory damages exceeding a minimum of $1,527,935 and as much as $3,428,425;

B.     An award of punitive damages totaling five times the compensatory amount, ranging from $4,583,805 to $10,285,275;

C.     An award of statutory and/or treble damages of three times the compensatory amount;

D.     An award of temporary, preliminary and permanent injunctive relief;

E.     An award of prejudgment and post-judgment interest at the maximum rate allowable by law;

F.     An award of attorneys' fees and experts' fees, expenses and costs for bringing this action; and

G.     Declaration pursuant to 28 U.S.C. 2201, *et al*, and Rule 57 of the Federal Rules of Civil Procedure, that Van Norstrand remains a member of the Company, the March 22, 2022 Amendment is improper and unenforceable per the terms of the Operating Agreement; Periarchon, L.L.C. is the alter ego of Future Field Solutions, LLC and that Periarchon is liable for any profits, business ,obligations that should belong to Future Field Solutions and owed to Defendant upon entry of judgment.

~~G.~~H.     An award of such other relief as the Court deems necessary and appropriate.

Respectfully submitted,

SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A.

By:          */s/ William B. Schroeder*
Glenn C. Etelson, Bar No. 06760
getelson@shulmanrogers.com
William B. Schroeder, Bar No. 13664
wschroeder@shulmanrogers.com
Victoria Tinker, Esq., Bar No. 30675
vtinker@shulmanrogers.com
12505 Park Potomac Avenue
Sixth Floor

Potomac, MD 20854
(301) 230-5200
(301) 230-2891 (facsimile)
*Attorneys for Defendant/Counterclaim*
*Plaintiff/Third Party Plaintiff*


SHULMAN, ROGERS, GANDAL,
 PORDY & ECKER, P.A.

By: _____ */s/ Lane Hornfeck*
Glenn C. Etelson, Bar No. 06760
getelson@shulmanrogers.com
Lane Hornfeck, Bar No. 20549
lhornfeck@shulmanrogers.com
12505 Park Potomac Ave. Sixth Floor
Potomac, MD 20854
(301) 230-5200
(301) 230-2891 (facsimile)
*Attorneys for Defendant*

**JURY DEMAND**

Defendant/Counterclaim Plaintiff/Third Party Plaintiff ERIK VAN NORSTRAND hereby demands a trial by jury on all triable issues.

_/s/ William B. Schroeder_
William B. Schroeder

~~**JURY DEMAND**~~

~~Defendant ERIK VAN NORSTRAND hereby demands a trial by jury on all triable issues.~~

~~_/s/ Lane Hornfeck_~~
~~Lane Hornfeck~~

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2~~4~~3~~rd~~ day of July ~~May~~ 2023, a copy of the foregoing was served via the Court's PACER System and/or electronic mail on the following individual(s):

Seth C. Berenzweig, Esq.
Clyde E. Findley, Esq.
Berenzweig Leonard, LLP
8300 Greensboro Drive, Suite 1250
McLean, VA  22102
_Attorneys for Plaintiffs / Counterclaim Defendants_

_/s/ William B. Schroeder_
William B. Schroeder
~~_/s/ Lane Hornfeck_~~
~~Lane Hornfeck~~

~~45636018_1.docx~~