IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **FUTURE FIELD SOLUTIONS, LLC, et al.,** | * | |
| *Plaintiffs/Counter-Defendants,* | * | |
| v. | * | **Case No. 1:23-cv-01301-DKC** |
| **ERIK VAN NORSTRAND,** | * | |
| *Defendant/Counter-Plaintiff.* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS

Before the Court is Defendant/Counter-Plaintiff Van Norstrand's Motion for Sanctions against the Future Field Solutions, LLC ("Future Field") Plaintiffs/Counter-Defendants ("Plaintiffs") and PeriArchon, LLC ("PeriArchon"), their Counter-Co-Defendant for certain alleged discovery failures and infractions. (ECF No. 240). The Court has also reviewed Plaintiffs' Opposition[1] (ECF No. 250), adopted by PeriArchon (ECF No. 253), Defendant's Reply (ECF No. 258), and the Sur-Reply by Plaintiffs/PeriArchon requested by this Court. (ECF No. 267). The Court finds that no hearing is necessary. As set forth more fully below, Defendant's Motion (ECF No. 240) is DENIED, with one caveat regarding the alleged unauthorized recording of Defendant's May 2025 deposition.

---

[1] Plaintiffs filed one opposition responding to both the instant Motion for Sanctions and a separately filed Motion to Strike their dispositive motion (ECF No. 241). In this opinion, the Court only addresses the Motion for Sanctions.

I.      **Background**

The current lawsuit arises from a dispute among former members of Future Field that had its genesis when Defendant Van Norstrand was removed as a Future Field member. Among other things, the parties dispute both the value of Defendant's interest in Future Field, and whether certain business assets and opportunities were wrongfully diverted by the remaining Future Field members to a new entity, PeriArchon, of which at least one member of Future Field, Plaintiff Reese, has a controlling interest. On June 28, 2023, the matter was referred to the undersigned by U.S. District Judge Deborah Chasanow for discovery and all related scheduling. (ECF No. 35).

In the instant motion, Defendant raises several areas of concern, all of which he contends should lead to the imposition of discovery sanctions against Plaintiffs/PeriArchon pursuant to Rule 37 of the Federal Rules of Civil Procedure. First, Defendant argues that the scope of his May 2025 deposition went beyond that established by this Court's previous orders and was unnecessarily hostile and harassing of Defendant. (ECF No. 240 at 9-13).[2] Second, Defendant argues that one of the individual Plaintiffs, Plaintiff Reese, made an unauthorized recording of his deposition and also made an "off the record" threat during a deposition break. *Id*. at 13-14. Third, Defendant argues that his opponents withheld information by failing to produce documents in discovery that they nonetheless rely upon in their recently filed dispositive motions and failed to provide Defendant with access to his laptop, the partial contents of which Plaintiffs/PeriArchon also cite in their dispositive motion, in violation of previous orders of this Court. *Id*. at 14-21.

For their part, Plaintiffs and PeriArchon maintain that all deposition questioning was appropriately within the scope previously ordered by the Court, and that no unauthorized recording

---

[2] When the Court cites to a filing, it uses the page numbering assigned by the CM/ECF system rather than any page numbering supplied in the document.

took place.  (ECF No. 250 at 23-17; 39-41).  Further, they assert that any "new" documents produced were either previously produced, already in Defendant's possession, or produced pursuant to their duty to supplement under Rules 26(a) and 26(e) based on new or contradictory information raised by Defendant at his May 2025 deposition.  *Id*. at 27-36.  They also argue that access to the laptop was available to Defendant at any time during the discovery period, yet he chose not to pursue it and did not otherwise bring it to the Court's attention.  *Id*. at 37-39.  Accordingly, they content that no sanctions are appropriate.

## II. Analysis

### A. Legal Standard

The Federal Rules of Civil Procedure set forth both the tools available to the parties in conducting discovery and the expectations as to how those tools will be deployed and responded to.  The Rules also recognize that discovery is dynamic, and that the scope of relevant information may change as the case evolves (e.g., amendments of pleadings, presentation of new facts, damages calculations), and with it the responsibilities of the parties to make sure that their discovery responses remain complete.[3]  Rule 26(a) for example recognizes that as more information is gathered in discovery or as theories of liability or damages change or evolve, a party may need to supplement a previous expert report to account for additional or different opinions an expert may form as a result.  Fed. R. Civ. Proc. 26(a)(2)(E).  Similarly, Rule 26(e) obliges a party to timely supplement previous discovery responses as necessary with additional or corrective information.  Fed. R. Civ. Proc. 26(e)(1).

---

[3] It is also not uncommon for a party to uncover additional responsive information previously overlooked, or even sometimes not yet in existence at the time of the party's original responses.

There can be tension however between a party complying with its continuing duty to supplement and the timeliness of that supplementation. Rule 37(c) empowers a Court to consider sanctions for the failure to supplement in a timely fashion, unless such failure was "substantially justified or is harmless," including the ability to exclude such evidence offered in support of (or in rebuttal to) a dispositive motion among other sanctions. Fed. R. Civ. Proc. 37(c)(1). In the Fourth Circuit, five factors are considered in determining whether a non-disclosing party's failure to disclose was substantially justified or harmless: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence. *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F3d 592, 597 (4th Cir. 2003). The party who failed to timely disclose bears the burden of proving that the failure was substantially justified or harmless. *Allegis Group, Inc. v. Bero*, 689 F.Supp.3d 81, 111 (D. Md. 2023) (citing *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 190 (4th Cir. 2017)).

Rule 37 also allows for the imposition of sanctions where the moving party demonstrates that the opposing party failed to obey a court's discovery orders. Fed. R. Civ. Proc. 37(b)(2); *see also Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 519-20 (D. Md. 2010) (explaining that a court's power to sanction pursuant Rule 37(b)(2) is broad). If a violation is demonstrated, a court considers four factors in determining whether to impose a sanction for such violations: (1) whether the non-complying party acted in bad faith; (2) the amount of prejudice that noncompliance caused the adversary; (3) the need for deterrence of the particular sort of noncompliance; and (4) whether less drastic sanctions would be effective. *Southern States, supra* at 597.

**B. Permissible Scope of Deposition and Deposition Behavior**

Defendant argues that Plaintiffs/PeriArchon violated this Court's previous orders regarding the permissible scope of Defendant's deposition, and, together with certain behavior by Plaintiffs/PeriArchon during that deposition, sanctions are warranted. As explained below, the Court disagrees.

The May 2025 deposition at issue was not the first deposition of Defendant, who was originally deposed in September of 2023 prior to Peri Archon's entrance into the case. This second deposition was allowed to go forward largely to accommodate the late entry of PeriArchon into the case, as PeriArchon did not have an opportunity to participate in Defendant's first deposition.[4] The Court, in its discovery order of January 17, 2025 that first addressed the scope of Defendant's contemplated deposition, initially specified that questioning be restricted to opportunities and/or assets that flowed from Future Field or its principals to PeriArchon, which is the crux of Defendant's counterclaim against PeriArchon. (ECF No. 208 at 2). The Court, at the request of Defendant, subsequently clarified on March 13, 2025, that after Peri Archon's limited questioning, Plaintiffs could also ask follow-up questions, restricted to the same narrow scope unless Defendant, by his testimony, raised issues beyond this narrow scope, to which reasonable follow-up would be allowed. (ECF No. 214 at 2 and at n.1).

In early April, the parties submitted status reports outlining, *inter alia*, their positions regarding remaining discovery, with Plaintiffs requesting the Defendant supplement his discovery responses by April 30, 2025. (ECF No. 217 at 10-12). Plaintiffs argued that, at the very least, such

---

[4] As observed in previous discovery opinions however, Plaintiff Reese, who is Peri Archon's sole member, did have an opportunity to participate in Defendant's first deposition prior to Peri Archon's formal entry in the case, as well as all other discovery. (ECF No. 208 at 1).

supplementation was required based on recent developments regarding Defendant's alleged loss of security clearance and agreement with the Government to a restitution order based on alleged overpayment. *Id*. Accordingly, on April 11, 2025, the Court again enlarged the scope of Defendant's contemplated deposition to also include questions regarding any supplementation of discovery by Defendant, and "if Defendant continues to take the position that any loss of security clearance is outside the scope of discovery, and any alleged restitution order does not exist, and does not produce documents as to either, reasonable questioning is nonetheless permitted as to both topics to probe Defendant's good faith basis for concluding why such information is nonresponsive (in the case of the security clearance) or not applicable (in the case of the alleged restitution order)." (ECF No. 219 at 7-8). The Court otherwise declined to expand the scope of Defendant's deposition. *Id*. at 7.[5]

Defendant now alleges that Plaintiffs/PeriArchon exceeded the permissible scope of his deposition by including questions about his resume, his calculation of damages, attorney fees, each individual count of his counterclaim, and his membership interest in Future Field. (ECF No. 240 at 10-11). By way of support for his initial motion, Defendant included an excerpt from the deposition that he argues illustrates impermissible questioning because it is about his resume. (ECF No. 240-1). This was the only actual portion of the deposition transcript included in Defendant's initial motion. In his Reply, by way of declaration, Defendant further describes the allegedly impermissible questioning as follows:

---

[5] Plaintiffs did highlight another potential area of questioning that, by agreement of counsel, was not pursued at Defendant's first deposition in exchange for Defendant not pursuing certain counterclaims. (ECF No. 217 at 12). Plaintiffs indicated that they were seeking confirmation that the agreement was still in place but raised the possibility of reopening that line of questioning if not. *Id*. As will be discussed in more detail below, Defendant's new counsel would not confirm that agreement at Defendant's second deposition, causing Plaintiffs to re-open that line of questioning.

> The questioning during my deposition by counsel for the Counterclaim-
> Defendants went far beyond the limited scope ordered by the Court. I was
> subjected to hours of questioning on topics the Court had repeatedly forbidden,
> including my entire professional history, my security clearance, and other
> personal matters unrelated to the diversion of assets to PeriArchon.

(ECF No. 258-2 at 2-3). In his Reply, Defendant also attached a summary by topic and page reference of where he contends questioning went beyond the scope, although he did not attach the actual transcript. (ECF No. 258-1). In reviewing these topics, they all essentially fit within the framework described in Defendant's declaration cited above.[6]

Based on its review of the portions of the deposition transcript cited by Defendant, the Court does not find that the questions about Defendant's resume/professional history, his security clearance or his counterclaims and damages exceed the permitted scope of the deposition. This is for several reasons. First, at the first deposition, there was apparently some agreement by counsel that in exchange for dropping counterclaims for defamation, intentional interference, and tortious interference, Plaintiffs would forego questioning Defendant about his resume/professional history that Plaintiffs contended was inaccurate. If those issues resurfaced, the parties agreed that Defendant would be re-deposed. At the second deposition, Defendant's counsel would not agree that all portions of those claims were indeed out of the case. Accordingly, such questions were fair game. Additionally, by this Court's April 11, 2025, order, Plaintiffs/PeriArchon were permitted to ask questions regarding Defendant's alleged loss of security clearance, a loss that they contend was caused in part by errors in Defendant's resume, as well as about documents produced in Defendant's supplemental production of April 30, 2025, which included damages calculations.

---

[6] The Court on its own initiative contacted counsel of record and asked for a copy of the transcript. The Court's own review of the specific pages referenced by Defendant in his Reply confirms that while they comport to Defendant's summary of them, they do not raise new categories for purposes of assessing whether they were within the scope of the Court's previous orders.

Further, Plaintiffs/Peri Archon's *defense* to claims that opportunities and assets were diverted from Future Field to PeriArchon rests, in part, on an argument that Future Field risked otherwise losing clients because such clients questioned the veracity of Defendant's credentials. There were also no objections/explanations on the record that allowed the Court to evaluate exactly how the question posed was objectionable.

As for Plaintiffs' allegedly intimidating behavior at the deposition, Defendant's initial motion is long on hyperbole but short on evidence, other than an allegation that during a deposition break an individual Plaintiff "stood up to threaten Van Norstrand." (ECF No. 240 at 12). If that was the case, the specific behavior should have been placed on the record to allow for the detailed comments of all counsel so that a more thorough assessment could be made by the Court.[7] Although this case has certainly been marked by acrimony, and while it is clear that there no love lost among the parties, the Defendant has not sufficiently supported his allegations to justify imposition of sanctions.

### C. Unauthorized Recording of the Deposition

Defendant further alleges that Plaintiff Reese recorded Defendant's deposition without permission, in violation of federal and state wiretap laws, Maryland Courts and Judicial Proceedings Code §10-410, as well as this Court's Discovery Guidelines, D. Md. Loc. R. App. A, Guideline 6(i). (ECF No. 240 at 13-14). For this alleged transgression, Defendant seeks an award

---

[7] In his Reply, Defendant submitted a declaration asserting that the behavior at issue was that Plaintiff Reese accused him of committing perjury that Plaintiff Reese would be reporting to the relevant authorities. (ECF No. 258-2 at 1). By failing to place this behavior on the record so that all counsel could document their respective arguments as to what took place, and by saving this more precise allegation for his Reply (so as to preclude a specific response in Plaintiffs' Opposition), Defendant again deprives the Court of the ability to make a determination about the exact nature and context of what occurred, and to what extent it influenced the remainder of the deposition.

of damages under the cited statutes and asks that Plaintiff Reese (who is an attorney licensed in California) be referred to California Bar authorities for disciplinary action. *Id*. at 21-22.

In response, Plaintiffs/PeriArchon argue that no recording took place, but that the situation arose as the result of "Google Assistant" being active on Plaintiff Reese's phone "responding" to the word "Google" being included in a particular deposition question.[8] (ECF No. 250 at 39-40). Plaintiffs/PeriArchon further argue that even if such a recording existed, Defendant's counterclaims do not include an appropriate cause of action under the statutes cited, and Defendant should not be allowed to amend his counterclaims simply through his briefing. *Id*. at 41-42; *see also Davis v. Mabus*, 162 F. Supp. 3d 467, 482 (D. Md. 2016) (declining to consider a plaintiff's retaliation claim raised for the first time in opposition to a summary judgment motion). In his Reply, Defendant attaches a declaration that challenges this explanation based on Defendant allegedly hearing his own voice being played back, rather than an artificial voice. (ECF No. 258-2 at 2).

Based on the record before it, the Court cannot conclude that an improper recording was made. Additionally, even if this second recording was made, at a deposition that was otherwise being officially recorded, there is not currently a claim by Defendants that would allow for considering the requested relief. Out of an abundance of caution however, the Court will order that if any recording was made, it should be turned over to Mr. Reese's counsel, all other copies should be destroyed, and it may not be used for any other purpose.

---

[8] Google Assistant, when enabled, allows for voice-activated Google Searches and audio playback of search results, when it is alerted to do so, usually by the phrases "Hey Google" or "OK Google." (ECF No. 250 at 39-40).

### D. Supplemental Production of Documents

Defendant argues that the initial joint record extract relied upon by Plaintiffs/PeriArchon in their Motion for Summary Judgement "was composed primarily of documents that were not produced during discovery," and thus should be disregarded by this Court pursuant to Federal Rule of Civil Procedure 37(c)(1). (ECF No. 240 at 5). These documents include a supplemental expert report by expert Eric Cole, declarations by Plaintiffs Reese and Brent, and "hundreds of documents and evidence requested during discovery." *Id*. at 15-17. Defendant subsequently expanded this to "thousands of unproduced documents." *Id*. at 19. Some of these allegedly came from Defendant's company laptop, such that Defendant makes the additional argument that Plaintiffs never provided him access to this laptop despite orders that they do so. *Id*. Other than the supplemental report of Cole and the two declarations referenced, Defendant only specifically references eighteen documents of the alleged "thousands" not produced. *Id*. at 18. The specific list reduces to sixteen in Defendant's Reply. (ECF No. 258 at 11).

In response, Plaintiffs/PeriArchon explain that the supplemental report of Cole and the Declaration of Reese use information (so-called "hash values") from Defendant's company laptop in comparison to Defendant's personal Microsoft Outlook 365 account to attempt to demonstrate that Defendant impermissibly moved files between those accounts. ECF No. 250 at 32-36. They point out that Defendant has had the documents that support those declarations since they were created in February and March of 2022, and that he has likewise obviously had access to his personal Outlook 365 account. *Id*. at 32. As for the Declaration of Brent (not attached to Defendant's motion), it addresses steps Brent took solely in his capacity as "Windup Member of Future Field," and Defendant offers no specific reason for striking it other than production for the first time as an exhibit to the Motion for Summary Judgment. Defendant does not point to a

discovery request or deposition question (assuming Mr. Brent was previously deposed) to which the information would have been responsive.

In terms of the other documents, Plaintiffs/PeriArchon point out that at least two of the eighteen documents that Defendant identified were, in fact, previously produced. (ECF No. 250 at 27).[9] As to the remaining sixteen, they correctly point out that Defendant's initial motion did not direct the Court to any specific discovery request that would cover such documents, and they further explain that their supplementation was caused in part by Defendant taking positions at his May 2025 deposition that were contrary to positions he took at his September 2023 deposition or in response to certain denials he made at his recent deposition. *Id*. at 29-30. Further, Plaintiffs/PeriArchon argue that Defendant has had access to almost all of the documents, being the author of several. *Id*. at 30.

In his Reply, Defendant for the first time attempts to link the sixteen identified documents to specific discovery requests to which they purportedly would be responsive. Because this was raised for the first time in Defendant's Reply, the Court ordered Plaintiffs/PeriArchon to file a Sur-Reply addressing those sixteen documents and: (1) whether they were responsive to previous document requests; (2) whether their production was necessitated by a new assertion or change in position stemming from Defendant's May 2025 deposition; and/or, (3) why any previous failure to produce was or was not harmful. (ECF No. 259).

On September 3, 2025, Plaintiffs/PeriArchon filed their combined Reply. (ECF No. 267). On a document-by-document basis, they offered multiple reasons why each of the sixteen disputed documents were not produced earlier. One of the documents (JRE 77) was previously produced.

---

[9] It is unclear to the Court whether this is the reason why the list of documents dropped from eighteen to sixteen between Defendant's initial motion and his Reply.

*Id*. at 13-14.  Others (JRE 43, 46, 55 and 56) were, among other reasons,[10] in Defendant's possession or were accessible to him. *Id*. at 14-29. Still others (JRE 58, 62, 16 and 63) were necessary to rebut Defendant's May 2025 deposition testimony. *Id*. at 32-33.  As to the final group of documents, they concern the Government's investigation regarding Defendant's security clearance, and Plaintiffs/Van Norstrand justify their recent production largely to rebut testimony on these topics by Defendant at his May 2025 deposition (*Id*. at 35-36), as well as an obligation to abide by certain rules and regulations applicable to such documents given their security implications, including having to wait until certain Government investigations were concluded. *Id*. at 37-40.

The Court finds the arguments advanced by Plaintiffs/PeriArchon to be both detailed and well-founded.  Accordingly, the Court finds that any "late" production was both justified and, in any event, harmless.

### E.  The Laptop

Addressing the laptop, Defendant asserts that to the extent any recently produced documents came from the laptop, it was in violation of previous orders of this Court.  Although the laptop issue surfaced early in the discovery disputes of the parties, a review of this Court's orders about the laptop were in a specific context as raised by the parties at that time.  The Court

---

[10] Plaintiffs/PeriArchon persuasively argue that the document requests referenced by Defendant were, in some cases, so general as to fail the particularity requirement of Rule 34, such as Request 4, asking for "All Documents and Communications that refer, relate to, or concern the allegations or defenses contained in the pleadings and/or any memoranda filed on this Litigation." *Id*. at 10-13.  This Court and others agree that such catch-all requests run afoul of Rule 34.  *See, e.g., United Oil Co., Inc. v. Parts Assoc., Inc.*, 227 F.R.D. 404, 415 n.14 (D. Md. 2005) (Court finding request seeking "All documents that relate or refer to the allegations in this case" too broad, denying motion to compel); *see also, Mahalingam v. Wells Fargo Bank*, N.A., 349 F.R.D. 127, 144 (N.D. Tex. 2023) (observing generally that "a request for 'all documents and records' that related to 'any of the issues,' while convenient, fails to set forth with reasonable particularity the items or category of items sought for [production]").  Defendants also argue that any "late" production of such documents was harmless given that their contents are not really in dispute. (ECF No. 267 at 18-19, 23-15 and 27-29).

first addressed the laptop in September of 2023 in the limited context of Defendant seeking evidence to rebut Plaintiffs' assertion that he deleted key files from the laptop prior to his departure from Future Field. (ECF No. 58). The Court sought to balance the need for such information with the fact that the laptop might contain confidential information given Future Field's client base of U.S. Government defense contractors, and the fact that the parties needed a "bit locker" device to access the laptop. The Court ordered that the laptop (and bit locker) be produced during Defendant's deposition, stating:

> The Defendant's laptop shall be produced during his above-mentioned deposition to attempt to unlock the data contained therein. If the parties succeed, then they shall attempt to resolve disputes over whether such data is privileged before seeking Court intervention. Further, if upon accessing the data contained therein the Plaintiffs assert that any such data cannot be produced due to a directive of government agency counsel, Plaintiffs shall inform the Court of same, and Plaintiffs' counsel shall inform government agency counsel of the need to formally seek protection from this Court over the production of such information if otherwise relevant to this action

(ECF No. 71 at 3)

In November of 2023, the Court further addressed the laptop issue, as it still apparently had not been examined by Defendant's expert. When asked to clarify the scope of the examination, Defendant's then-counsel stated:

> [The expert] needs to look at the logs on the laptop in order to confirm that that program was only deleting temporary files and that there is no actual deletion of substantive materials which they still have not been able to identify a specific file or identify any particular element of damage associated with a deletion of any kind of file. So, my expert has to be able to look at that laptop and in order to be able to ascertain exactly what my client did on that laptop in order to refute these unsubstantiated allegations so far that have now been going on for months and are in violation not only of your order but the State Court's order that has been going on for months…. So that is in short why client expert needs to be able to see what exactly the Plaintiffs' have seen on the laptop that suggests he actually deleted substantive files.

(ECF 119 at 6-8). The Court further addressed the issue in its subsequent order after the hearing:

> Plaintiffs shall produce a list of files they allege Defendant deleted from Defendant's company laptop before it was returned to Plaintiffs. The laptop and any necessary BitLocker key shall then be made available to Defendant's forensic expert so that the forensic expert may analyze the laptop data in an effort to corroborate or rebut Plaintiffs' allegations. To be clear, Defendant's expert shall be permitted to analyze the laptop solely for the purpose of analyzing the allegedly deleted data to determine which of the files identified by Plaintiff (if any) were deleted, when, and by whom. Defendant's expert shall not otherwise be permitted to access, copy, or non-incidentally view any privileged, protected, proprietary or sensitive data contained on the laptop outside of this limited mission, including information of the type described by Lockheed Martin Corporation in its November 9, 2023, letter to counsel and its accompanying Proprietary Information Agreement that the parties shared with the Court and discussed at the hearing. The laptop shall be provided to Defendant's expert for this purpose. While Plaintiffs' principals may witness the expert's search, they are not permitted to interfere with it.

(ECF 106 at 2-3).

According to Plaintiffs/PeriArchon, after initial efforts among counsel to schedule the limited search contemplated by the Court's November 2023 order, Defendant ultimately abandoned that effort. (ECF No. 250 at 38). Additionally, at an October 22, 2024, discovery hearing, Defendant's then-counsel assured the Court "Your Honor, you may recall there was a whole issue about the laptop. We figured out a way, with counsel's assistance, to work around that." (ECF No. 189 at 10). Defendant later confirmed at a January 17, 2025, conference that he required no further discovery in the case. (ECF 209 at 17). If access to the laptop were still an issue, the Court would have expected Defendant to raise it then.

Based on all of the above, the Court does not find that Plaintiffs/PeriArchon prevented access to the laptop so as to justify now precluding information from the laptop in support of the dispositive motion. As early as the fall of 2023, Defendant was granted the ability to examine the laptop for the limited purpose he articulated. He apparently never acted on that at the time, and later confirmed to the Court in October of 2024 that access to the laptop was no longer an

issue, and also failed to raise it as an issue in January of 2025 when he assured the Court that he required no further discovery in the case.

## CONCLUSION

Based on all of the above, the Court finds that sanctions are not appropriate and Defendant's Motion (ECF No. 240) is **DENIED**, except to the extent that if any unauthorized recording of Defendant's deposition was made (which is not supported by the current record before the Court) it may not be used for any purpose and should be turned over to Plaintiffs' counsel for preservation, and that any additional copies be destroyed.

September 8, 2025

_____
J. Mark Coulson
U.S. Magistrate Judge