IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FUTURE FIELD SOLUTIONS, LLC,
et al.                          :

       v.                       :   Civil Action No. DKC 23-1301

                                :

ERIK VAN NORSTRAND              :

                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case involving a limited liability company ("LLC") membership withdrawal dispute are: (1) a motion to keep sealed and redact exhibits filed by Counterclaim Plaintiff Erik Van Norstrand ("Mr. Van Norstrand"), (ECF No. 171); (2) a motion for summary judgment filed by Third-Party Defendant PeriArchon, LLC ("PeriArchon"), (ECF No. 235); (3) a motion to enforce stipulation of dismissal filed by Counterclaim Defendants James C. Brent, Sr. ("Mr. Brent"), Steven Reese ("Mr. Reese"), and Brian Tunson ("Mr. Tunson") (collectively, "Counterclaim Defendants"), (ECF No. 236); (4) a motion for summary judgment filed by Counterclaim Defendants, (ECF No. 237); (5) a motion to strike Counterclaim Defendants' motion for summary judgment filed by Mr. Van Norstrand, (ECF No. 241); (6) a motion for summary judgment filed by Mr. Van Norstrand, (ECF No. 247); (7) a motion to preclude consideration of new arguments raised in Mr. Van Norstrand's reply filed by Counterclaim

Defendants, (ECF No. 273); (8) a request for an order to show cause why sanctions should not be imposed filed by Counterclaim Defendants, (ECF No. 273); and (9) a motion for leave to file sur-reply filed by Mr. Van Norstrand, (ECF No. 276).[1] The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to keep sealed and redact exhibits will be granted in part and denied in part, the motion for summary judgment filed by PeriArchon will be granted, the motion to enforce the stipulation of dismissal filed by Counterclaim Defendants will be granted, the motion for summary judgment filed by Counterclaim Defendants will be granted in part and denied in part, the motion to strike Counterclaim Defendants' motion for summary judgment filed by Mr. Van Norstrand will be denied, the motion for summary judgment filed by Mr. Van Norstrand will be denied, the motion to preclude consideration of new arguments filed by Counterclaim Defendants will be granted, the request for a show-cause order regarding sanctions filed by Counterclaim Defendants will be denied without

---

[1] Mr. Van Norstrand may be requesting an order to show cause why sanctions should not be imposed "for purposely contaminating files sent to" him during discovery. (ECF No. 274, at 14). Because that request relates to a discovery matter, it should have been filed separately and addressed to Judge Coulson for resolution. It will not be considered otherwise.

prejudice, and the motion for leave to file sur-reply filed by Mr. Van Norstrand will be denied.

I.    **Background**

    A.    **Factual Background[2]**

    The factual background of Mr. Van Norstrand's involuntary withdrawal from Future Field Solutions, LLC ("Future Field") and the disputed web domains is set out in full in a prior opinion. (ECF No. 145, at 2-5).  In short, Future Field was a government contracting company that performed software engineering and cybersecurity work for U.S. government defense and intelligence agencies.  (ECF No. 238-1 ¶ 78).  This case stems from a dispute over Counterclaim Defendants' March 2022 removal of Mr. Van Norstrand from Future Field due to "incompetence," pursuant to the Operating Agreement ("OA").  (*See* ECF No. 145, at 2-3).  They cited Mr. Van Norstrand's supposed failure to adhere to standard business practices along with federal rules and regulations.  (*See id.* at 3).  At the time, Mr. Van Norstrand held a 12.25% ownership share of Future Field.  (*Id.*).  Counterclaim Defendants paid Mr. Van Norstrand $24,513 for his 12.25% share, pursuant to a valuation

---

[2] For the most part, the relevant facts are not in dispute. Material factual disputes will be identified where necessary.

provided by the accounting firm Lebson & Associates. (ECF No. 133 ¶ 126; ECF No. 151 ¶ 126).[3]

After Counterclaim Defendants removed Mr. Van Norstrand, he locked them out of the futurefieldsolutions.com domain name, and they locked him out of the Google account associated with that domain name ("Google Workspace Account"). (ECF No. 145, at 5). Mr. Van Norstrand states that he originally created the Google Workspace Account in late 2010 or early 2011. (ECF No. 133 ¶ 39). He stored more than ten years' worth of personal emails, photos, and documents within the Google Workspace Account. (ECF Nos. 238-1 ¶ 26; 247, at 32). When the latest iteration of Future Field was formed in 2020, Counterclaim Defendants and Future Field used the Google Workspace Account for Future Field business. (ECF Nos. 133 ¶¶ 1, 39; 238-1 ¶ 11). Mr. Van Norstrand created email accounts within the Google Workspace Account for Mr. Brent and Mr. Reese. (ECF No. 145, at 4). Mr. Brent, Mr. Reese, and Mr. Van Norstrand all had equal administrative rights over the Google Workspace Account. (ECF Nos. 238-1 ¶ 16; 252-2, at 311-15). In 2021, Mr. Van Norstrand led the migration of data from the Google Workspace Account to Future Field's Microsoft Office 365 Account

---

[3] The parties dispute the amount by twenty cents. This dispute is immaterial.

("Microsoft365 Account").  (ECF Nos. 238-1 ¶ 23; 252-2, at 279-81).

He alleges that Counterclaim Defendants' action of locking him out deprived him of access to that personal data.  (ECF No. 133 ¶ 8).  He further alleges that Counterclaim Defendants "mined" that data to provide answers to interrogatories he served upon them.  (*Id.* ¶ 98).  While reviewing the information in the Google Workspace Account, Counterclaim Defendants located versions of Mr. Van Norstrand's resume.  (*Id.* ¶ 99; ECF No. 238, at 106).  Counterclaim Defendants determined that the representations in Mr. Van Norstrand's resume related to his work experience were fraudulent and notified the recipients of those representations, including contractors and government agencies for which Future Field worked.  (ECF Nos. 133 ¶¶ 101, 104; 238, at 106; 247-9).  Mr. Van Norstrand disputes that these representations were fraudulent.  (ECF Nos. 133 ¶¶ 101-03; 247, at 8-9).  Mr. Van Norstrand was investigated, and his security clearance was at least partially revoked.  (ECF Nos. 133 ¶ 107; 238-1 ¶¶ 90-105; 252-2, at 65; 256-2, at 8-9).

Meanwhile, after Mr. Van Norstrand locked Counterclaim Defendants out of the futurefieldsolutions.com domain, Counterclaim Defendants were unable to assure the control over the futurefieldsolutions.com domain necessary to operate as a

government contractor performing cybersecurity work. (ECF Nos. 238-1 ¶¶ 79-86; 256-1, at 24). Future Field reported to the relevant government agencies that it had lost control over its web domain, (ECF Nos. 238-1 ¶ 84; 247-8, at 1-2); it could not pursue new contracts as a result, (ECF No. 238-1 ¶¶ 89, 105). Future Field then released its employees. (*Id.* ¶ 105).

In November 2022, Counterclaim Defendants purchased PeriArchon for approximately $25,000. (ECF No. 247-3). Mr. Brent was listed as the resident agent and its principal place of business was Mr. Brent's home address. (ECF Nos. 133 ¶ 142; 151 ¶ 142). Around March 2023, one of Future Field's significant contractors, Lockheed Martin, terminated its contract with Future Field and then issued a contract to PeriArchon. (*See* ECF Nos. 247-2, at 1; 247-4; 265-1, at 78).

### B. The Parties File Suit

Counterclaim Defendants initiated this action by filing a complaint in the Circuit Court for Howard County, (ECF No. 5), and Mr. Van Norstrand timely removed to this court on May 17, 2023, (ECF No. 1). On June 28, 2023, Counterclaim Defendants filed a second amended complaint asserting the following claims: (1) requesting declaratory judgment that Mr. Van Norstrand has been involuntarily withdrawn from Future Field (Count I); (2) judicial dissolution (Count II); (3) intentional interference with a

contractual relationship (Count III); (4) intentional interference with a business relationship (Count IV); (5) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; and (6) declaratory judgment of ownership of company property (Count VI). (ECF No. 34).

On December 27, 2023, Mr. Van Norstrand filed a Second Amended Counterclaim (against Counterclaim Defendants) and Third-Party Complaint (against PeriArchon) ("Counterclaim" or "Third-Party Complaint"), which asserts the following claims: (1) requesting declaratory judgment that Mr. Van Norstrand was improperly withdrawn from Future Field, the amendment effectuating his withdrawal was invalid and unenforceable, and PeriArchon is Future Field's alter ego (Count I); (2) breach of contract (Count II); (3) breach of duty of loyalty (Count III); (4) breach of fiduciary duty (Count IV); (5) violation of the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 to -509 (Count V); (6) request for accounting (Count VI); (7) wrongful termination (Count VII); (8) indemnification (Count VIII); (9) gross negligence and/or willful misconduct (Count IX); (10) violation of the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2713 (Count X); (11) violation of the CFAA, 18 U.S.C. § 1030 (Count XI); (12) conversion (Count XII); (13) invasion of privacy (Count XIII); (14) defamation (Count XIV); (15) fraud (Count XV);

(16) tortious interference with contracts and business expectancies (Count XVI); (17) civil conspiracy (Count XVII); and (18) request for injunctive relief (Count XVIII). (ECF No. 133). On October 23, 2023, the parties stipulated to the dismissal of Counts XIV and XVI, except the portion of Count XVI to be asserted against PeriArchon would remain. (ECF No. 88).[4]

### C.    August 2024 Partial Summary Judgment

Counterclaim Defendants and Mr. Van Norstrand filed partial motions for summary judgment on which the court ruled in its August 2, 2024, memorandum opinion. The court determined that Mr. Van Norstrand had been improperly withdrawn from Future Field and declared that Mr. Van Norstrand remained a member of Future Field. (ECF No. 145, at 36). Accordingly, the court denied Counterclaim Defendants' motion for summary judgment on Count I of their Complaint and granted Mr. Van Norstrand's motion for summary judgment on Count I of the Counterclaim. (*Id.* at 37). The court granted Counterclaim Defendants' request for judicial dissolution in Count II of the Complaint. (*Id.* at 41). As to the remaining counts in the Complaint, the court granted Mr. Van Norstrand

---

[4] The parties initially filed the joint stipulation of dismissal on October 20, (ECF No. 86), but the clerk rejected it because Counterclaim Defendants' counsel failed to represent that he signed for Mr. Van Norstrand's counsel "with permission," (ECF No. 238, at 97 n.7). The court will refer to the properly filed joint stipulation on October 23. (ECF No. 88).

summary judgment on Counts III and V, (*Id.* at 52, 57), and denied him summary judgment on Counts IV and VI due to genuine disputes of material fact, (*Id.* at 52, 59-60). Thus, the only remaining claims in the Complaint are Counts IV and VI.

The court also denied Mr. Van Norstrand's partial motion for summary judgment on the Counterclaim on Counts II-IV for failure to demonstrate harm, (*Id.* at 44-45, 47), Counts X, XII, and XIII due to genuine disputes of material fact, (*Id.* at 64, 66), and Count XVIII for failure to demonstrate irreparable harm, (*Id.* at 67-68). Accordingly, the court did not dispose entirely of any count in the Counterclaim, but Count I is now limited to the portion asserted against PeriArchon.

Additionally, the court denied the joint motion of Counterclaim Defendants and PeriArchon to dismiss the Counterclaim and Third-Party Complaint for lack of standing. (*Id.* at 69).

The parties conducted limited additional discovery following the court's memorandum opinion, including an additional deposition of Mr. Van Norstrand on May 22, 2025.

### D.  Post-Summary Judgment Factual Background

Because the court ordered judicial dissolution of Future Field, Future Field was dissolved, and wind-up proceedings began. The court directed Counterclaim Defendants and Mr. Van Norstrand to wind up Future Field together in accordance with the OA. (*Id.*

9

at 41).  Should the parties reach an impasse on any issue, the court explained that "they may call upon the court for the purpose of winding up Future Field's affairs." (*Id.* at 42).

On December 9, 2024, Counterclaim Defendants held a meeting regarding the wind-up of Future Field to which Mr. Van Norstrand was invited but did not attend. (ECF Nos. 234, at 1; 239, at 2; 246-1; 246-4, at 2; 249-1, at 3).  At that meeting, Mr. Brent was appointed the wind-up member. (ECF Nos. 246-4, at 2; 249-1, at 3).  On December 11, a notice of cancellation was sent out to all creditors, including Mr. Van Norstrand. (ECF Nos. 239-2, at 10; 246-3).  Counterclaim Defendants held another wind-up meeting on December 27 to which Mr. Van Norstrand was invited. (ECF Nos. 246-4, at 4; 249-1, at 3).  Mr. Van Norstrand again declined to attend, submitting a letter with various objections instead. (ECF Nos. 246-4, at 4; 249-1).  On January 17, 2025, Mr. Van Norstrand's counsel represented to the court that the dissolution and wind-up were proceeding well. (ECF No. 209, at 13).  On April 5, 2025, Mr. Brent filed the Articles of Cancellation for Future Field, and they became effective the same day. (ECF No. 246-4, at 5, 15).  Future Field had insufficient funds to satisfy obligations to outside creditors and therefore made no distributions to members. (*Id.* at 5-6, 17).

### E.    Presently Pending Motions

Numerous motions are pending, the interrelation of which renders the briefing in this case rather complicated.  The history of each is as follows:

#### 1.    Motion to Seal

On October 14, 2024, Mr. Van Norstrand filed a motion to keep sealed and redact certain exhibits attached to his filings regarding the parties' motions to quash subpoenas.  (ECF No. 171). Counterclaim Defendants filed a partial opposition on October 28, 2024.  (ECF No. 186).  Mr. Van Norstrand filed a reply on November 4, 2024.  (ECF No. 187).

#### 2.    PeriArchon's Motion for Summary Judgment

On July 3, 2025, PeriArchon filed a motion for summary judgment on the counts asserted against it in the Third-Party Complaint.  (ECF No. 235).  On July 18, 2025, Mr. Van Norstrand filed a motion to strike PeriArchon's motion for summary judgment, (ECF No. 241), which he then adopted on July 30, 2025, as his opposition, (ECF No. 248).  PeriArchon did not file a reply.

#### 3.    Counterclaim Defendants' Motion to Enforce

On July 3, 2025, Counterclaim Defendants filed a motion to enforce the joint stipulation of dismissal with prejudice of Counts XIV and XVI of the Counterclaim.  (ECF No. 236).  Mr. Van Norstrand

did not file a direct opposition.[5]  On August 22, 2025, Counterclaim Defendants filed a reply.  (ECF No. 263).

### 4.  Counterclaim Defendants' Motion for Summary Judgment

On July 3, 2025, Counterclaim Defendants filed a motion for summary judgment on all counts of the Counterclaim.  (ECF No. 237). On July 18, 2025, Mr. Van Norstrand filed a motion to strike Counterclaim Defendants' motion for summary judgment, (ECF No. 241), which he then adopted on July 30, 2025, as his opposition, (ECF No. 248).  On August 22, 2025, Counterclaim Defendants filed a reply.  (ECF No. 263).

### 5.  Mr. Van Norstrand's Motion to Strike

On July 18, 2025, Mr. Van Norstrand filed a motion to strike Counterclaim Defendants' motion for summary judgment and PeriArchon's motion for summary judgment.  (ECF No. 241).  On August 8, 2025, Counterclaim Defendants filed an opposition to the motion to strike, (ECF No. 250), and on August 11, 2025, PeriArchon filed an opposition to the motion to strike, (ECF No. 254).  On August 15, 2025, Mr. Van Norstrand filed a combined reply to both oppositions.  (ECF No. 258).  Because Mr. Van Norstrand raised new arguments for the first time in his reply, the court ordered

---

[5] Although Mr. Van Norstrand did not technically respond, his motion for summary judgment addresses the issue of enforcement of the stipulated dismissal.  The court thus treats his motion for summary judgment as an opposition to Counterclaim Defendants' motion to enforce as well.

Counterclaim Defendants and PeriArchon to file a sur-reply.  (ECF No. 259).  On September 3, 2025, Counterclaim Defendants filed a sur-reply.  (ECF No. 267).  On September 8, 2025, PeriArchon filed a sur-reply.  (ECF No. 269).

### 6.  Mr. Van Norstrand's Motion for Summary Judgment

On July 29, 2025, Mr. Van Norstrand filed a motion for summary judgment on all counts of the Counterclaim and the Third-Party Complaint.  (ECF No. 247).  Counterclaim Defendants filed their opposition on August 22, 2025, (ECF No. 263), and PeriArchon filed its opposition on September 3, 2025, (ECF No. 266).  Mr. Van Norstrand filed a reply to Counterclaim Defendants' opposition on September 5, 2025, (ECF No. 268), and to PeriArchon's opposition on September 17, 2025, (ECF No. 272).

### 7.  Counterclaim Defendants' Motion to Preclude Consideration of New Arguments

In light of the new arguments made in Mr. Van Norstrand's reply in support of his motion for summary judgment, Counterclaim Defendants filed a motion to preclude consideration of those arguments on September 25, 2025.  (ECF No. 273).  In the same motion, Counterclaim Defendants requested that the court issue an order to show cause why Mr. Van Norstrand and his counsel should not be sanctioned for allegedly using artificial intelligence to draft the reply.  (*Id.*).  On October 2, 2025, Mr. Van Norstrand filed an opposition to Counterclaim Defendants' motion to preclude

and request for a show-cause order and made his own request for a show-cause order as to why sanctions should not be imposed on Counterclaim Defendants for allegedly sending Mr. Van Norstrand malware in their discovery productions. (ECF No. 274). On October 16, 2025, Counterclaim Defendants filed a reply to Mr. Van Norstrand's opposition and an opposition to Mr. Van Norstrand's request for a show-cause order. (ECF No. 275).

### 8. Motion for Leave to File Sur-Reply

On November 5, 2025, Mr. Van Norstrand filed a motion for leave to file sur-reply regarding Counterclaim Defendants' motion to preclude and request for a show-cause order. (ECF No. 276). Counterclaim Defendants did not file a response in opposition.

## II. Motion to Seal

When considering motions to seal, courts in this circuit must balance the individual's privacy interest with the "qualified right of access to judicial documents and records filed in civil and criminal proceedings" of the press and the general public. *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014); *see also Rock v. McHugh*, 819 F.Supp.2d 456, 475 (D.Md. 2011) (noting that certain sensitive personal information may be sealed). As the *Public Citizen* court explained:

> When presented with a motion to seal, the law in this Circuit requires a judicial officer to comply with the following procedural requirements: (1) provide public notice of the

14

> sealing request and a reasonable opportunity
> for the public to voice objections to the
> motion; (2) consider less drastic alternatives
> to closure; and (3) if it determines that full
> access is not necessary, it must state its
> reasons—with specific findings—supporting
> closure and its rejections of less drastic
> alternatives.

*Id.* at 272 (citing *In re Knight Publ'g Co.*, 743 F.2d 231, 234–35 (4th Cir. 1984)).  Likewise, Local Rule 105.11 requires the party seeking sealing to provide "(a) proposed reasons supported by specific factual representations to justify the sealing and (2) an explanation why alternatives to sealing would not provide sufficient protection."

Mr. Van Norstrand asks the court to keep sealed an exhibit and redact an exhibit filed in support of his opposition to Counterclaim Defendants' motion to quash subpoena to Google, (ECF Nos. 75; 76), and to redact an exhibit filed in support of his opposition to PeriArchon's motion to quash subpoena and notice of deposition, (ECF No. 92).[6]

The exhibit Mr. Van Norstrand wishes to keep sealed is "a private email between Mr. Van Norstrand and his wife (then girlfriend) where they discuss very personal issues about their relationship." (ECF No. 171, at 4).  Counterclaim Defendants do

---

[6] These materials were filed under seal without a supporting motion to seal.  In an earlier opinion, the court directed the parties to file appropriate motions to seal, redact, or withdraw. Otherwise, the material would be unsealed.  (ECF Nos. 166, 167).

not oppose Mr. Van Norstrand's motion as to this exhibit.  (ECF
No. 186, at 1).  As to the personal email, Mr. Van Norstrand has
a strong privacy interest in keeping it sealed.  The email itself
has no bearing on the merits because neither party disputes that
Mr. Van Norstrand maintained personal emails in the Google
Workspace Account.  Moreover, the email involves a nonparty.
Together, these factors considerably diminish the interest in
public access.  Consequently, the privacy interests at stake
heavily outweigh the interest in public access.  The court will
therefore grant the motion to keep this exhibit sealed.

The first exhibit he seeks to redact is an expert report
containing confidential business information.  (ECF Nos. 76; 171,
at 5-6).  Counterclaim Defendants do not oppose Mr. Van Norstrand's
motion as to this exhibit either.  (ECF No. 186, at 1).  Although
Mr. Van Norstrand asserts generally that the report contains
"confidential, non-public business information, financial
information, and information regarding the performance of
government contracting activities," (ECF No. 171, at 5), the only
information he apparently seeks to redact is an Amazon Web Services
account number, (ECF No. 171-1).  Mr. Van Norstrand has already
included this account number in public filings, including his
Counterclaim.  (*See, e.g.*, ECF No. 133 ¶ 32).  The court also
included it in its August 2024 summary judgment opinion, to no

objection. (ECF No. 145, at 4). Because Mr. Van Norstrand has already made the account number public knowledge, the court will deny his motion to redact this exhibit.

The second exhibit he seeks to redact is an excerpt from the deposition of Mr. Reese that, like the expert report, contains "confidential, non-public business information, financial information, and information regarding the performance of government contracting activities." (ECF No. 171, at 5; *see also* ECF No. 92). Counterclaim Defendants oppose Mr. Van Norstrand's motion as to this exhibit "because the redacted information is already in the public record." (ECF No. 186, at 1). Specifically, the redacted information consists of the identities of two entities with which Future Field and/or PeriArchon have conducted business. (ECF No. 171-2, at 4-5; 186, at 2). Despite the redacted information being on the public record, "Mr. Van Norstrand still believes it is more appropriate to redact, rather than publish, the government contracting information." (ECF No. 187 ¶ 3). Any interest of Future Field in keeping this information private is negligible given its dissolution and cancellation, and PeriArchon has no demonstrated interest in keeping the information private because it has not opined on the disputed redaction and all its members since 2023 oppose redaction, (ECF No. 151 ¶¶ 143, 145 (admitting that Mr. Reese, Mr. Tunson, and Mr. Brent owned and

controlled PeriArchon since January 1, 2023, and averring that Mr. Reese is the sole member of PeriArchon as of June 30, 2024)). Mr. Van Norstrand has no separate privacy interest in this information. Accordingly, the court will deny his motion to redact this exhibit.

## III. Motion to Strike

Next, it is necessary to address Mr. Van Norstrand's motion to strike the Counterclaim Defendants' and PeriArchon's motions for summary judgment. Mr. Van Norstrand moved on July 18 to strike both motions, (ECF No. 241), and for sanctions against Counterclaim Defendants and PeriArchon, (ECF No. 240), based primarily on their supposedly improper reliance on unproduced documents along with testimony from Mr. Van Norstrand's May 2025 deposition that purportedly exceeded its proper scope.[7] At the time he filed the motion to strike, Mr. Van Norstrand apparently contemplated filing an opposition to the two pending motions for summary judgment. (*Id.* at 10 (explaining that the alleged breach of the dismissal stipulation "will be more thoroughly discussed in response to [Counterclaim Defendants'] motion [for summary judgment]")). On July 29, the day his opposition and cross-motion for summary

---

[7] On Friday, July 18, Mr. Van Norstrand also moved to shorten the time that Counterclaim Defendants and PeriArchon would have to respond to his motion to strike, seeking a deadline of Monday, July 21. (ECF No. 242 ¶ 13). Mr. Van Norstrand waited two weeks to file this meritless motion and then expected this court to order his counterparts to work through the weekend to respond. This court summarily denied the motion.

judgment were due, Mr. Van Norstrand filed only his cross-motion. (ECF No. 247). The next day, July 30, he filed a notice that the court should treat his July 18 motion to strike as his opposition. (ECF No. 248).

A motion to strike under Fed.R.Civ.P. 12(f) is directed only at pleadings, not dispositive motions. Fed.R.Civ.P. 12(f) ("The court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (emphasis added)). "A motion for summary judgment is not a pleading and therefore is not susceptible to a motion to strike." *CX Reins. Co. Ltd. v. Johnson*, 325 F.R.D. 132, 135 (D.Md. 2018) (citing *Bond v. ATSI/Jack. Job Corps Ctr.*, 811 F.Supp.2d 417, 421 (D.D.C. 2011)). As Counterclaim Defendants correctly note, the proper way to challenge a motion for summary judgment is to file an opposition contesting the legal arguments and evidence on which the moving party relies. (ECF No. 250, at 15).

Perhaps recognizing that Fed.R.Civ.P. 12(f) is an inappropriate basis for his motion to strike, Mr. Van Norstrand's motion appears instead to arise under Rule 37 and Rule 56 and to target the exhibits on which Counterclaim Defendants and PeriArchon rely. Fed.R.Civ.P. 37(c)(1) provides that "[if] a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to

19

supply evidence on a motion." Fed.R.Civ.P. 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Mr. Van Norstrand's apparent theory is that after striking the specified evidence on which the motions for summary judgment rely, "the [m]otions are virtually nonexistent" and the court should strike them in their entirety. (ECF No. 241-1, at 5).

The evidence with which Mr. Van Norstrand takes issue is not improper in any way. He specifies (1) the updated Eric Cole expert report; (2) Mr. Reese's declaration; (3) Mr. Brent's declaration; (4) sixteen other allegedly unproduced documents; (5) testimony from Mr. Van Norstrand's deposition that allegedly exceeded the deposition's scope; and (6) the Joint Record Extract. Judge Coulson already denied Mr. Van Norstrand's sanctions motion premised on the same allegations, (ECF No. 270); his analysis is readily applicable to Mr. Van Norstrand's motion to strike and obviates the need for great detail here.[8]

---

[8] Judge Coulson's analysis in his memorandum opinion issued on September 8, 2025, is more fulsome than the court will provide below because Mr. Van Norstrand's motion to strike and motion for sanctions are largely duplicative. To the extent the parties desire greater detail as to why the motion to strike is denied, they are encouraged to consult Judge Coulson's opinion.

First, Mr. Van Norstrand challenges the Cole report on the basis that it was not timely disclosed and "primarily relies on information that was not produced in discovery," including Mr. Van Norstrand's May 2025 deposition testimony that allegedly exceeded the scope of the deposition. (ECF No. 241-1, at 5-6). The timeliness requirement Mr. Van Norstrand quotes itself makes clear that it applies to *pretrial* disclosures, not summary judgment exhibits. (*Id.* (quoting Fed.R.Civ.P. 26(e)(2)); *see also* Fed.R.Civ.P. 26(e)(2) ("Any additions or changes to [the expert report] must be disclosed by the time the party's *pretrial* disclosures under Rule 26(a)(3) are due." (emphasis added)). As Counterclaim Defendants note, "pretrial disclosures are not yet due" because there was (and is) no trial date set. (ECF No. 250, at 36). Moreover, Judge Coulson determined that Mr. Van Norstrand "has had the documents that support [the Cole report] since they were created in February and March of 2022." (ECF No. 270, at 10). Judge Coulson also found that the questions in Mr. Van Norstrand's May 2025 deposition did not "exceed the permitted scope of the deposition." (*Id.* at 7). Therefore, Mr. Van Norstrand's effort to strike the Cole report, or any portion thereof, is baseless.

Second, Mr. Van Norstrand attacks Mr. Reese's declaration as reliant on information withheld from Mr. Van Norstrand, rendering

the information "inadmissible." (ECF No. 241-1, at 7). More specifically, he asserts that Mr. Reese conducted a "forensic analysis" of Mr. Van Norstrand's company laptop, then refused to provide the analysis and the laptop to Mr. Van Norstrand. (*Id.* at 7-8). As Judge Coulson explained, however, Mr. Van Norstrand has had access to the documents underpinning Mr. Reese's "forensic analysis" throughout the duration of this litigation. (ECF No. 270, at 10). Judge Coulson further found that neither Counterclaim Defendants nor PeriArchon "prevented access to the laptop so as to justify now precluding information from the laptop." (*Id.* at 14). Finally, Mr. Van Norstrand asserts that Mr. Reese violated his privacy rights by examining his laptop. (ECF No. 241-1, at 7). The court disagrees for the reasons laid out in its analysis of Mr. Van Norstrand's invasion of privacy claim below. *See infra* section IV.C.7. Mr. Van Norstrand provides no other reason to deem Mr. Reese's declaration, or any portion thereof, inadmissible. Accordingly, the court will not strike it.

Third, Mr. Van Norstrand argues that Mr. Brent's declaration "must be stricken" because it "focuses on information and evidence that was not produced during discovery." (ECF No. 241-1, at 8). As Judge Coulson explained, however, Mr. Van Norstrand "does not point to a discovery request . . . to which the information [in Mr. Brent's declaration] would have been responsive." (ECF No.

270, at 10-11).    Consequently,  the  court  will  not  strike  Mr.

Brent's declaration.

Fourth,   Mr.   Van   Norstrand   complains   that   Counterclaim

Defendants and PeriArchon rely on sixteen documents "not produced

during discovery."[9]  (ECF No. 241-1, at 9).  After thorough briefing

and careful analysis of these documents,[10] Judge Coulson concluded

that they were either previously produced, accessible to Mr. Van

Norstrand, or "necessary to rebut [Mr. Van Norstrand's] May 2025

deposition testimony."  (ECF No. 270, at 11-12).   Therefore, "any

'late' production was . . . justified."  (*Id.* at 12).   There is no

reason to strike any of the sixteen documents.

Fifth, Mr. Van Norstrand contests reliance on portions of his

May 2025 deposition testimony he argues exceeded the scope of the

deposition.   (ECF No. 241-1, at 10-11).   Judge Coulson already

determined  that  Counterclaim  Defendants  and  PeriArchon  did  not

exceed  the  scope  of  the  May  2025  deposition  in  their  questioning

---

[9]  Mr.  Van  Norstrand  initially  noted  eighteen  unproduced
documents in his motion to strike.   After Counterclaim Defendants
observed in their opposition that two had certainly been produced,
Mr. Van Norstrand discussed only sixteen documents in his reply.
(ECF No. 270, at 11 & n.9).

[10] Because Mr. Van Norstrand first identified in his reply the
specific  discovery  requests  to  which  he  felt  the  unproduced
documents  were  responsive,  Judge  Coulson  ordered  Counterclaim
Defendants and PeriArchon to file a sur-reply addressing Mr. Van
Norstrand's new contentions.  (ECF No. 259).

of Mr. Van Norstrand.  (ECF No. 270, at 7).  The court will not strike any portion of the deposition.

Finally, Mr. Van Norstrand asserts that Counterclaim Defendants and PeriArchon failed to include him in the creation of the "Joint Record Extract" in alleged violation of the court's June 18, 2025, order.  (ECF No. 241-1, at 11).  In light of this supposed infraction, Mr. Van Norstrand makes the extraordinary request that the court "strike the entirety of the [m]otions, the 'Joint Record Extract,' and any references thereto." (*Id.* at 13). This relief will be denied.  Counterclaim Defendants and PeriArchon complied with the court's order that the parties "confer and file a single record extract containing the primary documents and depositions to which all briefs refer."  (ECF No. 233).  At the beginning of their motion for summary judgment, Counterclaim Defendants state that "a Joint Record Extract will be filed *with the last brief in the cross-motion sequence*." (ECF No. 238, at 23 (emphasis added)).  They "created a shell document, compiled documents they referred to in their motion into a draft JRE and sent that draft . . . to Van Norstrand's counsel for his additions."  (ECF No. 250, at 10).  They reasonably adopted the procedure in Fed.R.App.P. 30, (*Id.* at 10–11), and their plan to have each party add to the Joint Record Extract throughout the briefing sequence was clear.  As they correctly note, Mr. Van

24

Norstrand's proper recourse if he was confused was to reach out to them to clarify, not to file a motion for sanctions and a motion to strike the entirety of their summary judgment motion. (*Id.* at 11).

In short, there is no evidence to strike from the motions of Counterclaim Defendants and PeriArchon for summary judgment, nor will the motions themselves be stricken. Mr. Van Norstrand chose to use his motion to strike as his opposition to the motions for summary judgment. (ECF No. 248). Although this decision came a day after Mr. Van Norstrand's opposition was due, the court will excuse the delay. The motion to strike, however, offers little utility to Mr. Van Norstrand as an opposition. Its premises are unfounded, as explained above, and it otherwise fails to respond to the substantive arguments made in the motions for summary judgment. That said, Mr. Van Norstrand did file his cross-motion for summary judgment on time, which does contest the substantive arguments in Counterclaim Defendants' and PeriArchon's motions for summary judgment. The court will therefore treat Mr. Van Norstrand's motion for summary judgment as his opposition to Counterclaim Defendants' and PeriArchon's motions for summary judgment.

## IV.  Motions for Summary Judgment

### A.    Standard of Review

Summary judgment is appropriate under Fed.R.Civ.P. 56(a) when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.[11]  A fact is material if it "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011) (Shedd, J., dissenting)).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When evaluating a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  Accordingly, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

---

[11] The court exercises supplemental jurisdiction over Mr. Van Norstrand's state law counterclaims.  28 U.S.C. § 1367.  When exercising supplemental jurisdiction, a federal court applies state substantive law as dictated by the choice of law rules of the state in which the court sits. *Ground Zero Museum Workshop v. Wilson*, 813 F.Supp.2d 678, 696 (D.Md. 2011).  No party disputes that Maryland law applies.

When considering cross-motions for summary judgment, "the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). In doing so, it "must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). Importantly, the "mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient" to defeat summary judgment. *Anderson*, 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Chung Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citing *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). The court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

Additionally, PeriArchon's and Mr. Van Norstrand's motions for summary judgment concern requests for declaratory judgment. The Declaratory Judgment Act requires a genuine, justiciable controversy for a declaratory judgment action to proceed. *See Brooks v. Cousins*, 527 F.2d 472, 473 (4th Cir. 1975) (per curiam) ("[T]he parties must have adverse interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (citation modified)); *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 242 (1937) (explaining that the dispute underlying the request for declaratory judgment must "call[], not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts"). If a party is entitled to a declaratory judgment, the court must issue one, regardless of which side prevails and even if it is adverse to the party requesting it. *See Md. Physician's Edge, LLC v. Behram*, No. 17-cv-2756-DKC, 2019 WL 4573417, at *9 (D.Md. Sep. 20, 2019).

## B. PeriArchon

PeriArchon moves for summary judgment against Mr. Van Norstrand on Counts I, VI, and XVI of the Third-Party Complaint. Mr. Van Norstrand cross-moves for summary judgment against PeriArchon on those same counts and attempts to move for summary judgment on Counts III and IV. As will be discussed, PeriArchon will be granted summary judgment against Mr. Van Norstrand on

Counts I, VI, and XVI, and Mr. Van Norstrand will be denied summary judgment against PeriArchon on Counts I, III, IV, VI, and XVI.

### 1.    Count I: Declaratory Judgment

PeriArchon and Mr. Van Norstrand cross-move for summary judgment on Count I of the Third-Party Complaint, seeking a declaration regarding whether PeriArchon is the alter ego of Future Field.  In other words, Mr. Van Norstrand wishes to pierce the veil of Future Field to reach the assets of PeriArchon.  The record evidence and applicable law make clear that PeriArchon is not the alter ego of Future Field and is therefore entitled to summary judgment.

Under traditional veil piercing doctrine in Maryland, "the courts will, in a proper case, disregard the corporate entity and deal with substance rather than form, as though a corporation did not exist, [although] shareholders generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud or enforce a paramount equity." *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 310 (1975) (citation modified).  There are three circumstances in which a court will pierce the corporate veil:

> *First*.  Where the corporation is used *as a mere shield for the perpetration of a fraud*,

29

> the courts will disregard the fiction of
> separate corporate entity.
>
> *Second*.  The courts may consider a corporation
> as unencumbered by the fiction of corporate
> entity and deal with the substance rather than
> form as though the corporation did not exist,
> *in order to prevent evasion of legal
> obligations*.
>
> *Third*.  Where the stockholders themselves, or
> a parent corporation owning the stock of a
> subsidiary corporation, *fail to observe the
> corporate entity, operating the business or
> dealing with the corporation's property as if
> it were their own*, the courts will also
> disregard the corporate entity for the
> protection of third persons.

*Hildreth v. Tidewater Equip. Co.*, 378 Md. 724, 734 (2003) (quoting

Herbert Brune, Maryland Corporation Law & Practice § 371 (1953)).

The same rules that govern piercing the corporate veil also govern

piercing the LLC veil.  *See Serio v. Baystate Props., LLC*, 209

Md.App. 545, 558–59 (2013).  "Courts have described as 'herculean'

the challenge facing a party seeking to pierce the corporate veil

on these grounds." *Timilon Corp. v. Empowerment Just. Ctr. Corp.*,

738 F.Supp.3d 669, 687 (D.Md. 2024) (quoting *Coastal Spray Foaming,

LLC v. Reynolds Home Sols., Inc.*, No. 17-cv-00701-JMC, 2017 WL

2242666, at *2 (D.Md. May 23, 2017)).

The third basis for piercing the corporate veil, where the

stockholder fails to observe the corporate form, is "sometimes

called the 'alter ego' doctrine." *Hildreth*, 378 Md. at 735.

Courts often consider five factors when determining whether a

corporate entity is a mere alter ego of the stockholder: "(1) whether the corporation is inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit, (2) whether there is commingling of corporate and personal assets, (3) whether there are non-functioning officers or directors, (4) whether the corporation is insolvent at the time of the transaction, and (5) the absence of corporate records." *Id.* at 735-36 (citing 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 41.30 (1999)).

Mr. Van Norstrand argues that PeriArchon is the alter ego of Future Field because both entities shared the same address, Counterclaim Defendants were owners of both entities,[12] and Lockheed Martin issued a contract to PeriArchon immediately after cancelling its contract with Future Field. (ECF No. 247, at 17). In other words, he asserts that the two entities have common ownership and, at different times, had a common asset. Consequently, he seeks a declaration that "[PeriArchon] is liable for any profits, business, and obligations that should belong to Future Field Solutions and owed to [Mr. Van Norstrand] upon entry

---

[12] It is undisputed that Mr. Reese, Mr. Brent, and Mr. Tunson all owned and controlled PeriArchon for most of 2023, and Mr. Brent and Mr. Tunson aver that they ceased their membership in PeriArchon between November 2023 and June 2024. (*Compare* ECF No. 133 ¶ 143, *with* ECF No. 151 ¶ 143).

of judgment." (ECF No. 133, at 30). PeriArchon asserts, on the contrary, that it is not the alter ego of Future Field because Lockheed Martin is the only client the two entities had in common, and even then they had "entirely separate contracts" with Lockheed Martin, not a single, transferred contract. (ECF No. 235-4, at 4). Moreover, the business shift from Future Field to PeriArchon was due not to a desire to harm Mr. Van Norstrand, but rather a result of the repercussions of Mr. Van Norstrand's "dishonest statements and negative interactions with clients of [Future Field]" on Future Field's business prospects. (*Id.*).

Neither party appears to grasp, at least initially, what Mr. Van Norstrand is in fact trying to accomplish. As stated in Mr. Van Norstrand's Third-Party Complaint, he seeks to hold PeriArchon liable for the obligations of Future Field that would be owed to Mr. Van Norstrand upon entry of judgment. From this formulation it is quite clear that Mr. Van Norstrand wished to pierce the corporate veil *of Future Field* to reach the assets of PeriArchon. Instead, PeriArchon and Mr. Van Norstrand often seem to focus their dispute on whether to pierce the corporate veil *of PeriArchon*, which would be nonsensical in the context of this case because PeriArchon holds the principal asset. (ECF Nos. 235-4, at 4 ("[PeriArchon] . . . is not a mere shield for the perpetration of fraud[.]"); 247, at 18 ("The corporate form [of PeriArchon] was

abused to perpetrate a wrong and should be disregarded.")).  Even construing the parties' arguments as directed at piercing the corporate veil of Future Field, Mr. Van Norstrand encounters one insurmountable hurdle.  The alter ego doctrine allows a party to disregard the corporate form and reach the assets of "the stockholders themselves, or a parent corporation owning the stock of a subsidiary corporation." *Hildreth*, 378 Md. at 734 (quoting Brune, Maryland Corporation Law & Practice § 371).  PeriArchon owns no share of Future Field. (*See* ECF Nos. 133 ¶¶ 11-15; 151, ¶¶ 11-15; 252-3, at 189-90).  It is not an owner of Future Field in any sense.  Accordingly, traditional veil piercing, which is vertical in concept, is inapplicable.

Instead, as PeriArchon belatedly notes in its opposition to Mr. Van Norstrand's cross-motion, Mr. Van Norstrand in essence seeks horizontal veil piercing, or what some courts have called triangular veil piercing.  (ECF No. 266, at 5); *Nursing Home Consultants, Inc. v. Quantum Health Servs., Inc.*, 926 F.Supp. 835, 840 n.12 (E.D.Ark. 1996) ("[T]he 'triangular piercing' theory allows for liability between corporations that are not stockholders of each other."); *see also Dill v. Rembrandt Grp., Inc.*, 2020 COA 69, ¶ 23 (Colo. App. 2020) (labeling the mechanism "horizontal veil piercing"); *Mortimer v. McCool*, 667 Pa. 134, 175 (Pa. 2021) (labeling the mechanism "triangular piercing").

Horizontal veil piercing as it has been recognized generally consists of three steps. First, the two entities horizontally situated must be sister entities, meaning they share common ownership. *Dill*, ¶ 33 (citing Black's Law Dictionary 418 (10th ed. 2014)). Second, the plaintiff must pierce the veil between the debtor sister entity and the common owner. Third, the plaintiff must reverse pierce the veil between the common owner and the targeted sister entity. *Id.* at ¶ 35 ("[A] plaintiff seeking to disregard the corporate formalities separating horizontal affiliates must first pierce the veils separating each entity from the shared corporate parent." (collecting cases)); *Mortimer*, 667 Pa. at 171 (explaining that enterprise liability, another term for horizontal liability, "must run up from the debtor corporation to the common owner, and from there down to the targeted sister corporation(s)"); *Nursing Home Consultants*, 926 F.Supp. at 840 n.12 ("Conceptually, a triangular pierce results from a sequential application of the traditional piercing doctrine and the 'reverse piercing' doctrine[.]"). This complex, multistep process gives rise to the characterization of horizontal veil piercing as triangular. It appears at least eleven states permit some form of horizontal veil piercing. *See Mortimer*, 667 Pa. at 163, 176 (observing that ten other states recognize some form of horizontal liability and then declining to prohibit it in Pennsylvania).

PeriArchon and Future Field have some overlapping common ownership, but not the parent-subsidiary, sister-entity relationship that the doctrine requires. Moreover, Maryland does *not* recognize horizontal veil piercing. Mr. Van Norstrand has not pointed the court to any case indicating Maryland does recognize the doctrine, and the court is unaware of any.[13] Thus, horizontal veil piercing cannot save Mr. Van Norstrand's argument.

Finally, Mr. Van Norstrand makes a late-breaking successor liability argument, which likewise fails. At no point in the Counterclaim does Mr. Van Norstrand assert that PeriArchon is Future Field's successor, nor does he seek a declaration to that effect. (*See* ECF No. 133, at 29–30). He mentions in passing in his motion for summary judgment that "PeriArchon LLC is the alter

---

[13] Mr. Van Norstrand asserts, without support, that "Maryland permits veil-piercing (including 'reverse' or 'sideways' piercing to reach a successor/affiliate)." (ECF No. 268, at 13). The two cases he relies on, *Hildreth* and *Bart Arconti*, discuss only traditional veil piercing. It appears the Maryland state courts have not even had occasion to consider horizontal or triangular piercing. The extremely cautious approach of Maryland courts in this area means that Mr. Van Norstrand fails in his meager attempt to apply this more extreme theory. *See Ice. Telecom, Ltd. v. Info. Sys. & Networks Corp.*, 268 F.Supp.2d 585, 591 (D.Md. 2003) ("It is not the province of this Court, but rather the state courts of Maryland, to flesh out and expand the factual scenarios that could warrant a court's piercing of the corporate veil."); *see also Washington v. Union Carbide Corp.*, 870 F.2d 957, 962 (4th Cir. 1989) ("Federal courts are permitted under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64[] (1938), and [*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)], to rule upon state law as it presently exists and not to surmise or suggest its expansion.")

ego *and successor* of [Future Field]," but he does not specifically develop the successor liability argument there. (ECF No. 247, at 18 (emphasis added)). Then, in his reply brief on his motion for summary judgment against Counterclaim Defendants (not PeriArchon), Mr. Van Norstrand offers a full-fledged successor liability argument (and relegates his veil piercing argument to an argument "in the alternative").[14]  (ECF No. 268, at 12, 15–16). A party may not use his motion for summary judgment, much less his reply brief in a different briefing sequence against a different party, to amend his pleading. *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands*, *LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints

---

[14]  "The general rule of corporate liability is that, ordinarily, a corporation which acquires the assets of another corporation is not liable for the debts and liabilities of the predecessor corporation." *Balt. Luggage Co. v. Holtzman*, 80 Md.App. 282, 290 (1989). There are four recognized exceptions under Maryland law, however, that permit successor liability: "(1) there is an expressed or implied assumption of liability; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape liability for debts." *Id.* (citing, inter alia, *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 182 n.5 (1973)). Successor liability may attach to LLCs just as it attaches to corporations. *Playmark Inc. v. Perret*, 253 Md.App. 593, 607 n.6 (2022). Mr. Van Norstrand focuses on the third, "mere continuation" exception. (ECF No. 268, at 12, 15). This exception applies when "there is a transfer of assets" to an entity that "is substantially the same as the predecessor . . . to place those assets out of reach of the predecessor's creditors." *Balt. Luggage*, 80 Md.App. at 297.

36

through briefing[.]"). The court will therefore not consider the successor liability argument.

That being said, Mr. Van Norstrand's attempt to shoehorn a successor liability theory into his alter ego declaration request is not as unusual as Counterclaim Defendants and PeriArchon suggest. It is certainly possible that a successor entity is also the alter ego of its predecessor. 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 48 (2025) ("While conceptually distinct, the results of an analysis of successor liability and disregard of the separate entities of two corporations may be the same. Whether a successor company is an alter-ego of a former corporation is a question of fact."). It is not necessarily true, however, that a successor is an alter ego. *See Howard Johnson Co. v. Detroit Loc. Joint Exec. Bd.*, 417 U.S. 249, 259 n.5 (1974) ("[T]his is not a case where the successor corporation is the 'alter ego' of the predecessor, where it is 'merely a disguised continuance of the old employer.'" (citation modified)). Under Maryland law, alter ego status and successor status comprise two different legal standards and should be analyzed separately. *Compare Hildreth*, 378 Md. at 734–36 (describing the standard for determining alter ego status)*, with Balt. Luggage Co. v. Holtzman*, 80 Md.App. 282, 290–99 (1989)

(describing the standard for determining successor status).[15] Whereas alter ego status depends on control, successor status depends on similarity. As between two individuals or entities, absence of control does not preclude successor status, and absence of similarity does not preclude alter ego status. Because alter ego status is plainly distinct from successor status, the court will not read Mr. Van Norstrand's Third-Party Complaint and motions to request a declaration of successor status.[16]

PeriArchon's motion for summary judgment against Mr. Van Norstrand on Count I of the Third-Party Complaint is granted, and Mr. Van Norstrand's cross-motion for summary judgment is denied. The court declares that PeriArchon is not the alter ego of Future Field.

---

[15] One case in the then-named Court of Special Appeals of Maryland has implied that the "mere continuation" theory of successor liability is a particular application of alter ego liability. *See Martin v. TWP Enters. Inc.*, 227 Md.App. 33, 49 (2016) (citing 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 48).

[16] A consequence of Mr. Van Norstrand's failure to assert this legal theory in his Third-Party Complaint and motions is that certain key issues are not well developed factually or briefed legally. For example, Mr. Van Norstrand relies on the "mere continuation" theory of successor liability in his reply, which requires a transfer of assets. (ECF No. 268, at 15 (citing *Balt. Luggage*, 80 Md.App. at 297)). Whether the cancellation of the Lockheed-Future Field contract and next-day issuance of the Lockheed-PeriArchon contract in effect constitutes a "transfer of assets" is not fleshed out in the papers.

38

### 2. Counts III and IV: Breach of Duty of Loyalty and Fiduciary Duty

Mr. Van Norstrand attempts to move for summary judgment on Counts III and IV of the Third-Party Complaint against PeriArchon, seeking damages for breach of duty of loyalty and fiduciary duty. (ECF No. 247, at 25). As explained above, "parties cannot amend their complaints through briefing." *S. Walk at Broadlands*, 713 F.3d at 184. PeriArchon correctly objects because Mr. Van Norstrand did not name PeriArchon in the list of Defendants against whom he was asserting these claims. (ECF No. 133, at 34 ("Van Norstrand respectfully requests that this Court . . . enter a judgment [for breach of duty of loyalty] against Counterclaim Defendants [Future Field], Reese, Brent, and Tunson[.]"); *id.* at 36 ("Van Norstrand respectfully requests that this Court . . . enter a judgment [for breach of fiduciary duty] against Counterclaim Defendants [Future Field], Reese, Brent, and Tunson[.]")). In its answer, PeriArchon clearly stated its understanding that it was not subject to these claims. (ECF No. 153 ¶¶ 178-92 (repeating its understanding that "the allegations contained in [these counts] of the Third-Party Claim are not directed at [PeriArchon] and, therefore, no response is required")). Mr. Van Norstrand's motion for summary judgment against PeriArchon for breach of duty of loyalty and breach of

fiduciary duty therefore constitutes an improper attempt to amend his Third-Party Complaint.[17]

Mr. Van Norstrand's motion for summary judgment against PeriArchon on Counts III and IV is improper and denied.

### 3. Count VI: Accounting

PeriArchon and Mr. Van Norstrand cross-move for summary judgment on Count VI of the Third-Party Complaint, in which Mr. Van Norstrand seeks an accounting from PeriArchon of its business activity since 2022. (ECF No. 133, at 39–40). PeriArchon's argument prevails.

It is well established now under Maryland law that an accounting is not a cause of action but rather a remedy. *Alts. Unlimited, Inc. v. New Balt. City Bd. of Sch. Comm'rs*, 155 Md.App. 415, 507 (2004). Even as a remedy, accounting has fallen out of fashion. As the Appellate Court of Maryland has explained, the "function of an equitable accounting has been rendered obsolete by the modern rules of discovery." *Id.* at 511. Mr. Van Norstrand had his opportunity to receive discovery from PeriArchon. On January 8, 2025, PeriArchon produced the requested financial records. (ECF Nos. 197-2; 247-5). At the January 17, 2025,

---

[17] Even if these counts had been properly asserted against PeriArchon, however, they would fail. Mr. Van Norstrand has never been a member of PeriArchon, and he can identify no duty PeriArchon or its members owed him independent of Future Field.

telephone conference, Mr. Van Norstrand's counsel represented to the court: "We don't need any more discovery, and we are prepared to move forward to the dispositive motion and trial phase." (ECF No. 209, at 13). There is no reason now to provide Mr. Van Norstrand another bite at the apple.

The court will grant PeriArchon's motion for summary judgment on Count VI and deny Mr. Van Norstrand's cross-motion for summary judgment.

### 4. Count XVI: Tortious Interference with Contracts and Business Expectancies

PeriArchon and Mr. Van Norstrand cross-move for summary judgment on Count XVI of the Third-Party Complaint, in which Mr. Van Norstrand seeks damages from PeriArchon for tortious interference with contracts and business expectancies. (ECF No. 133 ¶¶ 296–307). Although the parties dispute whether Count XVI of the Counterclaim is dismissed as against Counterclaim Defendants, no party disputes that Count XVI of the Third-Party Complaint remains viable as against PeriArchon.

The claims of tortious interference with contract and tortious interference with business expectancies are similar, distinguished primarily by the presence or absence of an existing contract. There are five elements of a claim of tortious interference with contract: "(1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the

contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, No. 02-cv-1565-DKC, 2007 WL 9782461, at *3 (D.Md. Sep. 17, 2007) (quoting *Fowler v. Printers II, Inc.*, 89 Md.App. 448, 466 (1991)). The broader claim of tortious interference with business expectancies has four required elements: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Spengler v. Sears, Roebuck & Co.*, 163 Md.App. 220, 242 (2005) (quoting *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md.App. 470, 504 (1995)).

Mr. Van Norstrand cannot establish standing to pursue these claims against PeriArchon. "Only parties to the contract or economic relationship have standing to bring a tortious interference claim; third-parties who are affected by the wrongful interference may not recover unless they are intended beneficiaries of the relationship or contract." *Baron Fin. Corp. v. Natanzon*, 471 F.Supp.2d 535, 540 (D.Md. 2006) (citing, inter alia, Restatement (Second) of Torts § 766 cmt. p). Accordingly,

42

"a shareholder or member of a corporation or LLC may not recover for tortious interference of the business or contract of the corporation or LLC." *Id.* (citing, inter alia, *First Com. Bank, N.A. v. Walker*, 333 Ark. 100, 109 (1998)). Here, Mr. Van Norstrand identifies only *Future Field* contracts and business relationships with which PeriArchon allegedly interfered. (ECF No. 133 ¶ 306 ("Counterclaim Defendants and [PeriArchon] wrongfully interfered with [*Future Field's*] business expectancies and contracts by operating and controlling a directly competitive entity and diverting business opportunities to this entity, [PeriArchon].") (emphasis added)). PeriArchon highlights this fatal deficiency in its motion for summary judgment, (ECF No. 235-4, at 7), and Mr. Van Norstrand fails to offer any explanation in his motion for summary judgment or reply regarding his standing to sue. As a result, Mr. Van Norstrand is not the proper party to bring these tortious interference claims.

The only other avenue to bring these claims would be as a derivative suit. *See* Md. Code Ann., Corps. & Ass'ns § 4A-801; *Bender v. Schwartz*, 172 Md.App. 648, 665 (2007) ("[T]he derivative form of action permits an individual shareholder or a group of shareholders to bring 'suit to enforce a *corporate* cause of action against officers, directors, and *third parties*,' where those in control of the company refuse to assert a claim belonging to it."

(second emphasis added) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108–09 (1991))). Mr. Van Norstrand, however, has not asserted these claims derivatively. In fact, PeriArchon raises the notion of a derivative suit in its motion for summary judgment, (ECF No. 235-4, at 7-8), but Mr. Van Norstrand never substantively addresses it. Consequently, the court will not entertain these claims as derivative in nature.

PeriArchon is entitled to summary judgment on Mr. Van Norstrand's tortious interference claims, and Mr. Van Norstrand's cross-motion for summary judgment will be denied.

### C. Counterclaim Defendants

Counterclaim Defendants and Mr. Van Norstrand seek summary judgment on Counts II–XVIII of the Counterclaim, Count I having been resolved in the August 2024 opinion. As will be discussed, summary judgment will be denied to both parties on Count II. The court will grant Counterclaim Defendants' motion to enforce the stipulation of dismissal with prejudice of Counts XIV and XVI and deny the parties' motions for summary judgment on these counts as moot. Counterclaim Defendants are entitled to summary judgment on Counts III-XIII, XV, and XVII-XVIII.

44

### 1.    Count II: Breach of Contract

In Count II, Mr. Van Norstrand asserts a claim for breach of contract premised on Counterclaim Defendants' improper withdrawal of him from Future Field in March 2022. (ECF No. 133 ¶¶ 176-77).

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001) (citing *Continental Masonry Co. v. Verdel Constr. Co.*, 279 Md. 476, 480 (1977)). "[U]pon proof of liability, the non-breaching party may recover damages for 1) the losses proximately caused by the breach, 2) that were reasonably foreseeable, and 3) that have been proven with reasonable certainty." *Adcor Indus., Inc. v. Beretta U.S.A. Corp.*, 250 Md.App. 135, 154 (2021) (quoting *Hoang v. Hewitt Ave. Assocs., LLC*, 177 Md.App. 562, 594 (2007)).

This court held in its August 2024 opinion that "[b]ecause [Mr. Van Norstrand] was improperly withdrawn from Future Field, the Amendment [effectuating his withdrawal], which lacks [Mr. Van Norstrand's] signature, is invalid and violative of the Operating Agreement." (ECF No. 145, at 43-44). In other words, Mr. Van Norstrand potentially satisfied the elements of contractual obligation and breach. Regarding damages, the court continued that "[t]he only harm [Mr. Van Norstrand] asserts arises from the

45

breach of the Operating Agreement's Valuation of Interest Provision," which requires a "fair market value appraisal of all [Future Field] assets . . . conducted by an independent accounting firm agreed to by all Members." (*Id.* at 44 (quoting ECF Nos. 55-2, at 10; 111-1, at 64)). Mr. Van Norstrand contends that Counterclaim Defendants retained an appraiser, Lebson & Associates, without his agreement, and they wired Mr. Van Norstrand $24,513 for his membership interest. (ECF No. 133 ¶¶ 119, 126).[18] Mr. Van Norstrand alleges that he unsuccessfully tried to return the money. (*Id.* ¶ 127). Because "the record [did not] contain any evidence regarding the valuation of [Mr. Van Norstrand's] membership interest," the court denied him summary judgment at that time. (ECF No. 145, at 44-45). The court noted that the parties had retained a neutral expert, Ron Stramberg, whose report on Mr. Van Norstrand's valuation interest had not been completed at the time of his motion for summary judgment. (*Id.* at 44 & n.15).

---

[18] The numbers Mr. Van Norstrand provides vary. In the Counterclaim, he alleges he was paid $24,513.21. (ECF No. 133 ¶ 126). In the motion for summary judgment, he states he was paid $24,513.40. (ECF No. 247, at 39). His expert states that he was paid $24,513.41. (ECF No. 247-7, at 11). Given the insignificance of the varying cents, the court will round to the nearest whole number.

Mr. Van Norstrand now moves for summary judgment on Count II because Mr. Stramberg's report is complete and values Mr. Van Norstrand's membership interest at the time of his removal at $75,000. (ECF Nos. 247, at 20; 247-19, at 3).[19] Mr. Van Norstrand contends that the nearly $50,487 shortfall suffices to prove damages, entitling him to summary judgment.[20] Counterclaim Defendants' only argument related to Count II is a brief assertion that the breach of contract claim is moot because the court ruled that he never ceased being a member. (ECF No. 238, at 22). They further develop this argument when discussing the fraud claim, explaining that Mr. Van Norstrand did retain his membership interest, but that it was ultimately worthless because there were no assets remaining for distributions to members following the waterfall provision of the OA during the wind-up. (*See id.* at 75). The necessary implication of this argument is that Mr. Van Norstrand's inability to recoup his membership interest at any point before and during the wind-up is not causally linked to the

---

[19] Counterclaim Defendants style their motion for summary judgment as one on "all counts," (ECF No. 238, at 1), but do not include a separate section for breach of contract in their motion or opposition. The court acknowledges that they at least nominally move for summary judgment on this count.

[20] As explained in the previous footnote, the court rounds to the nearest whole number due to the varying numbers Mr. Van Norstrand provides.

chain of events initiated by Counterclaim Defendants' improper withdrawal of Mr. Van Norstrand.  On the other hand, Mr. Van Norstrand argues that the improper withdrawal did cause his inability to recoup his membership interest.

The claim in Count II of the Counterclaim concludes that Mr. "Van Norstrand has been wrongfully deprived of his rights as a member of [Future Field], the fair market value of his member interests in [Future Field], and the full amount of his retained earnings from 2021, in addition to his compensation and draws." (ECF No. 133 ¶ 177).  He requests compensatory damages in the amount of the fair market value of his member interests, his retained earnings, his unpaid compensation and draws, as well as "such other and further relief" as deemed proper.  (*Id.* at 32). The breach that was found occurred in 2022 and his reinstatement did not occur until 2025.  The current record clearly does not establish, as a matter of law, the possible damages arising from the time he was improperly kept from membership.  Multiple genuine disputes of material fact remain on this damages question, and the court declines to rule on the preliminary question of liability. *See* Fed.R.Civ.P. 56(g) (granting courts discretion whether or not to decide subsidiary issues when it does not grant all requested relief).

Some of the disputes are as follows. Mr. Van Norstrand's expert, Michael Smigocki, raises several issues in his expert report with the valuation method used by Mr. Stramberg. He questions why a promised second appraisal as of December 31, 2022, which was indicated in the engagement letter, was not performed, explaining that this would have been the more appropriate appraisal date were Mr. Van Norstrand's withdrawal deemed improper. (ECF No. 247-7, at 52). It is unclear whether the engagement letter is in the record. In relation to Mr. Stramberg's valuation as of March 22, 2022, he further questions the use of an allegedly insider transaction as a benchmark, the methodology Mr. Stramberg used, the value multiple Mr. Stramberg used, and the consideration of events that occurred after Mr. Van Norstrand's withdrawal. (*Id.* at 52-65). Given that paragraph 38 of the OA renders the agreed-upon expert's valuation binding, (ECF No. 252-3, at 179), Mr. Stramberg's critiques cannot create a dispute of material fact. The allegation that a second promised appraisal was never conducted, however, does raise concerns as to whether the entirety of the binding appraisal is before the court.

Mr. Van Norstrand further requests roughly $333,860 he argues were due to him beyond the value of his membership interest. (ECF No. 247, at 20-21). He relies on Mr. Smigocki's expert report to reach this figure. Although Mr. Van Norstrand's description of

49

what this number entails is somewhat confused, Mr. Smigocki's analysis is clearer. First, that number accounts for the equalization of Mr. Reese's, Mr. Brent's, and Mr. Tunson's 2022 draws, amounting to $38,173.73[21] in equalized distributions to Mr. Van Norstrand. (ECF No. 247-7, at 50-51). Second, it includes a $15,000 annual 401(k) accrual payment for 2022 that Mr. Van Norstrand contends was owed him because it was paid to Mr. Reese, Mr. Brent, and Mr. Tunson. (*Id.* at 49, 50-51). Third, it includes the $58,607.28 adjusted capital account balance that Mr. Smigocki calculates Mr. Van Norstrand would have retained at the end of 2022. (*Id.* at 50-51). Fourth, it accounts for the disputed January 2022 agreement that each member was entitled to a $200,000 per year draw. (*Id.* at 49-50; *see* ECF No. 263, at 95). Considering this, Mr. Smigocki calculates $222,079 owed to Mr. Van Norstrand in monthly $16,666 draws between March 2022 and April 2023, discounting the amount drawn by Mr. Van Norstrand prior to his withdrawal in late March 2022. (ECF No. 247-7, at 49, 50-51). Counterclaim Defendants do not respond to these damages requests in their briefing, apart from vigorously contesting the existence

---

[21] The number in Mr. Van Norstrand's brief and Mr. Smigocki's report is $38,179, (ECF Nos. 247, at 20; 247-7, at 46), but the number in the spreadsheet showing Mr. Smigocki's work is $38,173, (ECF No. 247-7, at 50). This $6 discrepancy appears in the adjusted capital account balance, too. (ECF No. 247-7, at 50-51). At this stage, the court merely notes this minor inconsistency and uses the figures in the spreadsheet.

of the $200,000 per year draw agreement. (*See* ECF No. 263, at 95). Mr. Van Norstrand's failure to provide evidence of this agreement precludes summary judgment on this request. Moreover, Mr. Smigocki's support rests on various assumptions, such as the need to remove litigation expenses from the calculation of the capital account balances, (ECF No. 247-7, at 50), that the court is unprepared to accept without adversarial proceedings.

The court will deny both parties' motions for summary judgment.

### 2.    Counts III and IV: Breach of Duty of Loyalty and Fiduciary Duty

In Count III of the Counterclaim, Mr. Van Norstrand alleges that Counterclaim Defendants breached their duty of loyalty to (1) "act in the best interests of [Future Field], which includes an obligation not to terminate a valuable employee, such as Van Norstrand, for personal reasons"; (2) "not place their personal interests ahead of those of [Future Field], which includes an obligation not to steal the retained earnings or net profits of other members"; (3) "operate [Future Field] in accordance with the provisions of the Operating Agreement"; (4) "pay members and employees, including Van Norstrand, in a manner consistent with applicable law"; (5) "make distributions to members in proportion to the members' ownership interests and/or pursuant to the terms of the Operating Agreement and/or pursuant to the terms they agreed

51

relating to 65% of their billables"; (6) "not . . . make decisions regarding distributions solely for certain members' benefit to the detriment of others"; (7) "not . . . waste [Future Field's] value, such as but not limited to failing to protect and secure existing and expected contracts"; and (8) "not compete, carry on, or participate in, a similar business to the business of [Future Field], within any market regions that were established or contemplated by [Future Field]." (ECF No. 133 ¶ 182).

In Count IV of the Counterclaim, Mr. Van Norstrand further alleges that Counterclaim Defendants breached their fiduciary duty to Future Field and himself to "perform their management duties with due care and in the best interests of [Future Field]" by (1) "running [Future Field] for their personal benefit instead of for the benefit of all of the members"; (2) "terminating the employment of one of [Future Field's] most valuable employees, Van Norstrand, so that they would have more leverage against him in buyout negotiations"; (3) "threatening to liquidate [Future Field] if Van Norstrand did not agree to sell his shares at a discount"; and (4) "creating an entity within [Future Field's] market region that is a similar business as [Future Field] and diverting [Future Field] assets and resources into their new company, [PeriArchon], in wrongful competition with [Future Field]." (*Id.* ¶¶ 187–91).

Both parties move for summary judgment on Counts III and IV. Maryland law "recognizes an independent cause of action for breach of fiduciary duty." *Plank v. Cherneski*, 469 Md. 548, 559 (2020). To prevail on a claim for a breach of duty of loyalty[22] or a breach of fiduciary duty, a plaintiff must show "(1) the existence of a fiduciary relationship; (2) breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Id.* When such a claim is brought in a direct action, a plaintiff may seek only equitable relief. *Eastland Food Corp. v. Mekhaya*, 486 Md. 1, 36 (2023). In contrast, when such a claim is brought in a derivative action on behalf of a corporate entity, compensatory damages are also available. *See id.* at 37. To sustain a direct, rather than derivative, claim under Maryland law, an LLC member must show that he "has suffered 'an injury that is separate and distinct from any injury suffered either directly by the [LLC] or indirectly by the [member] because of the injury to the [LLC].'" *Id.* at 38 (quoting *Oliveira v. Sugarman*, 451 Md. 208, 240 (2017)); *see* Md. Code Ann., Corps. & Ass'ns § 4A-801(a) (noting that the right of an LLC member to bring a derivative

---

[22] The duty of loyalty is simply one type of fiduciary duty. *See Plank v. Cherneski*, 469 Md. 548, 601 (2020) ("[A] fiduciary relationship will have 'general responsibilities that are common to all settings[,]' such as a duty of loyalty[.]" (second alteration in original) (quoting Restatement (Third) of Torts: Liability for Economic Harm § 16 cmt. a)).

action on behalf of the LLC is coextensive with the right of a
stockholder to bring a derivative action on behalf of the
corporation).

To begin, this court previously determined that Counterclaim
Defendants "breached their duty to [Mr. Van Norstrand] by[] . . .
improperly withdrawing him in violation of the Operating
Agreement." (ECF No. 145, at 47). The court declined to grant
Mr. Van Norstrand summary judgment, however, because he had not
yet demonstrated that the breach had caused him any harm. (*Id.*).
Separately, the court *did* declare that Counterclaim Defendants had
improperly withdrawn Mr. Van Norstrand and that Mr. Van Norstrand
remained a member of Future Field. (*See id.* at 36-37). Now,
Counterclaim Defendants argue that *Eastland* bars Mr. Van
Norstrand's breach of fiduciary duty and duty of loyalty claims
because he seeks compensatory damages rather than equitable
relief, (ECF No. 238, at 89-91), a question not before the court
in its previous opinion. Counterclaim Defendants are correct that
Mr. Van Norstrand cannot recover compensatory damages for the
improper withdrawal breach.[23] *Eastland*, 486 Md. at 36. Even if

---

[23] The court's previous summary judgment opinion stated that
Mr. Van Norstrand "ha[d] not satisfied the element of harm because
the record d[id] not contain any evidence regarding the valuation
of [his] membership interest." (ECF No. 145, at 47). Mr. Van
Norstrand represents this holding as resting on "missing . . .
evidence of damages." (ECF No. 247, at 24). To clarify, harm and
damages are distinct in this context. Demonstrating the inadequacy

he could receive equitable relief for this breach, which he does not in fact appear to seek, he has already received the equitable relief to which he would be entitled—namely, rescission of the improper withdrawal.  Accordingly, Mr. Van Norstrand's motion for summary judgment on this breach will be denied as moot.  *See SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 389 (4th Cir. 2017) ("A claim is moot . . . when 'there is no effective relief available in federal court that [the plaintiff] has not already received.'" (alteration in original) (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002))).

The other alleged breaches in Counts III and IV similarly fail.  *Eastland* squarely forecloses Mr. Van Norstrand's direct claims for breach of duty of loyalty and fiduciary duty to the extent they directly seek damages.  In his prayer for relief for these claims in Counts III and IV, Mr. Van Norstrand seeks the following relief: "(1) . . . award[] compensatory damages to Van Norstrand in an amount in excess of $100,000 plus punitive damages, as well as statutory pre-judgment and post-judgment interest the specific amount to be determined at trial; (2) award Van Norstrand punitive damages; (3) award Van Norstrand's reasonable attorneys'

---

of Counterclaim Defendants' valuation of Mr. Van Norstrand's membership interest shows harm but does not entitle Mr. Van Norstrand to damages on his breach of fiduciary duty and duty of loyalty claims.  Instead, a showing of harm could support equitable relief.

fees, costs, and expenses . . .; and (4) provide such other and further relief as this Court may deem just and proper." (ECF No. 133, at 34, 36). In other words, Mr. Van Norstrand principally seeks compensatory damages, precisely what *Eastland* bars. (*See id.*); *Eastland*, 486 Md. at 36.

Whether Counts III and IV present any direct claims for equitable relief is a separate question. Mr. Van Norstrand, first addressing *Eastland* in his reply, acknowledges *Eastland*'s holding and then inexplicably asserts that "Count III of the Counterclaims principally seeks . . . equitable relief." (ECF No. 268, at 26). Although Mr. Van Norstrand raises the prospect of equitable relief in his motion for summary judgment, (ECF No. 247, at 24-25), and again in his reply, (ECF No. 268, at 23, 26-27), he cannot plausibly contend that equitable relief was his principal aim in Counts III and IV. Instead, the only possible source for these requests is his general prayer for relief at the end of each count, in which he asks for "such other and further relief as this Court may deem just and proper." (ECF No. 133, at 34, 36). Such general prayers for relief *can* support later equitable remedies, even when not specifically pleaded at the outset. *See Nirala v. Dhali*, No. 18-cv-03330-PX, 2020 WL 1929435, at *6 (D.Md. Apr. 21, 2020) (citing *Boucher v. Shomber*, 65 Md.App. 470, 478 (1985); *Terry v.*

*Terry*, 50 Md.App. 53, 60 (1981); *Falise v. Falise*, 63 Md.App. 574, 582 (1985)).

Mr. Van Norstrand, however, fails to propose an equitable remedy for which he has a direct claim.[24]  The equitable remedies Mr. Van Norstrand does propose in his papers all relate to injuries not particular to him.  In his motion for summary judgment, he requests disgorgement and a constructive trust on the profits of the Lockheed Martin contract he alleges Counterclaim Defendants transferred from Future Field to PeriArchon, along with an accounting of Future Field and PeriArchon, and a permanent injunction against diversion and dissipation of Future Field assets.  (ECF No. 247, at 24-25).  He makes similar requests in his reply.  (ECF No. 268, at 23, 25-26).  These requests relate to duties owed to Mr. Van Norstrand *and Future Field* that Counterclaim Defendants purportedly breached.  Mr. Van Norstrand does not show

---

[24] The *Eastland* court reserved the question of whether a plaintiff seeking equitable relief for injury to the corporate entity must seek such relief derivatively.  *See Eastland*, 486 Md. at 37 n.18.  That said, the nature of the inquiry is traditionally focused on the injury rather than the type of remedy sought.  *Id.* at 38; *see also* 3 James D. Cox & Thomas Lee Hazen, Treatise on the Law of Corporations § 15:3 (4th ed. 2025) (collecting numerous cases in which derivative suits seek equitable relief).  Thus, a holding that a claim for equitable relief for corporate injury need not be brought derivatively would mark a departure from traditional practice.  Any decision on that matter is within the Maryland Supreme Court's exclusive purview.  Accordingly, the court will proceed on the assumption that all equitable relief Mr. Van Norstrand seeks must redress either a particular injury to him in a direct claim or a corporate injury in a derivative claim.

how any transfer or diversion of assets from Future Field to PeriArchon, or any failure to secure contracts for Future Field, causes Mr. Van Norstrand a "separate and distinct" injury from that suffered by Future Field. *Eastland*, 486 Md. at 38 (quoting *Oliveira*, 451 Md. at 240). Accordingly, he cannot bring these claims for equitable relief in a direct action; rather, they may only be asserted derivatively.

Finally, the court must consider whether Mr. Van Norstrand has asserted any claims in Counts III and IV derivatively. In a derivative suit, "[t]he corporation is the real party in interest, and the shareholder is only a nominal plaintiff. The substantive claim belongs to the corporation." *Werbowsky v. Collomb*, 362 Md. 581, 599-600 (2001) (quoting 13 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 5941.10 (1995)). Derivative claims in federal court require that the plaintiff satisfy numerous pleading requirements and procedural hurdles. *See* Fed.R.Civ.P. 23.1. The only indication in the Counterclaim that Mr. Van Norstrand is bringing any claim derivatively is a demand futility paragraph in Count III: "Because Counterclaim Defendants Reese, Brent and Tunson have complete control over [Future Field] and because Van Norstrand could face personal liability for the above-referenced breaches of duty, any corporate demand should be excused as futile." (ECF No. 133 ¶ 185). Mr.

Van Norstrand does not develop the derivative allegations any further, apart from a passing mention in his reply that he "pleads [compensatory damages] derivatively in the alternative." (ECF No. 268, at 26). Mr. Van Norstrand fails to meet the demanding requirements of Rule 23.1 to bring a derivative claim. The only requirement he expressly attempts to satisfy, demand (or futility thereof), still falls short of Rule 23.1's requirement that demand futility be "state[d] *with particularity*." Fed.R.Civ.P. 23.1(b)(3) (emphasis added). Mr. Van Norstrand's single conclusory paragraph is insufficient. By failing to satisfy Rule 23.1 at any stage in this proceeding, Mr. Van Norstrand cannot assert any claim in Count III or IV derivatively.

In short, Counterclaim Defendants are entitled to summary judgment on Counts III and IV because, as a matter of law, Mr. Van Norstrand has not established any direct claim against them for equitable relief, nor has he met the requirements of Rule 23.1 to assert any claim against them derivatively.

### 3.    Counts V, VI, VII, and VIII: MWPCL, Accounting, Wrongful Termination, and Indemnification

As will be discussed, Counts V, VI, VII, and VIII are all properly asserted, if at all, against Future Field, not Counterclaim Defendants. Nevertheless, both Mr. Van Norstrand and Counterclaim Defendants move for summary judgment on these four counts.

59

In Count V, Mr. Van Norstrand alleges that "[Future Field] failed to make all payments due to [him]" under the MWPCL. (ECF No. 133 ¶ 197). The only employer Mr. Van Norstrand names in Count V is Future Field. (*Id.* ¶ 195 ("[Future Field] was an employer pursuant to § 3-501 of the MWPCL.)).

The party against whom a count is asserted must be named in some form in the count. *Brummell v. Talbot Cnty. Bd. of Educ.*, No. 22-cv-1601-RDB, 2023 WL 7282896, at *7 (D.Md. Nov. 3, 2023) (holding that a count is not "in effect" against a party if that party is not named in the count); *Tanksley v. Rose*, No. 19-cv-229, 2020 WL 89692, at *4 n.6 (E.D.Va. Jan. 7, 2020) (declining to construe a count as asserted against a party when that party was not named in the count). Counterclaim Defendants are not named or mentioned in any capacity in Count V, only Future Field is. (*See* ECF No. 133, at 36–37). Mr. Van Norstrand only attempts to assert Count V against Counterclaim Defendants in his papers. As is becoming a familiar refrain in this case, however, "parties cannot amend their complaints through briefing." *S. Walk at Broadlands*, 713 F.3d at 184. Mr. Van Norstrand appears to recognize the deficiency in his claim, stating in his reply that the court "can conform the pleadings or allow amendment." (ECF No. 268, at 31). Mr. Van Norstrand has made no proper motion to that effect, so the court will not consider his request. *See Cozzarelli v. Inspire*

*Pharms. Inc.*, 549 F.3d 618, 630–31 (4ᵗʰ Cir. 2008).[25] Accordingly, the court will not construe Mr. Van Norstrand's MWPCL claim in Count V as asserted against Counterclaim Defendants, in addition to Future Field.

Even if Count V were properly asserted against Counterclaim Defendants, however, Mr. Van Norstrand fails to show that they were his "employer" under the MWPCL.  As Mr. Van Norstrand notes in passing in his motion for summary judgment, Maryland courts apply the "economic reality" test to determine whether "[a] corporate officer or person with an ownership interest in an employing company is considered an 'employer'" under the MWPCL. (ECF No. 247, at 25-26 (quoting *Swain v. Paramount Glob. Inc.*, No. 24-cv-458-SAG, 2024 WL 3555114, at *5 (D.Md. July 25, 2024))). The economic reality test considers four factors: "(1) whether the individual had the power to hire and fire employees; (2) whether the individual supervised and controlled employee work schedules or conditions of employment; (3) whether the individual determined the rate and method of pay; and (4) whether the individual maintained employment records of the employee." *Swain*, 2024 WL

---

[25] The court noted in January 2025 its "skepticism . . . as to whether it's appropriate at this late date to seek to amend." (ECF No. 209, at 8).  Nearly a year later, amendment is only less appropriate, particularly when not sought properly.  Amendments to conform to evidence during or after trial are proper when an issue is tried by consent.  Fed.R.Civ.P. 15(b)(2).  That is not the situation here.

3555114, at *5 (citing *Campusano v. Lusitano Constr. LLC*, 208 Md.App. 29, 39-40 (2012)). Mr. Van Norstrand applies these factors to the facts of his employment only in his reply, (ECF No. 268, at 29-30), which in itself is troubling because Counterclaim Defendants had no meaningful opportunity to respond to his contentions. Accordingly, the court will look only to Mr. Van Norstrand's motion for summary judgment. There, Mr. Van Norstrand appears to discuss only the third factor regarding rate and method of pay. He fails to point to any evidence in the record that Counterclaim Defendants controlled rate and method of pay. The OA does not contain a method of determining pay, and Mr. Van Norstrand acknowledged in his deposition there is no "formal signed document" regarding compensation. (ECF No. 252-2, at 136). In his deposition, he asserted that there were "Excel spreadsheets[,] . . . e-mails, [and] Team's messages" showing the agreement, but blamed his lack of proof on Counterclaim Defendants' failure to produce them during discovery. (*Id.*). Mr. Van Norstrand and his counsel had the opportunity in discovery to compel the production of any withheld documents necessary to his case; they cannot now escape their decision not to do so. Because Mr. Van Norstrand bears the burden of proof on this issue at trial and fails to point to any evidence supporting the one factor of the economic reality test he discusses, Counterclaim Defendants would be entitled to

summary judgment had this claim been asserted against them. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Thus, to avoid any question arising later, summary judgment will be granted in favor of Counterclaim Defendants.

Count VI, in which Mr. Van Norstrand seeks an accounting of Future Field transactions and member distributions, suffers from the same fundamental deficiency as Count V: It is not asserted against Counterclaim Defendants. In fact, Mr. Van Norstrand makes the additional clarification, bolded and underlined, that Count VI is asserted "[a]gainst Counterclaim Defendant [Future Field] and Third Party Defendant [PeriArchon]." For the same reason as Count V, Counterclaim Defendants will be granted summary judgment on Count VI.

Even if it were properly requested from Counterclaim Defendants, an accounting is a remedy, not a cause of action, nor is it a remedy that Maryland courts have generally granted in recent years because modern discovery has supplanted the role of an accounting. *See Alts. Unlimited*, 155 Md.App. at 507–11.[26] Moreover, there is little evidence that Mr. Van Norstrand requires

---

[26] In his reply, Mr. Van Norstrand cites *Alternatives Unlimited* for the proposition that "[e]quitable accounting remains available in Maryland." (ECF No. 268, at 32). That is concerning. In *Alternatives Unlimited*, the court denied the accounting request, explaining that "an equitable accounting has been rendered obsolete by the modern rules of discovery." 155 Md.App. at 511.

this remedy.  Mr. Van Norstrand and his counsel frequently complain that Counterclaim Defendants have not produced numerous documents during discovery.  The docket is devoid of a motion to compel the production of any of these allegedly withheld documents.  The time has come and gone to do so.  In his reply, Mr. Van Norstrand unjustifiably refocuses his accounting request on what he alleges was an improper wind-up of Future Field.  The dissolution and wind-up happened during the pendency of this litigation and while additional discovery remained possible.  As the wind-up was proceeding, however, Mr. Van Norstrand's counsel noted that the "dissolution[] . . . sounds like [it is] proceeding fairly well," and even though Mr. Van Norstrand was missing "some very important tax information," he did not "need any more discovery."  (ECF No. 209, at 13).  Mr. Van Norstrand's belated request for an accounting from Counterclaim Defendants is denied.

Count VII, a claim of wrongful termination, likewise is asserted against only Future Field.  Mr. Van Norstrand states in his Counterclaim that "[Future Field] terminated Van Norstrand" wrongfully and requests that the court "enter a judgment against [Future Field]."  (ECF No. 133, at 40).  As with the previous two counts, the court will not construe Count VII as asserted against Counterclaim Defendants.

Mr. Van Norstrand would not be entitled to summary judgment even if Count VII were properly pleaded against Counterclaim Defendants. Wrongful termination is a narrow exception to the rule of at-will employment; an employee must show: "(1) that the employee was discharged; (2) that the basis of the discharge violated some clear mandate of public policy; and (3) that there is a nexus between the employee's conduct and the employer's decision to fire the employee." *Symeonidis v. Paxton Capital Grp., Inc.*, 220 F.Supp.2d 478, 483 (D.Md. 2002). Mr. Van Norstrand's one possible public policy argument is that Counterclaim Defendants terminated him in retaliation for Mr. Van Norstrand hiring counsel. Such an argument still fails.[27] As Counterclaim Defendants observe, the then-Maryland Court of Appeals rejected the argument that termination because the employee consulted counsel violates a clear mandate of public policy. *See Porterfield v. Mascari II, Inc.*, 374 Md. 402, 434 (2003). Consequently, Mr. Van Norstrand cannot establish a required element of his claim, entitling Counterclaim Defendants to summary judgment, even if this claim had been asserted against them.

---

[27] In addition, Mr. Van Norstrand makes several new arguments in his reply. These arguments, as Counterclaim Defendants point out, are nonsensical for a variety of reasons and the court will not entertain them.

Finally, Mr. Van Norstrand pursues a claim for indemnification in Count VIII, but an indemnification claim is proper only against Future Field, not Counterclaim Defendants. Section 59 of the Future Field OA provides that "[a]ll Members will be indemnified and held harmless by [Future Field] from and against any and all claims of any nature, whatsoever, arising out of a Member's participation in [Future Field] affairs." (ECF No. 252-3, at 183). It was unclear whether Mr. Van Norstrand asserted this claim against Counterclaim Defendants, but his reply puts any confusion to rest. There, he states: "The [Counterclaim Defendants] concede OA § 59 'provides for indemnification only by [Future Field] the Company' and not against individual members—precisely how Van Norstrand pleads Count VIII." (ECF No. 268, at 39). Although Mr. Van Norstrand's characterization of Counterclaim Defendants' argument as a concession makes little sense, his clarification that this Count is not asserted against Counterclaim Defendants is enough. Again, to avoid any future question, the court will grant Counterclaim Defendants summary judgment on Count VIII.

### 4. Count IX: Gross Negligence

In Count IX, Mr. Van Norstrand asserts a claim for gross negligence against Counterclaim Defendants. Both parties have moved for summary judgment. Gross negligence is "an intentional

66

failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Anne Arundel County v. Reeves*, 474 Md. 46, 73 (2021) (quoting *Barbre v. Pope*, 402 Md. 157, 187 (2007)).  In his Counterclaim, Mr. Van Norstrand argues that Counterclaim Defendants breached their "fiduciary duties . . . intentionally and/or with reckless disregard for [Future Field] and its members, when they negligently, or knowingly and intentionally" did the following: (1) "caused an investigation of [Future Field] regarding its website domain"; (2) "lost funding of one or more existing contracts"; (3) "lost key personnel"; (4) "failed to secure contract renewals and/or additional contracts"; (5) "basically [ran] [Future Field] into the ground . . . in less than five months"; and (6) "caus[ed] Van Norstrand to be removed from one contract and investigated regarding another [contract]," (ECF No. 133 ¶¶ 229–30), presumably as a result of reporting Mr. Van Norstrand's alleged resume fraud to Lockheed Martin and the Defense Counterintelligence and Security Agency, (*Id.* ¶¶ 264, 273).

Counterclaim Defendants correctly argue that Mr. Van Norstrand lacks standing to pursue gross negligence claims on the first five bases because those claims belong to Future Field only.

(ECF No. 238, at 82).  As discussed extensively above in relation to Counts III and IV, an LLC member must show that he "has suffered 'an injury that is separate and distinct from any injury suffered either directly by the [LLC] or indirectly by the [member] because of the injury to the [LLC].'"  *Eastland*, 486 Md. at 38 (quoting *Oliveira*, 451 Md. at 240).  Here, Mr. Van Norstrand alleges an investigation into Future Field, lost funding of Future Field, lost key personnel of Future Field, failure to secure contracts of Future Field, and running Future Field into the ground.  These are all potential injuries *of Future Field*, not injuries suffered by Mr. Van Norstrand that are "separate and distinct" from those of Future Field, and there is no indication that these are derivative claims.  Mr. Van Norstrand does not address Counterclaim Defendants' standing argument as to gross negligence in his motion for summary judgment or reply.  Accordingly, this legal deficiency is fatal to the first five bases.

As to the sixth basis, Mr. Van Norstrand's position that he was "removed from one contract and investigated regarding another" could afford him standing, but he fails to discuss this alleged breach in his motion for summary judgment, much less establish that Counterclaim Defendants violated a duty in reporting Mr. Van Norstrand in the first place.  Counterclaim Defendants argue in their motion for summary judgment that "[t]here is no duty owed by

Brent, Reese, or Tunson to Van Norstrand that would override their obligations under federal law and the rules of government agencies for whom they worked to report matters relating to control of [Future Field's] website domain or discrepancies in Van Norstrand's work history."   (ECF No. 238, at 85).   Mr. Van Norstrand does not respond to this argument in his motion for summary judgment, nor does he even discuss his removal from contracts or investigations.   Counterclaim Defendants did have a duty to report to the federal government whenever they had "credible evidence that a principal, employee, agent, or subcontractor" of Future Field had committed fraud.[28]   48 C.F.R. § 52.203-13(b)(3)(i).   In recognition of this duty, and Mr. Van Norstrand's failure to identify a superseding one, he has failed to provide evidence of necessary elements of the tort.

Mr. Van Norstrand raises several other bases on which to recover for gross negligence in his motion for summary judgment and reply, but they are meritless.   These bases were not identified in Mr. Van Norstrand's Counterclaim, in part because some apparently arose after its filing.   Mr. Van Norstrand's efforts to

---

[28] Although Counterclaim Defendants have not identified a duty to disclose such information to the prime contractor in addition to the government, such a duty would seem to be necessarily implied to ensure that the prime contractor can satisfy its own reporting obligations to the government.

amend and supplement his pleadings through briefing are fruitless. *Cf. S. Walk at Broadlands*, 713 F.3d at 184.

Accordingly, Counterclaim Defendants are entitled to summary judgment on Count IX.

### 5.    **Counts X and XI: SCA and CFAA**

In Count X, Mr. Van Norstrand alleges that Counterclaim Defendants violated the SCA, 18 U.S.C. §§ 2701–2713, by "accessing, reading, copying, and forwarding to other individuals stored electronic communications from Van Norstrand's personal Google account" without authorization. (ECF No. 133 ¶ 234).  In Count XI, Mr. Van Norstrand alleges that Counterclaim Defendants violated the CFAA, 18 U.S.C. § 1030, because they "knowingly and intentionally accessed Van Norstrand's personal Google account without authorization and/or exceeding their prior authorization by taking, among other things, control of 10 plus years' worth of emails, documents, videos, pictures and related information, including but not limited to privilege[d] and confidential communications with attorneys, his spouse and medical providers." (ECF No. 133 ¶ 243).  Both parties now move for summary judgment on the two counts.[29]

---

[29] Once again, Mr. Van Norstrand raises a new allegation in his motion for summary judgment on the CFAA count related to conduct occurring a year and a half after he filed the Counterclaim, without seeking leave to supplement his Counterclaim.  (ECF No. 247, at 35).  In his reply, he raises

70

Mr. Van Norstrand's SCA and CFAA claims share similar elements. The SCA prohibits "(1) intentionally access[ing] without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceed[ing] an authorization to access that facility; and thereby obtain[ing] . . . a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a). The SCA does not define "facility," and courts dispute its precise scope, but it surely covers Google email servers like the one Mr. Van Norstrand and Future Field used. *See Lazette v. Kulmatycki*, 949 F.Supp.2d 748, 755–56 (N.D.Ohio 2013). The CFAA, in relevant part, renders liable anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer," *id.* § 1030(a)(2)(C), or who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value," *id.* § 1030(a)(4). The term "computer" covers "an electronic . . . device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or

---

additional new allegations on the SCA and CFAA counts. (*See* ECF No. 268, at 43–48). For the reasons previously stated, the court will not consider these new claims.

operating in conjunction with such device." *Id.* § 1030(e)(1). The CFAA does not cover individuals who "have improper motives for obtaining information that is otherwise available to them." *Van Buren v. United States*, 593 U.S. 374, 378 (2021).  Both statutes require that an individual's access to the server or computer be unauthorized and that the plaintiff suffer some damage or loss.

Mr. Van Norstrand's SCA and CFAA claims both fail because it is now undisputed that Counterclaim Defendants' access was not unauthorized or in excess of authorization.  The court denied Mr. Van Norstrand's motion for summary judgment on his SCA claim in 2024 because, at that time, there existed a genuine dispute of material fact as to whether Counterclaim Defendants accessed the Google Workspace Account, or a backup of the Google Workspace Account in Future Field's Microsoft365 Account.  (ECF No. 145, at 61-62).  The court pointed to Mr. Van Norstrand's declaration that he "did not transfer [his] archived Google email to Microsoft365" and "revoked any permission to access the Google [Account] and [his] specific account information"; both statements were disputed by Counterclaim Defendants.  (*Id.* at 62 (alterations in original) (quoting ECF No. 42-2 ¶¶ 14-15)).  In light of his May 2025 deposition, Mr. Van Norstrand now does not appear to dispute that he *did* transfer his Google Workspace Account to Future Field's Microsoft365 Account; nor does he now rely on any revocation of

permission to access the Google Workspace Account, to which he admitted he gave Counterclaim Defendants unfettered access. Accordingly, Counterclaim Defendants appear to have had various authorized means of accessing the information in the Google Workspace Account.

In a colloquy with Counterclaim Defendants' counsel, Mr. Walter, during his May 2025 deposition, Mr. Van Norstrand admitted that he transferred the Google Workspace Account to Future Field's Microsoft365 Account:

> MR. WALTER: And also, in June of 2021, you moved all of the e-mail and text messages, in the Google Workspace Account, to the company's Office 365 account, correct?
>
> MR. VAN NORSTRAND: Are you talking about Google Chat messages?
>
> MR. WALTER: I'm talking about—well, let's break it down.  Did you move all the e-mails?
>
> MR. VAN NORSTRAND: E-mails, yes.
>
> . . .
>
> MR. WALTER: Is it fair to say you don't know exactly what was exported or you do know?
>
> MR. VAN NORSTRAND: From what has been provided in discovery, there are e-mails that were provided between my wife and myself, myself and my doctors, myself and previous lawyers, that well-preceded the formation of Future Field Solutions and should have never been included and, if they were included, there's an expectation of privacy that was attached to them.

> MR. WALTER: And when you say included, we're
> talking about the move from Google Workspace
> to Office 365 account?
>
> MR. VAN NORSTRAND: Correct.
>
> MR. WALTER: And you don't dispute that those
> e-mails were in fact moved to the company's
> Office 365 account; you simply dispute whether
> that was your intent?
>
> MR. HARTMAN: Objection to the form of the
> question.  You can answer.
>
> MR. VAN NORSTRAND: I stated that it was not my
> intent to move any of my private, privileged
> information, and it looks to be, given that it
> was released in discovery inappropriately,
> that it happened.

(ECF No. 252-2, at 279–81).  In other words, Mr. Van Norstrand

does not dispute that the emails associated with the Google

Workspace Account that were transferred to Future Field's

Microsoft365 Account included those containing his personal

information.  Mr. Van Norstrand also does not dispute that the

Microsoft365 Account belongs to Future Field.  (*Id.* at 319.).

Lastly, it does not appear that Mr. Van Norstrand disputes that

Counterclaim Defendants were authorized to access Future Field's

Microsoft365 Account.   Because Counterclaim Defendants were

authorized to access Future Field's Microsoft365 account, which

contained Mr. Van Norstrand's emails that were personal in nature,

they cannot be liable under the SCA or CFAA.  Mr. Van Norstrand's

inconsistencies are insufficient to sustain a genuine dispute of

material fact.  *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." (citing *Radobenko v. Automated Equip. Co.*, 520 F.2d 540, 544 (9th Cir. 1975))).

Furthermore, Counterclaim Defendants point to Mr. Van Norstrand's admission in his May 2025 deposition that he granted Counterclaim Defendants full administrative rights in the Google Workspace Account, which included his personal data.  (ECF No. 252-2, at 311-12).  In response, Mr. Van Norstrand declines to rely on any revocation of that permission.  (*See* ECF No. 247, at 34-35).  Therefore, even if Counterclaim Defendants accessed Mr. Van Norstrand's personal data via the Google Workspace Account rather than the Microsoft365 Account, it is undisputed that Counterclaim Defendants were authorized to do so.

Mr. Van Norstrand's SCA and CFAA claims also fail for the independent reason that he does not adduce any evidence regarding the damage he suffered, as Counterclaim Defendants correctly note.  (ECF No. 238, at 36-37, 39-40).[30]  In his SCA claim, Mr. Van

---

[30] Also unavailing are Mr. Van Norstrand's requests for injunctive relief under the SCA and CFAA to return his access to the Google Workspace Account and delete their copies of his personal data.  Equitable relief requires proof of irreparable injury for which there are inadequate remedies at law.  *Monsanto*

Norstrand requests "an amount in excess of $100,000 in compensatory and statutory and/or punitive damages." (ECF No. 133, at 44). The SCA permits the recovery of actual damages, statutory damages of $1,000 per violation, and punitive damages. 18 U.S.C. § 2707(c). The Fourth Circuit has held that "proof of actual damages [is] a prerequisite to recovery of statutory damages," though not to recovery of punitive damages. *Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199, 206, 209 (4th Cir. 2009). Mr. Van Norstrand makes no effort to prove actual damages on his SCA claim, only once gesturing at the requirement in his reply, where he states that he suffered "remediation/forensic costs and account-recovery expense[s]." (ECF No. 268, at 45). In his May 2025 deposition, when asked about his SCA damages, Mr. Van Norstrand stated: "I don't believe there's a bill, that I can hand you, that I spent a hundred thousand dollars to resolve their choices." (ECF No. 252-2, at 275). Mr. Van Norstrand also failed to include any computation of his SCA damages in response to Counterclaim

---

*Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Because Mr. Van Norstrand has retained access to the personal data contained within the Google Workspace Account, *see infra* section IV.C.6, he would need to establish that his lack of access to the Google Workspace Account itself, apart from the data within, has caused him irreparable injury for which there are inadequate remedies at law. No explanation to that effect appears in his papers. Likewise, he does not explain why Counterclaim Defendants' retention of copies of personal data that he exposed to them in the first instance causes him irreparable injury.

Defendants' interrogatories on the matter. (*See* ECF No. 252-3, at 71-72). Therefore, Mr. Van Norstrand does not raise a genuine dispute regarding actual damages, which bars him from recovery on his SCA claim for actual and statutory damages. And absent an underlying SCA violation, punitive damages are likewise unavailable.

In his CFAA claim, Mr. Van Norstrand requests "an amount in excess of $100,000 in compensatory and statutory and/or punitive damages." (ECF No. 133, at 45). "A CFAA plaintiff must 'show that there are triable issues as to (i) whether a CFAA-qualifying loss aggregating at least $5,000 occurred, and (ii) whether this loss was caused by a CFAA violation.'" *Ground Zero Museum Workshop v. Wilson*, 813 F.Supp.2d 678, 693 (D.Md. 2011) (quoting *Glob. Pol'y Partners, LLC v. Yessin*, 686 F.Supp.2d 642, 646 (E.D.Va. 2010)). At his May 2025 deposition, when asked about his CFAA damages, Mr. Van Norstrand stated: "My compensatory and statutory and punitive damages come out of the hundred thousand dollars. I am not aware of a way to split that amount." (ECF No. 252-2, at 272). Mr. Van Norstrand also failed to produce a computation of his CFAA damages in his response to Counterclaim Defendants' interrogatories on the matter. (*See* ECF No. 252-3, at 71-72). As to Mr. Van Norstrand's other damages requests, the CFAA does not permit recovery of statutory or punitive damages. *See* 18 U.S.C. 1030(g); *In re Apple*

*Inc. Device Performance Litig.*, 50 F.4th 769, 781 (9th Cir. 2022) (no CFAA statutory damages); *Fraser v. Mint Mobile, LLC*, No. 22-cv-138, 2022 WL 1240864, at *9 (N.D.Cal. Apr. 27, 2022) (no CFAA punitive damages). Thus, Mr. Van Norstrand does not raise a triable issue as to the damages he suffered, foreclosing his recovery under the CFAA.

In the absence of any genuine dispute of material fact, Counterclaim Defendants are entitled to summary judgment on Counts X and XI.

### 6. Count XII: Conversion

In Count XII, Mr. Van Norstrand alleges that "[Counterclaim Defendants] unlawfully and tortiously converted [Mr. Van] Norstrand's personal property, specifically ten (10) plus years' worth of data contained in his Google account." (ECF No. 133 ¶ 248). Both parties now move for summary judgment on this count.

A claim for conversion requires an "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *United States v. Arora*, 860 F.Supp. 1091, 1097 (D.Md. 1994) (quoting Restatement (Second) of Torts § 222A(1)), *aff'd*, 56 F.3d 62 (4th Cir. 1995). In other words, "[c]onversion requires not merely temporary interference with property rights, but the

exercise of unauthorized dominion and control *to the complete exclusion* of the rightful possessor." *Orteck Int'l, Inc. v. TransPacific Tire & Wheel, Inc.*, No. 05-cv-2882-DKC, 2006 WL 2572474, at *22 (D.Md. Sep. 5, 2006) (emphasis added) (quoting *Yost v. Early*, 87 Md.App. 364, 388 (1991)). The tort of conversion traditionally applies to tangible property but has been extended to cover certain intangible property rights that are merged into a document, such as a stock certificate. *Allied Inv. Corp. v. Jasen*, 354 Md. 547, at 560-63 (1999). As this court previously explained, "[w]hether the tort applies to emails is uncertain." (ECF No. 145, at 64-65 (collecting cases)).

Mr. Van Norstrand previously moved for summary judgment on this count. There, he argued that "[Counterclaim Defendants] converted his personal property because they changed the login credentials required to access his erik@futurefieldsolutions.com email account [(Google Workspace Account)]." (*Id.* at 65 (citing ECF No. 109-1, at 24)). The parties disputed whether Mr. Van Norstrand owned the contents of the email account in question, so the court denied summary judgment. (*Id.* at 65-66).

Now, Counterclaim Defendants argue that (regardless of the ownership of the email account) Mr. Van Norstrand cannot recover for conversion because Maryland law does not recognize the application of conversion to emails, Mr. Van Norstrand had

continuous access to his personal data, and he cannot show damages for the alleged conversion. (ECF No. 238, at 42–49). Mr. Van Norstrand responds with a single sentence: "By blocking Van Norstrand's access to accounts, seizing files and photos, and exploiting that data for their benefit, [Counterclaim Defendants] committed conversion." (ECF No. 247, at 35). Mr. Van Norstrand's conclusory statement is insufficient to overcome the clear record evidence that he has retained access to the contents of the Google Workspace Account, dooming his conversion claim.[31]

The tort of conversion requires that the exercise of dominion or control be to the complete exclusion of the property owner, and Mr. Van Norstrand fails to supply any evidence that Counterclaim Defendants exercised any dominion or control over his personal data to his complete exclusion. Counterclaim Defendants identify four locations that contain Mr. Van Norstrand's personal data and to which he has had access; Mr. Van Norstrand fails to address these assertions of fact in his motion for summary judgment and opposition.

First, Counterclaim Defendants demonstrate that Mr. Van Norstrand initiated a "Google Take-Out" of the Google Workspace

---

[31] The court will assume that emails are the type of intangible property that can support a conversion claim, because even with that assumption, Mr. Van Norstrand's claim fails.

data, and that this dataset is identical to that uploaded to or synchronized with Mr. Van Norstrand's Personal Outlook Account.[32] Google Take-Out is Google's method of allowing users to download Google data in bulk. *See How to Download Your Google Data*, https://support.google.com/accounts/answer/3024190?hl=en [https://perma.cc/AWV9-BX36]. At his deposition, Mr. Van Norstrand asserted that he could not recall whether he initiated a Google Take-Out, but that he would not dispute that he did if the metadata showed as much:

> MR. WALTER: Do you recall that, on February the 28th of 2022, you made a complete backup of Erik@FutureFieldSolutions.com account, from your Google Workspace?
>
> MR. VAN NORSTRAND: I may have. I don't recall doing so, but I may have.
>
> MR. WALTER: Okay. Do you remember asking Google for what they call a takeout backup, of your e-mails and texts?
>
> MR. VAN NORSTRAND: I do not recall that, but I could have.
>
> MR. WALTER: And if documents show that you did make that request, would you dispute those documents?
>
> MR. HARTMAN: Objection to the form of the question.

---

[32] Out of respect for Mr. Van Norstrand's privacy, the court will not include his personal email addresses in the opinion and instead will refer to them generically.

> MR. VAN NORSTRAND: I don't know if I've seen
> such documents.  If they existed, I would not
> dispute them, if it was tied to me.

(ECF No. 252-2, at 298-99).  Counterclaim Defendants have shown that Mr. Van Norstrand initiated the Google Take-Out.  Their expert, Dr. Eric Cole, states in a July 3, 2025, declaration that the Google Take-Out activity logs show that the February 28, 2022, Google Take-Out was initiated by an IP address associated with Mr. Van Norstrand, and the resulting files were downloaded to the same IP address.  (ECF Nos. 252-3, at 120-21 (expert declaration); 255-3, at 85-90 (Google Take-Out logs showing Take-Out initiated on February 28, 2022, from Mr. Van Norstrand's IP address, followed by downloads of the Take-Out data)).  Mr. Van Norstrand does not contest that this IP address belongs to him.[33]  Thus, it is now undisputed that Mr. Van Norstrand conducted the Google Take-Out of the Google Workspace Account and downloaded the resulting files to his company laptop.

Mr. Reese's declaration states that after Mr. Van Norstrand downloaded the Google Take-Out files, he synchronized them with

---

[33] Mr. Van Norstrand admits that he conducted a bulk download of data in 2022 to another email account of his.  (ECF No. 252-2, at 307-08).  That bulk download appears to have occurred on April 4, 2022.  (*See* ECF Nos. 255-2, at 846; 256-1, at 2-3).  The bulk download was conducted from the same IP address as the February 28, 2022, Google Take-Out.

his Personal Outlook Account.  (ECF No. 252-3, at 8).[34]  Mr. Reese
further states that the data in the Google Take-Out Mr. Van
Norstrand downloaded is identical to the data uploaded to the
Personal Outlook Account.  He determined that the data is identical
through "hashing."  (ECF Nos. 238, at 45-46; 252-3, at 12).  As
Judge Grimm explained:

> A hash value is [a] unique numerical
> identifier that can be assigned to a file, a
> group of files, or a portion of a file, based
> on a standard mathematical algorithm applied
> to the characteristics of the data set.  The
> most commonly used algorithms, known as MD5
> and SHA, will generate numerical values so
> distinctive that the chance that any two data
> sets will have the same hash value, no matter
> how similar they appear, is less than one in
> one billion.

*Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 546-47 (D.Md.
2007) (citation modified).  Mr. Reese "compared the hash values of
the Google Take-Out Files Van Norstrand downloaded to the [company]
laptop on March 1, 2022, with the same files synced and/or uploaded
to Van Norstrand's Personal Microsoft Outlook 365 Account."  (ECF
No. 252-3, at 12).  "The result shows that every photo that was in

---

[34] Mr. Reese points to Documents 58 and 59 in the Joint Record
Extract as further support for this fact.  (ECF No. 252-3, at 8-
9).  Document 58 appears to be missing.  (*See* ECF No. 255-3, at
93-94).  Document 59 offers some support because it indicates that
various files were synchronized from an Outlook account to the
company laptop, though the metadata provided does not specify whose
Outlook account.  (*See id.* at 96-97).  The other information Mr.
Reese provides, however, makes apparent that the synchronization
occurred.

the Google Workspace Account Take-Out File as of February 28, 2022, was uploaded to Van Norstrand's personal Microsoft 365 Account." (*Id.*).  As a demonstration, he pinpoints a 2012 photo in the Personal Outlook Account that was uploaded from the Google Workspace Account.  (ECF Nos. 252-3, at 13; 238, at 46; 238-1 ¶¶ 65–68).  The hash values of the 2012 photo in the Personal Outlook Account and the Google Workspace Account are identical.  (ECF No. 252-3, at 13; 238, at 46; 238-1 ¶ 68).  Thus, it is evident that the synchronization occurred between the company laptop, where the Google Take-Out files were downloaded, and the Personal Outlook Account, and that Mr. Van Norstrand had access to all that data through his Personal Outlook Account.

Additionally, Mr. Van Norstrand synchronized the Google Workspace Account, which contained his personal data, to his Personal G-Mail Account (a separate account from the Personal Outlook Account):

> MR. WALTER: Did you share the data that you took from Google, to your—directly to [the Personal G-mail Account]?
>
> MR. VAN NORSTRAND: I believe I synchronized, at one point, those two accounts, yes.
>
> MR. WALTER: So the Google Workspace Account and [the Personal G-mail Account]?
>
> MR. VAN NORSTRAND: Yes, I think I synchronized the photos specifically to try to backup what I could.

MR. WALTER: When was that done?

MR. VAN NORSTRAND: I don't recall.

MR. WALTER: What year?

MR. VAN NORSTRAND: It would have been after 2022, somewhere in that timeframe.  I do know I didn't recover everything.  I copied over what I could. . . .

. . .

MR. WALTER: How do you know that you weren't able to copy over all of them?

MR. VAN NORSTRAND: Because it only goes back so many years and I've had that account for ten years.

(ECF No. 252-2, at 307-08).  Counterclaim Defendants demonstrate that the 2012 personal photo found in the Personal Outlook Account is also located in the Personal G-Mail Account, and its hash is identical to the photo in the Google Workspace Account.  (ECF Nos. 252-3, at 13; 256-1, at 11).  Thus, it is evident that the synchronization with his Personal G-mail Account transferred personal data from at least as early as 2012.  Mr. Van Norstrand has identified no personal data lost between late 2010 or early 2011 when he opened the Google Workspace Account, (ECF No. 133 ¶ 39), and the date of the 2012 photo.

Moreover, Mr. Van Norstrand had access to his company laptop, which contained the downloaded Google Take-Out files, until May 2023.  (ECF No. 238-1 ¶ 50).  Mr. Van Norstrand asserted that he

could not access the laptop during this time because it was locked, and he lacked the BitLocker Recovery Key. (ECF Nos. 252-1, at 263-66; 252-2, at 276). "A Bitlocker Recovery Key is a 48-digit numerical password used to unlock the computer when the laptop is locked due to a system change." (ECF No. 252-3, at 10 (citing *Find Your BitLocker Recovery Key*, https://support.microsoft.com/en-us/windows/find-your-bitlocker-recovery-key-6b71ad27-0b89-ea08-f143-056f5ab347d6 [https://perma.cc/KC57-PBEQ])). Counterclaim Defendants have demonstrated that Mr. Van Norstrand *did* possess the BitLocker encryption key in at least his Personal G-mail Account. (*Id.* at 11; *id.* at 107-08 (expert declaration); ECF No. 256-1, at 5-6 (metadata showing the BitLocker Recovery Key located in the Personal G-mail Account)). Therefore, he had access to the laptop and the personal data on it for over a year after he was involuntarily withdrawn in March 2022 and seven months after he was locked out of the laptop in October 2022. (*See* ECF No. 133 ¶¶ 82, 97).

Finally, Mr. Van Norstrand also had his expert create a copy, or "mirror image," of the laptop, as he discussed in his May 2025 deposition:

> MR. WALTER: So you had a company-issued laptop?
>
> MR. VAN NORSTRAND: Yes.

MR. WALTER: Did you or someone on your behalf make a copy of the contents of company laptop before returning it?

MR. VAN NORSTRAND: Yes, this is all part of the case.  It's all in the court records.

MR. WALTER: So the answer is yes.  Do you still have possession of the mirror image?

MR. VAN NORSTRAND: I personally never had possession of the mirror image.

MR. WALTER: Who did?

MR. VAN NORSTRAND: The expert who we hired to handle that entire situation.

MR. WALTER: The expert never gave you a copy?

MR. VAN NORSTRAND: I'm not sure of the current status of that copy.

MR. WALTER: I didn't ask about current status. Did the expert ever give you a copy?

MR. VAN NORSTRAND: I never received a copy.

(ECF No. 252-2, at 275–76).  Although Mr. Van Norstrand argues he was locked out of the laptop, his expert was able to make a copy through "[t]he hard drive pad." (*Id.* at 277).  Mr. Van Norstrand does not explain, and the court cannot understand, why the copy of the laptop made by the expert he hired is unavailable to him.

In short, Mr. Van Norstrand retained four means of accessing the personal data he asserts was lost: (1) the Google Take-Out transferred to his Personal Outlook Account; (2) the Google synchronization between the Google Workspace Account and his

87

Personal G-Mail Account; (3) the company laptop, which he had the means of unlocking; and (4) the expert copy, which he could have requested.  Mr. Van Norstrand supplies no evidence in his motion for summary judgment and opposition to rebut these asserted facts, so they are undisputed.  Fed.R.Civ.P. 56(e)(2).  In his reply, Mr. Van Norstrand oddly refers to his own "admissions that . . . he synced/preserved personal data in multiple personal accounts and retained access." (ECF No. 268, at 49).  He goes on to argue that even though he "once retained access," he was then "locked out while [Counterclaim Defendants] retained copies." (*Id.* at 50). Mr. Van Norstrand "retained access" through his Personal Outlook Account and his Personal G-mail Account, and he has never argued that he was locked out of either, nor is there any evidence to that effect.  Accordingly, Mr. Van Norstrand effectively admits that he retained access to the personal data synced from the company laptop.  His contention that Counterclaim Defendants' retention of copies of his personal data gives rise to conversion, despite Mr. Van Norstrand's retained access, (*Id.*), is incorrect. Conversion bars "complete exclusion," not sharing.  *See, e.g.*, *Equity Prime Mortg., LLC v. 1st Fin., Inc.*, No. 17-cv-3754-ADC, 2021 WL 3930707, at *10 (D.Md. Sep. 2, 2021) (collecting cases where conversion claims failed because both parties retained

access to the information or data).  The court will grant summary judgment in favor of Counterclaim Defendants.

   7.  **Count XIII: Invasion of Privacy**

   In Count XIII, Mr. Van Norstrand asserts a claim of invasion of privacy, alleging that Counterclaim Defendants "intentionally intruded into the private and personal Google account of Van Norstrand holding more than ten years of private, confidential, privileged and sensitive communications, documents, photos and videos of Van Norstrand."  (ECF No. 133 ¶ 251).  They "mined through" his personal data, he posits, "in order to support their improper 'involuntary removal' of Van Norstrand from [Future Field]."  (*Id.*).

   Invasion of privacy refers to "not one tort, but a complex of four," *Bailer v. Erie Ins. Exch.*, 344 Md. 515, 526 (1997) (quoting *Household Fin. Corp. v. Bridge*, 252 Md. 531, 537 (1969)), two of which are relevant here: unreasonable publicity given to private life and unreasonable intrusion upon seclusion.  Unreasonable publicity given to private life arises "where one 'gives publicity to a matter concerning the private life of another' and 'the matter publicized is of a kind which (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'"  *Lindenmuth v. McCreer*, 233 Md.App. 343, 364 (2017) (quoting *Furman v. Sheppard*, 130 Md.App. 67, 77 (2000)).  "To make

'public,' or to 'publicize,' a private fact requires publication to the public at large," not "to a single person or even to a small group of persons." *Id.* at 364–65 (quoting *Furman*, 130 Md.App. at 78). Unreasonable intrusion upon seclusion consists of "an intentional intrusion upon another person's solitude, seclusion, private affairs or concerns in a manner which would be highly offensive to a reasonable person." *Trundle v. Homeside Lending, Inc.*, 162 F.Supp.2d 396, 401 (D.Md. 2001) (citing *Bailer*, 344 Md. at 526). The "plaintiff must have a reasonable expectation of privacy in the source of the information." *Id.* (citing *Marrs v. Marriott Corp.*, 830 F.Supp. 274, 283 (D.Md. 1992)).

Mr. Van Norstrand previously moved for summary judgment on this claim, asserting that "he did not authorize [Counterclaim Defendants] to access and review the erik@futurefieldsolutions.com email account within his overarching Google Account, the contents of which were later produced in discovery." (ECF No. 145, at 61 (citing ECF No. 109-1, at 22–23, 24–25)). He also clarified that he was pursuing the intrusion upon seclusion invasion of privacy tort, which he had not specified in the Counterclaim. (ECF No. 109-1, at 24). Counterclaim Defendants countered that "'they never accessed any of [Mr. Van Norstrand's] personal documents or information [via] his erik@futurefieldsolutions.com email account[,]' and the Google Account wholly belongs to Future Field."

90

(ECF No. 145, at 61 (second and third alteration in original) (citing ECF No. 121, at 18, 20)).  The court denied Mr. Van Norstrand summary judgment because there was "a genuine dispute of material fact regarding whether [Counterclaim Defendants] accessed the erik@futurefieldsolutions.com email account—or even the overarching Google account—during discovery," instead of a backup copy of the content of those accounts in Future Field's Microsoft365 Account.  (*Id.* at 61, 63).

Both parties now move for summary judgment.  In his motion for summary judgment, Mr. Van Norstrand switches the invasion of privacy tort, with no explanation, from intrusion upon seclusion to unreasonable publicity, (ECF No. 247, at 35–36), and then switches back to intrusion upon seclusion in his reply, (ECF No. 268, at 50–51).  The claim fails either way.

Counterclaim Defendants argue that Mr. Van Norstrand's unreasonable publicity claim fails because there is no allegation or evidence "that any of the Counterclaim-Defendants made any effort to publicize the allegedly personal documents in the Google Workspace Account."  (ECF No. 238, at 51 (citing *Kumar v. Mahone*, No. 21-cv-735-GLR, 2022 WL 279798, at *8 (D.Md. Jan. 31, 2022))).  Mr. Van Norstrand again counters with a single, unresponsive sentence: "[Counterclaim Defendants'] conduct—reviewing private, confidential files and images for use in litigation, without any

valid justification—is exactly the kind of 'highly offensive'
intrusion recognized by Maryland courts." (ECF No. 247, at 35-
36). Mr. Van Norstrand makes no argument regarding publicity, nor
does he identify any such publication in his Counterclaim, apart
from production of certain documents to his counsel, (ECF No. 133
¶ 252), which is plainly insufficient to support an unreasonable
publicity claim.

Counterclaim Defendants next argue that Mr. Van Norstrand's
intrusion upon seclusion claim fails because his conduct did not
evince a reasonable expectation of privacy; namely, he granted
Counterclaim Defendants full administrative rights to the Google
Workspace Account and copied over all the information he argues
was private to Future Field's Microsoft365 Account. (ECF No. 238,
at 53-54).[35]  Mr. Van Norstrand's same, single sentence in his

_____

[35] As a threshold matter, Counterclaim Defendants argue that
an absolute litigation privilege bars Mr. Van Norstrand's invasion
of privacy claim. (ECF No. 238, at 51). In Maryland, there is
"an absolute litigation privilege that immunizes litigation
participants from liability in tort for words spoken or written in
the course of a judicial proceeding." *O'Brien & Gere Eng'rs, Inc.
v. City of Salisbury*, 222 Md.App. 492, 508 (2015) (citing *Hunckel
v. Voneiff*, 69 Md. 179 (1888)). The privilege traditionally
applied to bar defamation claims arising from statements made
during the course of judicial proceedings but has expanded to bar
"other torts [that] arise from the same conduct." *Id*. at 512
(quoting *Mixter v. Farmer*, 215 Md.App. 536, 547 (2013)). Thus,
the privilege can bar other theories of recovery premised on
publication of information. Accordingly, Counterclaim Defendants
might be correct that the privilege bars the unreasonable publicity
claim, but the privilege does not bar the intrusion upon seclusion
claim, which has no publication element.

motion for summary judgment and opposition is presumably his response: "[Counterclaim Defendants'] conduct—reviewing private, confidential files and images for use in litigation, without any valid justification—is exactly the kind of 'highly offensive' intrusion recognized by Maryland courts." (ECF No. 247, at 35-36). In a troubling turn, Mr. Van Norstrand asserts in his reply that "[*Counterclaim Defendants*] migrated [Mr. Van Norstrand's] personal Google content into Office 365," including "personal emails/photos." (ECF No. 268, at 51-52 (emphasis added)). By Mr. Van Norstrand's own deposition testimony, that assertion is demonstrably false: *He* migrated the Google Workspace content to Future Field's Microsoft365 Account. (ECF No. 252-2, at 279-81).

Whether Mr. Van Norstrand retained a reasonable expectation of privacy in the personal data within the Google Workspace Account, or that same personal data turned over to Future Field's Microsoft365 Account, is a somewhat closer question. Other courts have held, in the Fourth Amendment context, that an individual retains a reasonable expectation of privacy in emails voluntarily disclosed to another party, even when that party has the right to access the emails. *United States v. Warshak*, 631 F.3d 266, 285-87 (6th Cir. 2010); *see also Furman*, 130 Md.App. at 74 (looking to Fourth Amendment case law when analyzing what constitutes a reasonable expectation of privacy for an intrusion upon seclusion

claim).  The *Warshak* court did caveat that if an individual gives another the ability to "audit, inspect, and monitor" his emails, "that might be enough to render an expectation of privacy unreasonable."  *Id.* at 287 (citation modified); *cf. United States v. Simons*, 206 F.3d 392, 398 (4th Cir. 2000) (holding that employees have no reasonable expectation of privacy in their internet searches when their employer has a policy permitting it to "audit, inspect, and/or monitor" employees' internet use).

Here, as explained in relation to Mr. Van Norstrand's SCA and CFAA claims, Mr. Van Norstrand granted Counterclaim Defendants full administrative rights in the Google Workspace Account, which included his personal data.  (ECF No. 252-2, at 311–12).  He explained that he made "no explicit declaration of, do not access my data.  It was an assumed best practice and just being a good person."  (*Id.* at 315).  Counterclaim Defendants' full administrative rights within the Google Workspace Account exceed the "audit, inspect, and/or monitor" threshold set forth in *Warshak* and *Simons*.  In his motion for summary judgment and opposition, Mr. Van Norstrand does not rely on any revocation of Counterclaim Defendants' access to the Google Workspace Account.  Thus, to the extent it is relevant, he cannot dispute that his personal data remained exposed to Counterclaim Defendants at the time they accessed it.  Accordingly, Mr. Van Norstrand lacked a reasonable

expectation of privacy in the emails, photos, and other data shared with Counterclaim Defendants.[36]  Also, Maryland courts have noted that an individual's involvement in litigation "lessen[s] his expectation of privacy" further due to the opposing party's need to conduct a reasonable investigation into the individual's claims. *See Furman*, 130 Md.App. at 75-76.  Here, Mr. Van Norstrand initially filed a Counterclaim with nine counts, (ECF No. 7), necessitating considerable investigation by Counterclaim Defendants.[37]  In that vein, a party is obligated to search the documents within its custody and produce those documents that it "*may* use to support its claims or defenses."  Fed.R.Civ.P. 26(a)(1)(A)(ii) (emphasis added).  Counterclaim Defendants thus had a duty to search the entire Future Field Microsoft365 Account, including the Google Workspace Account data migrated over by Mr. Van Norstrand, and produce relevant documents.

---

[36]  Mr. Van Norstrand cannot retain a reasonable expectation of privacy in the personal data located in the Microsoft365 Account after effectively waiving that expectation regarding the same personal data in the Google Workspace Account.  Thus, the court need not address whether, in isolation, the purported inadvertence of Mr. Van Norstrand's migration of his personal data to the Microsoft365 Account would have preserved his expectation of privacy.

[37] Mr. Van Norstrand has since amended his Counterclaim twice, and it now includes eighteen counts, one of the additional counts being the invasion of privacy count.

Considering the unfettered access Mr. Van Norstrand gave Counterclaim Defendants to his data, Mr. Van Norstrand's lessened expectation of privacy as a litigating party, and Counterclaim Defendants' obligation to search their records for documents relevant to the litigation, the court cannot conclude that Counterclaim Defendants' review of Mr. Van Norstrand's personal data constituted unreasonable intrusion upon seclusion.[38]    The court will grant summary judgment in favor of Counterclaim Defendants.

### 8.    Counts XIV and XVI: Defamation and Tortious Interference with Contracts and Business Expectancies

On October 23, 2023, Mr. Van Norstrand, with the consent of Counterclaim Defendants, filed a stipulated dismissal with prejudice of Counts XIV (Defamation) and XVI (Tortious Interference with Contracts and Business Expectancies) under Fed.R.Civ.P. 41(a)(1)(A)(ii).    (ECF No. 88).    The parties incorporated by reference the agreement in the September 2023 deposition of Mr. Van Norstrand that Mr. Van Norstrand would dismiss these claims with prejudice in exchange for Counterclaim Defendants' counsel refraining from questioning Mr. Van Norstrand about matters pertaining to his resume.    (*Id.;* ECF No. 252-1, at

---

[38]    Accordingly, the court need not reach Counterclaim Defendants' final argument that Mr. Van Norstrand has not adequately alleged damages.    In any event, evidence of damages is lacking as explained for Counts X and XI.

248-54).   The parties agreed that if Mr. Van Norstrand "raise[d] any issues going forward in this case relating to resume misrepresentations, [Counterclaim Defendants] reserve[] the right to recall . . . Mr. Van Norstrand and depose him on those questions."  (ECF No. 252-1, at 253).   The parties both move for summary judgment on these two counts because Mr. Van Norstrand now contends that this stipulated dismissal is no longer operative. He argues that (1) it was improperly filed under Fed.R.Civ.P. 41(a), which provides for the dismissal of *actions*, as opposed to Fed.R.Civ.P. 15(a), which provides for dismissal of *claims*,[39] and (2) Counterclaim Defendants' counsel breached the agreement in Mr. Van Norstrand's May 2025 deposition.   (ECF No. 247, at 36-37). Neither argument is persuasive.

First, the fact that the stipulated dismissal was filed under the wrong rule does not invalidate the dismissal.   Rule 41(a)(1)(A)(ii) permits a plaintiff to "dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared."  Rule 15(a)(2) allows a party to "amend its pleading only with the opposing party's written consent

---

[39] Mr. Van Norstrand's motion for summary judgment does not elaborate beyond simply arguing that the stipulated dismissal was "improperly filed."  (ECF No. 247, at 36).  The court understands Mr. Van Norstrand's argument to be the same as the Rule 41 versus Rule 15 argument he made in his opposition to Counterclaim Defendants' earlier motion for clarification, (ECF No. 222, at 3), though he does not incorporate that argument by reference.

or the court's leave." Courts in this circuit have noted that when a plaintiff wishes to dismiss fewer than all his claims, "Rule 15 is technically the proper vehicle to accomplish a partial dismissal." *Skinner v. First Am. Bank of Va.*, 64 F.3d 659, 1995 WL 507264, at *2 (4th Cir. Aug. 28, 1995) (unpublished table decision) (citation modified). In the context of voluntary dismissal by court order, the Fourth Circuit has observed that "similar standards govern the exercise of discretion under either rule"; therefore, whether the voluntary dismissal motion "is made under Rule 15 or under Rule 41(a)(2), the choice of rules is largely a formal matter." *Id.* at *2 (quoting 5 Moore, Lucas & Wicker, Moore's Federal Practice § 41.92 (1995)) (citing *Mechmetals Corp. v. Telex Comput. Prods., Inc.*, 709 F.2d 1287, 1294 (9th Cir. 1983)).[40]

Here, the parties filed a joint stipulation dismissing with prejudice Counts XIV and XVI as asserted against Counterclaim Defendants. (ECF No. 88). Although the context is distinct from

---

[40] A proposed amendment to Rule 41(a) would permit a plaintiff voluntarily to dismiss one or more individual claims. *See* Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Preliminary Draft: Proposed Amendments to the Federal Rules of Appellate, Bankruptcy, Civil, and Criminal Procedure, and the Federal Rules of Evidence 51–54 (2025), https://www.uscourts.gov/sites/default/files/document/preliminary-draft-of-proposed-amendments-to-federal-rules_august2025.pdf [https://perma.cc/E3XK-6NXK].

*Skinner* because the parties dismissed without court intervention, it makes no difference. Rule 41(a)(1)(A)(ii) and Rule 15(a)(2) permit dismissal and amendment, respectively, by consent of all parties without a court order. As in *Skinner*, the difference is "largely a formal matter." *Skinner*, 1995 WL 507264, at *2 (quoting 5 Moore, Lucas & Wicker, Moore's Federal Practice § 41.92 (1995)). Filing under the wrong rule thus supplies no basis to invalidate the dismissal.

Second, Mr. Van Norstrand's allegation that Counterclaim Defendants' counsel breached the agreement underpinning the stipulated dismissal at his May 2025 deposition is unfounded. Judge Coulson has already determined that Counterclaim Defendants did not exceed the scope of the deposition by asking Mr. Van Norstrand questions related to his resume and other supposedly off-limits topics because it was Mr. Van Norstrand's counsel who refused to honor that agreement. At the May 2025 deposition of Mr. Van Norstrand, counsel for both parties engaged in an extensive debate about the scope of the agreement reached by prior counsel for both parties at the September 2023 deposition. There, Counterclaim Defendants' counsel, Mr. Walter, and Mr. Van Norstrand's counsel, Mr. Hartman, had the following colloquy:

> MR. WALTER: . . . Are there are any [Count XVI] tortious interference claims against Mr. Brent, Reese and Tunson?
>
> MR. HARTMAN: My understanding was, there was a remaining portion, but I'm not a hundred percent certain enough to make that the issue. What I do know is that the issue of dismissal of the defamation and addressing the potential tortious claims resulted in the agreement that there would be no questioning on the resume. Whether or not the intentional interference claim is agreed upon or not, we don't have to give it.

(ECF No. 252-2, at 21-22). Mr. Van Norstrand's counsel would not provide a definitive answer as to whether Count XVI remained asserted in any fashion against Counterclaim Defendants but demanded adherence to Counterclaim Defendants' commitment not to ask questions about Mr. Van Norstrand's resume. As Judge Coulson explained, however, Counterclaim Defendants' resume-related questions became "fair game" when Mr. Van Norstrand's counsel "would not agree that all portions of those claims were indeed out of the case." (ECF No. 270, at 7).

Because neither the rule error nor the May 2025 deposition invalidates the stipulated dismissal with prejudice, the parties and court are bound by the dismissal. "At least one effect of the [stipulated, voluntary] dismissal with prejudice is the same as a court entered final adjudication of the merits." *Claibourne v. Willis*, 347 Md. 684, 692 (1997). When a plaintiff dismisses fewer than all counts with prejudice, those counts dismissed with

100

prejudice are "conclusively determined . . . 'adverse to the complainant,'" including within the same litigation. *See Langhoff v. Michael E. Marr, P.C.*, 81 Md.App. 438, 445 (1990) (quoting *Parks v. State*, 41 Md.App. 381, 385 (1979)), *vacated on other grounds by*, 322 Md. 657 (1991); *see also Ross v. Chopra*, No. 19-cv-92-PWG, 2021 WL 6197418, at *6–7 (D.Md. Dec. 30, 2021).[41]   Consequently, Counts XIV and XVI are conclusively determined adverse to Mr. Van Norstrand, to the extent he asserted them against Counterclaim Defendants.   He cannot revive them.   The counts remain dismissed with prejudice.   Counterclaim Defendants' motion to enforce the stipulation of dismissal is granted and the parties' motions for summary judgment are denied as moot.

---

[41] Traditional *res judicata* doctrine is not a neat fit here because the same litigation is ongoing; there is no prior suit. The *Langhoff* case is helpful on this front and apparently "the only Maryland case . . . that provides any guidance on how to assess this issue." *Ross*, 2021 WL 6197418, at *7.   In *Langhoff*, the plaintiff brought a count for assumpsit and a count for breach of fiduciary duty, among others; it voluntarily dismissed the assumpsit count with prejudice.   The defendant then argued that the dismissal with prejudice of the assumpsit count precluded the breach of fiduciary duty count.   *See Langhoff*, 81 Md.App. at 442–43, 445.   The court held that although the assumpsit count was conclusively dismissed, the breach of fiduciary duty count was not precluded within the same litigation because plaintiffs may pursue alternative theories of recovery.   *Id.* at 445–46.   "If, however, the causes of action are only technically different, or are the same, then dismissal with prejudice of one necessarily precludes litigation of the other."   *Id.* at 446 (citation modified).   It is clear, then, if not self-explanatory, that dismissals with prejudice are preclusive within the same litigation as to the particular counts dismissed, although not to the broader transaction or occurrence giving rise to the counts.

### 9.  Count XV: Fraud

In Count XV, Mr. Van Norstrand brings several claims of fraud against Counterclaim Defendants. He identifies several representations that he asserts were false: (1) Mr. Reese allegedly "represented to Van Norstrand that the valuation of [Future Field] and any member interest would be based upon a 'fair valuation' and 'simply what a third party offers a membership percentage,'" but Mr. Reese "never disclosed that the Operating Agreement provided for a 'book valuation' of [Future Field] or a member's interest," (ECF No. 133 ¶¶ 276–77); (2) Mr. Reese "never disclosed that the Operating Agreement provided for or allowed the removal of a member by a majority vote," (*Id.* ¶ 277); (3) Mr. Reese "never encouraged Van Norstrand to seek independent legal counsel before signing the Operating Agreement that Reese, an attorney, worked on and finalized for the members," (*Id.*); and (4) Mr. Reese "represented that his service-disabled veteran status would assist [Future Field] in obtaining government contracts and that he needed to own 51% of [Future Field]," (*Id.* ¶ 278). Mr. Van Norstrand alleges that in reliance on these representations, he signed the OA and suffered damages as a result. (*Id.* ¶¶ 280–81). Both parties move for summary judgment on these claims of fraud.

It is first helpful to clarify what is not argued in Count XV. At no point in his Counterclaim or motion for summary judgment

does Mr. Van Norstrand assert a claim of fraud against Mr. Brent or Mr. Tunson. Therefore, Count XV is not asserted against them. *Brummell*, 2023 WL 7282896, at *7; *Tanksley*, 2020 WL 89692, at *4 n.6. Moreover, Count XV deals only with representations Mr. Reese allegedly made before Mr. Van Norstrand signed the OA in 2020. In Mr. Van Norstrand's reply, he attempts to shift the entire focus of Count XV to the events in 2022 surrounding Mr. Van Norstrand's involuntary withdrawal from Future Field. The court will ignore that reframing. *See S. Walk at Broadlands*, 713 F.3d at 184 ("It is well-established that parties cannot amend their complaints through briefing[.]"). Therefore, Count XV asserts claims of fraudulent inducement, and possibly concealment, against Mr. Reese regarding representations he allegedly made before Mr. Van Norstrand signed the OA.

Mr. Reese argues that Mr. Van Norstrand's motion for summary judgment is deficient because Mr. Van Norstrand merely summarizes the allegations he made in his Counterclaim and supplies no record support. (ECF No. 263, at 66; *see also* ECF No. 247, at 38-39). Mr. Reese is correct. "[M]ere assertions of fact in a brief without substantiation in the record are insufficient to raise a genuine dispute." *Best v. Fed. Nat'l Mortg. Ass'n*, 450 F.Supp.3d 606, 634 (D.Md. 2020) (citing *Allen v. Dorchester County*, No. 11-cv-1936-ELH, 2013 WL 5442415, at *16 (D.Md. Sep. 30, 2013)).

103

Because Mr. Van Norstrand's motion for summary judgment also operates as his opposition to Counterclaim Defendants' motion for summary judgment, his failure to substantiate the allegations in his fraud count alone entitles Mr. Reese to summary judgment. Moreover, Mr. Reese has exhaustively demonstrated that none of the representations identified in the Counterclaim is in fact fraudulent.

"Fraud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement." *Sass v. Andrew*, 152 Md.App. 406, 432 (2003) (quoting *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 529 (8th Cir. 1999)). To prevail on a claim of fraudulent inducement, a plaintiff must prove "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Andrews v. O'Sullivan*, 256 Md.App. 532, 553 (2022) (quoting, inter alia, *Nails v. S & R, Inc.*, 334 Md. 398, 415 (1994)). Relatedly, to recover on a claim of fraudulent concealment, a plaintiff must

104

prove that "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment." *My Nat'l Tax & Ins. Servs., Inc. v. H & R Block Tax Servs., Inc.*, 839 F.Supp.2d 816, 820 (D.Md. 2012) (quoting *Green v. H & R Block, Inc.*, 355 Md. 488, 525 (1999)).

Taking the allegedly fraudulent representations one by one, the court has no difficulty concluding that Mr. Van Norstrand has failed to show that any of them is in fact fraudulent. First, Mr. Van Norstrand asserts that Mr. Reese misrepresented that the valuation of Future Field and any member interest would be based on a "fair valuation," when in fact it would be based on a "book valuation." (ECF No. 133 ¶¶ 276-77). Mr. Van Norstrand never substantiated that Mr. Reese made this statement. Moreover, whether this claim is framed as fraudulent inducement or fraudulent concealment, Mr. Van Norstrand cannot show justifiable reliance, which both theories require. The OA clearly lays out the valuation method of Future Field and any member interest. (ECF No. 252-3, at 179). In his September 2023 deposition, Mr. Van Norstrand stated that he read the OA before signing it. (ECF No. 252-1, at

369).  Likewise, Mr. Brent testified that on the date of the OA's signing, Mr. Reese went through "every single sentence" of the OA line by line with him and Mr. Van Norstrand and asked if they understood what each sentence meant.  (ECF No. 256-2, at 165-66). It was unreasonable to rely on a purported representation that varied from the terms of the OA, when Mr. Van Norstrand concedes that he read the OA.  *Cf. Sass*, 152 Md.App. at 441 (holding that it was unreasonable for the plaintiff to rely on a representation that varied from the terms of a written instrument, when the plaintiff could have read the written instrument before signing and was not coerced into signing before reading).

Second, Mr. Van Norstrand argues that Mr. Reese "never disclosed that the Operating Agreement provided for or allowed the removal of a member by a majority vote."  (ECF No. 133 ¶ 277). This claim fails for the same reason as the previous one because Mr. Van Norstrand read the OA, which provides for the circumstances in which a member may be removed.  (*See* ECF No. 252-3, at 177). As this court explained in its previous summary judgment opinion, the section of the OA regarding "involuntary withdrawals" necessarily implies that unanimous consent is not required for removal of a member.  (ECF No. 145, at 26-27).

Third, Mr. Van Norstrand complains that Mr. Reese "never encouraged [him] to seek independent legal counsel before signing

the Operating Agreement that Reese, an attorney, worked on and finalized for the members." (ECF No. 133 ¶ 277). This supposed failure does not constitute any sort of *representation*, nor a failure to disclose a *fact* for which there was a duty to disclose. The court cannot discern how a failure to encourage seeking independent legal counsel can give rise to a fraud claim.

Fourth, Mr. Van Norstrand asserts that Mr. Reese "represented that his service-disabled veteran status would assist [Future Field] in obtaining government contracts and that he needed to own 51% of [Future Field]." (*Id.* ¶ 278). Again, Mr. Van Norstrand cannot show reasonable reliance, a required element of fraudulent inducement. Mr. Reese correctly observes that this "representation" is an opinion upon which reliance is unreasonable. (ECF No. 238, at 70 (citing *U.S. Home Corp. v. Settlers Crossing, LLC*, No. 08-cv-1863-DKC, 2012 WL 3536691, at *11 (D.Md. Aug. 14, 2012)). In *Settlers Crossing*, this court explained that "where representations are 'statements of expectation, prediction, or future intention,' it is generally not reasonable to rely upon them." *Settlers Crossing*, 2012 WL 3536691, at *11 (quoting *Weisman v. Connors*, 312 Md. 428, 454 (1988)). Mr. Reese's statement that his service-disabled veteran status would be helpful in obtaining government contracts is merely a statement

107

of his expectation or prediction.   Mr. Van Norstrand was not justified in relying on Mr. Reese's opinion.

In short, Mr. Van Norstrand fails to meet his baseline evidentiary burdens at the summary judgment stage on Count XV, nor does he even attempt to surmount the numerous legal deficiencies Mr. Reese highlights.[42]  Mr. Reese is entitled to summary judgment.

### 10.  Count XVII: Civil Conspiracy

In Count XVII, Mr. Van Norstrand asserts a claim of civil conspiracy, alleging that Counterclaim Defendants "agreed and/or understood that they would act together" to take the following actions: (1) "unlawfully and tortiously without authorization access[] and tak[e] exclusive control over Van Norstrand's Google account and the contents therefor in furtherance of their agreement and/or understanding to involuntarily remove Van Norstrand from [Future Field]"; and (2) "gather and use the confidential, privileged and sensitive information of Van Norstrand from his Google account to make false and/or misleading statements about Van Norstrand and further their improper and wrongful attempted removal of Van Norstrand from [Future Field] for their own benefit

---

[42] Mr. Van Norstrand responds in his reply to arguments he attributes to Counterclaim Defendants regarding the economic loss doctrine and the statute of limitations.  (ECF No. 268, at 60–61). Counterclaim Defendants make no such arguments.

and causing harm to Van Norstrand and his reputation." (ECF No. 133 ¶¶ 309–310).

Under Maryland law, a civil conspiracy consists of:

> "[A] combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Hoffman v. Stamper*, 385 Md. 1, 24 (2005) (quoting *Green v. Wash. Suburban Sanitary Comm'n*, 259 Md. 206, 221 (1970)). The plaintiff must prove an unlawful agreement, the commission of an overt act in furtherance of the agreement, and that as a result, the plaintiff suffered actual injury. *Id.* at 25. The unlawful agreement is not actionable by itself; rather, the "[t]ort actually lies in the act causing the harm" to the plaintiff. *Id.* Thus, civil conspiracy is not "capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Id.*

*Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 128 (2006). In other words, a "defendant's liability for civil conspiracy depends entirely on its liability for a substantive tort." *Fare Deals, Ltd. v. World Choice Travel.Com, Inc.*, 180 F.Supp.2d 678, 692 (D.Md. 2001) (citing *Alleco Inc. v. Harry & Jeanette Weinberg Found.*, 340 Md. 176, 189–90 (1995)).

Both parties now move for summary judgment. Counterclaim Defendants argue that the claim fails because the overt act constituting the substantive tort is invasion of privacy, for which Mr. Van Norstrand fails to establish liability, and the

intracorporate conspiracy doctrine precludes a finding of conspiracy. (ECF No. 238, at 59–60). Mr. Van Norstrand responds by shifting the focus of the overt act functioning as the substantive tort to defamation, fraud, and tortious interference. (ECF No. 247, at 39). In his reply, Mr. Van Norstrand revises the menu of substantive torts again to include six: SCA violation, CFAA violation, conversion, intrusion upon seclusion, fraud, and tortious interference. (ECF No. 268, at 62). Defamation appears to have dropped out of the mix. He also suggests that breach of fiduciary duty and duty of loyalty can serve as the substantive tort. (*Id.* at 64).[43] Mr. Van Norstrand counters Counterclaim Defendants' invocation of the intracorporate conspiracy doctrine by pointing out that it does not "apply where agents act with a personal stake or employ independent tortious means." (*Id.* at 62 (citing *Balt.-Wash. Tel. Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 744 (D.Md. 2008), *abrogated on other grounds by*, *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012))).

The court need not reach the intracorporate conspiracy question because, even if it does not apply, Mr. Van Norstrand has failed to establish an overt act for which Counterclaim Defendants bear substantive tort liability. Mr. Van Norstrand sets forth

---

[43] For the first time in his reply, Mr. Van Norstrand also alleges a new conspiracy involving PeriArchon. The court does not entertain this argument.

three overt acts in his Counterclaim: (1) "unlawfully and tortiously without authorization accessing and taking exclusive control over Van Norstrand's Google account and [its] contents"; (2) "gather[ing] and us[ing] the confidential, privileged and sensitive information of Van Norstrand from his Google account"; and (3) "mak[ing] false and/or misleading statements about Van Norstrand." (ECF No. 133 ¶¶ 309-10). The first two overt acts sound in SCA, CFAA, conversion, and invasion of privacy. Mr. Van Norstrand has failed to establish liability for any of those claims. The third overt act sounds in defamation, but Mr. Van Norstrand dismissed his defamation claim with prejudice. Absent a viable defamation claim, a derivative civil conspiracy claim cannot lie.[44]

Without a finding of liability for any substantive underlying tort, the court will grant summary judgment in favor of Counterclaim Defendants.

---

[44] When the parties jointly stipulated to the dismissal with prejudice of Mr. Van Norstrand's defamation count, they agreed that they did so in exchange for Counterclaim Defendants' counsel refraining from questioning Mr. Van Norstrand about his resume. To ensure the fairness of the bargain, it appears the parties should have also dismissed any civil conspiracy claim derivative of the defamation claim that would have required proof of liability for defamation. The parties did not do so, either due to an oversight or an understanding that the civil conspiracy claim was not actually predicated on liability for defamation.

### 11.  Count XVIII: Permanent Injunction

In Count XVIII, Mr. Van Norstrand seeks permanent injunctive relief "restraining and enjoining Counterclaim Defendants from accessing and/or using Van Norstrand's personal Google account and the data contained therein and ordering Counterclaim Defendants to return the Google account to Van Norstrand and the data contained therein." (*Id.* at 58).

A permanent injunction is a remedy, not an independent cause of action. *Orteck*, 704 F.Supp.2d at 521.  Accordingly, "[a] party seeking a permanent injunction must demonstrate 'actual success' on the merits" of some independent cause of action. *Mayor of Balt. v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020) (quoting *Amoco Prod. Co. v. Vill. Of Gambell*, 480 U.S. 531, 546 n.12 (1987)).  Upon doing so, a plaintiff must then show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Mr. Van Norstrand previously moved for summary judgment on this count and was denied relief because Mr. Van Norstrand "ha[d] provided no evidence showing that he ha[d] *already* suffered irreparable harm." (ECF No. 145, at 67-68).

Both parties now move for summary judgment. Counterclaim Defendants argue that Mr. Van Norstrand has failed to identify another count with an independent cause of action supporting permanent injunctive relief, and that even if he had, injunctive relief is not warranted because he has retained access to the information in the Google Workspace Account. (ECF No. 238, at 63, 64-66). Mr. Van Norstrand responds simply that "[Counterclaim Defendants] have taken and retained more than ten (10) years of Van Norstrand's communications, documents, photos, and videos stored" in the Google Workspace Account, "lock[ed] him out" of the account, and "refused to give this information and access back to Van Norstrand." (ECF No. 247, at 40-41).[45]

Counterclaim Defendants are correct that Mr. Van Norstrand fails the threshold matter of establishing actual success on an independent cause of action. His request for injunctive relief boils down to three requests: (1) that Counterclaim Defendants

---

[45] In his reply, Mr. Van Norstrand again deviates sharply from all his previous arguments. He transforms Count XVIII into a request to redo the wind-up of Future Field, to be overseen by a special master. (ECF No. 268, at 65-67). This request is another impermissible effort to supplement his pleadings through briefing.

cease accessing and/or using his personal data in the Google Workspace Account; (2) that Counterclaim Defendants return his personal data; and (3) that Counterclaim Defendants return the Google Workspace Account to him. Mr. Van Norstrand did not manage to succeed on his SCA and CFAA claims regarding Counterclaim Defendants' access to his information derived from the Google Workspace Account because their access was not unauthorized, nor on his conversion claim regarding his allegedly lost personal data because he has retained access to the information he asserted was lost. Therefore, there is no independent cause of action to sustain injunctive relief on his first two requests. Regarding the third request, this court previously left open the question of which party is the rightful owner of the Google Workspace Account. (ECF No. 145, at 63). Mr. Van Norstrand, however, has not asserted a claim that the account itself was converted, rather than simply the personal data within the account. (*See* ECF No. 133, at 45–46). Thus, there is no independent cause of action to sustain this relief, either. The court will therefore grant Counterclaim Defendants summary judgment.

In short, Counterclaim Defendants are entitled to summary judgment on Counts III–XIII, XV, and XVII–XVIII, and Mr. Van Norstrand's motion for summary judgment on those counts is

114

accordingly denied.[46]    The court denies summary judgment to both parties on Count II due to genuine disputes of material fact, and to both parties on Counts XIV and XVI because those counts were dismissed with prejudice.

## V.    **Future Field**

The status of the claims asserted by Future Field in the Complaint and against Future Field in the Counterclaim remains at issue.    To appear in this court, "parties other than individuals *must* be represented by counsel."    Local Rule 101.1(a) (emphasis added).    On February 26, 2025, counsel for Future Field moved to withdraw.    (ECF No. 212).    On February 28, the court provided Future Field thirty days to secure new counsel before resolving the motion to withdraw, pursuant to Local Rule 101.2(b).    (ECF No. 213).    Future Field did not secure new counsel within the time provided.    On May 30, Future Field's counsel filed a renewed motion to withdraw, (ECF No. 227), which the court granted on June 12, (ECF No. 231).    In its order granting the motion to withdraw, the court directed counsel for the remaining parties to advise by June 26 whether the court should issue a "notice to show cause to Future Field Solutions LLC as to why default should not be entered or its

---

[46] Counterclaim Defendants' partial motion for summary judgment on Mr. Van Norstrand's requests for punitive damages, attorney's fees and litigation costs, and prejudgment interest, (ECF No. 238, at 120–32), is denied as moot, as it relates to these counts.

claims dismissed." (*Id.* at 2–3). The court has received correspondence since on the matter, although only Counterclaim Defendants' counsel filed correspondence by June 26.

First, Counterclaim Defendants and Mr. Van Norstrand appear to accept that Future Field's remaining claims in the Complaint, namely Counts IV and VI, should be dismissed.[47] Local Rule 101.2(b) provides that if, "within thirty (30) days of the filing of the motion to withdraw, new counsel has not entered an appearance, the Court may . . . grant[] the motion to withdraw and dismiss[] any affirmative claim for relief asserted by the party." Counsel for Mr. Brent, Future Field's wind-up member, expressly requests that the court "deem all claims [Future Field] has brought as abandoned." (ECF No. 234, at 3). Counsel for Mr. Van Norstrand does not oppose this request. Because new counsel did not enter an appearance for Future Field in the eight months since the filing of the motion to withdraw, Future Field's remaining affirmative claims for relief in Counts IV and VI of the Complaint are dismissed.

Second, Counterclaim Defendants and Mr. Van Norstrand dispute whether it is appropriate or necessary to issue an order to show cause why default should not be entered against Future Field. In

---

[47] The court did not hear from counsel for PeriArchon on the matter.

116

addition to providing for the dismissal of affirmative claims for relief, Local Rule 101.2(b) permits the court to "direct[] the [unrepresented entity] to show cause why a default should not be entered on claims asserted against it."   This rule builds on Fed.R.Civ.P. 55(a), which instructs that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to . . . defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."   Failure of an LLC to proceed through counsel on claims asserted against it gives rise to the presumption that the LLC has failed to defend under Rule 55.   Therefore, a show-cause order is warranted.

Counterclaim Defendants argue, however, that the claims against Future Field should be dismissed because Future Field is cancelled and thus "lacks the capacity to prosecute or defend claims." (ECF No. 234, at 2).   While it is true that Future Field is cancelled, Maryland law does not indicate that it now "lacks the capacity to prosecute or defend claims."   Instead, Maryland's LLC Act specifically provides that "[n]otwithstanding the filing of articles of cancellation, the [LLC] *continues to exist* for the purpose of paying, satisfying, and discharging any existing debts or obligations, collecting and distributing assets, and doing all other acts required to liquidate and wind up its business and affairs."   Md. Code Ann., Corps. & Ass'ns § 4A-908(b) (emphasis

added); Fed.R.Civ.P. 17(b)(3) (capacity of LLC to sue and be sued is determined "by the law of the state where the court is located"); *see also Becker v. Noe*, No. 18-cv-931-ELH, 2019 WL 1415483, at *2 (D.Md. Mar. 27, 2019) (observing that a cancelled LLC may continue to pursue its claims under § 4A-908(b)); *Olson v. Moser*, No. 1613, 2021 WL 6065314, at *5 (Md.Ct.Spec.App. Dec. 22, 2021) (suggesting that cancellation of an LLC to avoid liability would be unsuccessful under § 4A-908(b)).

The cases Counterclaim Defendants cite all address LLC statutes of other states that expressly end the LLC's existence, and thus its capacity to sue or be sued, upon cancellation. *Metro Comm'cn Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 138-39 (Del. 2004) (Delaware); *Fox Hollow of Turlock Owner's Ass'n v. Sinclair*, No. 03-cv-5439, 2013 WL 1628260, at *4 (E.D.Cal. Apr. 15, 2013) (California); *Phillips v. TDI Lakota Holdings LLC*, No. 10-cv-782, 2011 WL 13225282, at *5 (E.D.Pa. Apr. 29, 2011) (South Dakota); *Chadwick Farms Owners Ass'n v. FHC LLC*, 166 Wash.2d 178, 189 (Wash. 2009) (en banc) (Washington); *Schiff v. ZM Equity Partners, LLC*, No. 19-cv-4735, 2020 WL 5077712, at *3 (S.D.N.Y. Aug. 27, 2020) (Delaware). In contrast, the Maryland LLC Act expressly provides that the LLC "continues to exist" to complete all necessary wind-up activities. Md. Code Ann., Corps. & Ass'ns § 4A-908(b). Counterclaim Defendants provide no basis to conclude

that Maryland law bars prosecuting and defending against suits as needed during wind-up. Future Field thus continues to possess the capacity to be sued.

Counterclaim Defendants' next argument that the claims against Future Field are prudentially moot because Future Field lacks assets is likewise unavailing. Judge Hollander explained the doctrine of prudential mootness:

> Under the principle of constitutional mootness, "'[f]ederal courts have no jurisdiction to decide moot cases because of the case or controversy requirement of Article III of the Constitution.'" *Baltimore Neighborhoods, Inc. v. LOB, Inc.*, 92 F.Supp.2d 456, 461 (D.Md. 2000) (quoting *Virginia ex rel. Coleman v. Califano*, 631 F.2d 324, 326 (4th Cir. 1980)); *accord Feldman v. Pro Football, Inc.*, 579 F.Supp.2d 697, 706 (D.Md. 2008), *aff'd*, 419 F.App'x 381 (4th Cir. 2011). The doctrine of prudential mootness provides that a court may "determine that, regardless of constitutional mootness, a case is moot because the court cannot provide an effective remedy and because it would be imprudent for the court to hear the case." *Feldman*, 579 F.Supp.2d at 706 (citing *United States v. Under Seal*, 757 F.2d 600, 603 (4th Cir. 1985)).

*Goldstein v. F.D.I.C.*, No. 11-cv-1604-ELH, 2014 WL 69882, at *11 (D.Md. Jan. 8, 2014). The Supreme Court has instructed that "the fact that a defendant is insolvent does not moot a claim for damages." *Chafin v. Chafin*, 568 U.S. 165, 175-76 (2013) (citing 13C Wright & Miller's Federal Practice & Procedure § 3533.3 (3d ed. 2008)). Quoting Wright & Miller, the Supreme Court stated

119

that "even though the defendant does not seem able to pay any portion of the damages claim," the claim is not moot. *Id.* (quoting 13C Wright & Miller's Federal Practice & Procedure § 3533.3 (3d ed. 2008)). Accordingly, although Future Field "does not seem able to pay any portion of the damages claim[s]" against it due to its lack of assets, those claims are not rendered moot.

Counterclaim Defendants do cite several cases supporting the proposition that dismissal on prudential mootness grounds is warranted when the defendant has no assets, but those cases either were decided before *Chafin* or addressed unique contexts not before the court. *Goldstein*, 2014 WL 69882, at *12 (holding that creditors' claims against bank were moot because Federal Deposit Insurance Corporation's No Value Determination "establishes conclusively that general creditors will be unable to recover any value"); *MBIA Ins. Corp. v. F.D.I.C.*, 708 F.3d 234, 245 (D.C. Cir. 2013) (same); *ROK Builders, LLC v. 2010-1 SFG Venture, LLC*, No. 13-cv-16, 2013 WL 3762678, at *5–7 (D.N.H. July 16, 2013) (applying the different doctrine of equitable mootness to a bankruptcy appeal).

In his correspondence, Mr. Van Norstrand seeks action far beyond the scope of the court's June 12 order. In addition to a show-cause order regarding default, Mr. Van Norstrand requests that the court reinstate Future Field and reverse the wind-up

because Counterclaim Defendants allegedly have conducted the wind-up in violation of the court's August 2024 opinion and Mr. Van Norstrand's rights under the OA. (ECF No. 239, at 1, 3). He also raises various new claims against Counterclaim Defendants for breach of fiduciary duty and the like based on the wind-up. (*Id.* at 3).

These requests are deficient for numerous reasons. First, the court is unaware of any authority it possesses to reinstate a cancelled LLC, and the authorities Mr. Van Norstrand supplies are inapposite. (*See id.* at 5 (citing Md. Code Ann., Corps. & Ass'ns §§ 4A-904 (who can wind up LLC's affairs), 4A-909 (components of articles of cancellation), 4A-910 (conditions for filing articles of cancellation)); ECF No. 249, at 3 (citing Md. Code Ann., Corps. & Ass'ns § 4A-402(d) (authorizing courts to enforce operating agreements))). Second, the court is unable to conclude that the wind-up was conducted improperly. Although the court stated in its August 2024 opinion that, "pursuant to Section 4A-904, [Mr. Van Norstrand] *and* [Counterclaim Defendants] will manage Future Field's dissolution . . . by mutual agreement," (ECF No. 145, at 41-42), Counterclaim Defendants duly notified Mr. Van Norstrand that a meeting would occur regarding the wind-up on December 9, and he declined to attend, (ECF Nos. 234, at 1; 239-2, at 2; 246-1; 246-4, at 2; 249-1, at 3). At the meeting, the other members

121

designated Mr. Brent as the member to manage the wind-up. (ECF Nos. 246-4, at 2; 249-1, at 3). The Maryland LLC Act specifically contemplates the designation of a single member to manage the wind-up. Md. Code Ann., Corps. & Ass'ns § 4A-909(3) ("Articles of cancellation shall set forth . . . [t]he name and address of each member who was designated to wind up the affairs of the [LLC] or *if no member was so designated*, the names and addresses of all members[.]" (emphasis added)). Nothing in the OA requires unanimous approval for this action because it did not constitute an amendment to the OA. (*See* ECF No. 252-3, at 184). After receiving notice on December 11 of the possibility of cancellation as early as December 31, (ECF No. 239-2, at 10), Mr. Van Norstrand declined to attend the December 27 meeting, submitting a letter instead, (ECF No. 249, at 2). He further emphasizes the court's language in its August 2024 opinion that "[i]f the parties are unable to reach an agreement [regarding the wind-up], they *may* call upon the court for the purpose of winding up Future Field's affairs." (ECF No. 239, at 1 (emphasis added) (quoting ECF No. 145, at 42)). This statement was not a command but a suggestion, and it operated on both parties equally. Apart from one motion filed by Mr. Van Norstrand to stay the December 9 meeting, (ECF No. 192), which the court denied, (ECF No. 195), neither party sought concrete relief during the process. In fact, Mr. Van

Norstrand represented to the court through counsel that the dissolution and wind-up were proceeding "fairly well," (ECF No. 209, at 13), and made no challenges to the wind-up through the cancellation on April 5. Those decisions have consequences. Third, correspondence with the court is an inappropriate vehicle to raise new claims; the court will not consider them.[48]

The wind-up stands intact and Future Field remains cancelled. A show-cause order will issue to Future Field as to why default should not be entered on the claims that Mr. Van Norstrand has asserted against it for breach of contract (Count II), breach of duty of loyalty (Count III), breach of fiduciary duty (Count IV),

---

[48] Mr. Van Norstrand also seeks the disqualification of Counterclaim Defendants' counsel. (ECF No. 249, at 3). The crux of his contention is that an attorney represented Future Field through cancellation in April 2025 regarding the wind-up, and that attorney's firm also represented Counterclaim Defendants beginning in February 2025. Thus, he alleges that, at least for the period between February and April 2025, their counsel was conflicted because counsel simultaneously represented Future Field and Counterclaim Defendants at a time Mr. Van Norstrand believes Counterclaim Defendants had interests adverse to Future Field. (*Id.*). Cancellation of Future Field was permitted as early as late December 2024, when counsel was not conflicted and Future Field had "no hard assets; no inventory; no accounts receivable; and minimal cash on-hand." (ECF No. 239-2, at 3). Thus, there is no basis to conclude that Future Field's interests were meaningfully adverse to those of Counterclaim Defendants between February and April 2025. *See* Md. R. Attorneys, Rule 19-301.7(a).

violation of the MWPCL (Count V), accounting (Count VI), wrongful termination (Count VII), and indemnification (Count VIII).[49]

## VI. Sanctions

The final matter is Counterclaim Defendants' motion to preclude consideration of new arguments made for the first time in Mr. Van Norstrand's reply brief and, more importantly, their request that the court issue a show-cause order as to why sanctions should not be imposed for Mr. Van Norstrand and his counsel's failure to comply with ethical obligations. (ECF No. 273).[50] As indicated throughout the preceding pages, the court understands its independent obligation to identify those theories and determine whether to consider them, and has already determined how to address them.[51]

---

[49] While entry of default may be appropriate, that does not mean that a judgment will follow. Mr. Van Norstrand will need to demonstrate that the facts alleged give rise to liability, *Agora Fin., LLC v. Samler*, 725 F.Supp.2d 491, 494 (D.Md. 2010), and then he will need to provide evidence of damages, either through documentary evidence or at a hearing, *United States v. Moschonas*, No. 19-cv-332-DKC, 2020 WL 6545884, at *2 (D.Md. Nov. 6, 2020).

[50] To the extent Mr. Van Norstrand requests a show-cause order as to why sanctions should not be imposed on Counterclaim Defendants for accusing him of using artificial intelligence, (ECF No. 274, at 12), the request is denied. His separate request for a show-cause order related to the alleged malware in Counterclaim Defendants' discovery productions was not raised in a separate motion and will not be considered.

[51] Also pending is Mr. Van Norstrand's unopposed motion for leave to file sur-reply to Counterclaim Defendants' motion to preclude consideration of new arguments and request for a show-

Counterclaim Defendants suggest that Mr. Van Norstrand and his counsel used artificial intelligence ("AI") to draft the reply brief because it contains incorrect case citations, unusual grammatical errors, responses to arguments Counterclaim Defendants never made, and false factual assertions. They principally seek the imposition of monetary sanctions, including attorney's fees for the costs of responding to the reply brief. There is no rule prohibiting the use of AI in drafting legal briefs, but Fed.R.Civ.P. 11(b) requires that an attorney conduct a reasonable inquiry into the basis for the legal arguments and factual assertions made in any filing with the court. Therefore, if a party submits a filing that was drafted using AI without conducting a reasonable inquiry into the legal arguments and factual assertions made therein, such conduct is sanctionable. Moreover, courts are far more likely to impose sanctions when a party doubles

---

cause order. (ECF No. 276). Sur-replies "are highly disfavored in this District," but may be permitted when the opposing party raised a new matter for the first time in its reply brief. *Medish v. Johns Hopkins Health Sys. Corp.*, 272 F.Supp.3d 719, 722 (D.Md. 2017) (quoting *Roach v. Navient Sols., Inc.*, 165 F.Supp.3d 343, 351 (D.Md. 2015)). In his motion, Mr. Van Norstrand states that Counterclaim Defendants' reply "raises new arguments, including those related to their production of virus-infected discovery." (ECF No. 276 ¶ 5). It is true that Counterclaim Defendants address the alleged production of virus-infected discovery in their reply, which they had not discussed in their motion. They do so, however, because Mr. Van Norstrand raised the matter in his opposition rather than in a separate motion. Accordingly, Counterclaim Defendants did not raise a new matter on which Mr. Van Norstrand had not been heard. Mr. Van Norstrand's motion is denied.

down on its contention that it did not use AI rather than accept responsibility for doing so at the first opportunity. *See, e.g.*, *Mata v. Avianca, Inc.*, 678 F.Supp.3d 443, 449 (S.D.N.Y. 2023); *Benjamin v. Costco Wholesale Corp.*, 779 F.Supp.3d 341, 351 (E.D.N.Y. 2025); *Mavy v. Comm'r of Soc. Sec. Admin.*, No. 25-cv-689, 2025 WL 2355222, at *8 (D.Ariz. Aug. 14, 2025).

Local Rule 105.8 provides that "a party need not respond to any motion filed under Fed.R.Civ.P. 11 . . . . The Court shall not grant any motion without requesting a response." Mr. Van Norstrand's counsel nevertheless responded. That response to the request for a show-cause order, however, does not fully explain the problems identified. While the response addresses Counterclaim Defendants' contentions regarding incorrect case citations and unusual grammatical errors, it does not discuss the responses in the reply to arguments never made by Counterclaim Defendants or the false factual assertions in the reply. Counsel in effect blames Mr. Van Norstrand for some of the issues identified, (ECF No. 274, at 6-7), which might indicate insufficient oversight by counsel. Examples of false assertions and characterizations in the reply brief are:

1. "The [Counterclaim Defendants] erroneously argue that where there is no merger paper, there is no successor liability." (ECF No. 268, at 17). They make no such argument.

2. "The [Counterclaim Defendants] further erroneously contend that the application of [successor liability] doctrines do not apply to LLCs." (ECF No. 268, at 17). They make no such argument.

3. "Count III of the Counterclaim principally seeks . . . equitable relief." (ECF No. 268, at 26). Count III of the Counterclaim plainly seeks compensatory damages, not equitable relief. As the court discussed, any request for equitable relief would have to be implied in Count III's general prayer for relief.

4. "Van Norstrand can and does attribute roles by individual actor [sic] in the proposed findings and. [sic]" (ECF No. 268, at 27). There are no proposed findings.

5. "[T]he court should establish individual liability . . . based on the tried-by-consent record[.]" (ECF No. 268, at 32). There is no tried-by-consent record.

6. "The termination closely followed Van Norstrand's objections to . . . his resistance to the access/diversion conduct." (ECF No. 268, at 37). By Mr. Van Norstrand's own representation, the complained-of access to the Google Workspace Account occurred in October 2022, seven months *after* the termination, (ECF No. 133 ¶¶ 82, 97); the complained-of "diversion" of assets occurred in April 2023, over one year *after* the termination, (*Id.* ¶¶ 82; ECF No. 247, at 17). Moreover, there is no evidence that Counterclaim Defendants asked Mr. Van Norstrand to engage in unauthorized access of Mr. Van Norstrand's personal data, nor would that make any sense.

7. "[Counterclaim Defendants] migrated [Mr. Van Norstrand's] personal Google content into Office 365 and produced it in litigation." (ECF No. 268, at 51). Mr. Van Norstrand's own deposition testimony squarely contradicts this assertion; he, rather than Counterclaim Defendants, migrated the content. (ECF No. 252-2, at 279-81).

8. "In the week leading to March 22, 2022, . . . [Counterclaim Defendants] had already (a) structured

127

insider spouse-loans and were routing company-funded
legal fees off-process; (b) planned to divert [Future
Field's] Lockheed and related work to PeriArchon; (c)
manipulated credentials/2FA to lock [Mr. Van Norstrand]
out of repositories; and (d) withheld or deleted audit
trails/tax returns necessary to compute true member
entitlements." (ECF No. 268, at 58-59). The spousal
loans were made in the latter half of 2023. (ECF No.
239-3, at 1, 17, 25, 39, 54). Counterclaim Defendants
did not purchase PeriArchon until November 2022, (ECF No.
247-3), nor did the PeriArchon-Lockheed contract begin
until April 2023, (ECF Nos. 247, at 17; 247-2). Mr. Van
Norstrand was not locked out of the Google Workspace
Account until October 2022. (ECF No. 133 ¶ 97).

9. "[Counterclaim Defendants] also attempt to claim that Van
   Norstrand's [fraud] claims are barred by the economic
   loss doctrine." (ECF No. 268, at 60). They make no
   economic loss argument.

10. "[Counterclaim Defendants] continue to attempt to defend
    their actions by claiming that integration, anti-reliance
    bars Van Norstrand's claim." (ECF No. 268, at 61). They
    make no integration argument.

11. "[Counterclaim Defendants'] statute of limitations
    defense is inapplicable." (ECF No. 268, at 61). They
    make no statute of limitations argument.

Together, these errors evince a troubling pattern of false
assertions and characterizations. As noted, the court has already
granted much of the relief requested by declining to consider
improperly asserted arguments and assertions of fact. Given the
history of this litigation, the court declines at this time to
issue a show cause order to Mr. Van Norstrand and his counsel
regarding this specific filing. The matter may be revisited later,
if appropriate.

## VII. Conclusion

For the foregoing reasons, Mr. Van Norstrand's motion to keep sealed and redact exhibits will be granted in part and denied in part; PeriArchon's motion for summary judgment will be granted; Counterclaim Defendants' motion to enforce the stipulation of dismissal will be granted; Counterclaim Defendants' motion for summary judgment will be granted in part and denied in part; Mr. Van Norstrand's motion to strike Counterclaim Defendants' motion for summary judgment will be denied; Mr. Van Norstrand's motion for summary judgment will be denied; Counterclaim Defendants' motion to preclude consideration of new arguments and request for a show-cause order regarding sanctions will be granted in part and denied in part, without prejudice. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge